## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL ANTHONY LYNCH, | ) |
| | )     C.A. No. 06-365 JJF |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COINMASTER USA, INC., | ) |
| a Delaware corporation, | ) |
| | ) |
| Defendant/Counterclaim Plaintiff, | ) |
| | ) |
| PAUL A. COX, | ) |
| | ) |
| Defendant/Counterclaim Plaintiff and | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AUTO GAMING, INC., | ) |
| | ) |
| Third-Party Defendant. | ) |

**PLAINTIFF DANIEL ANTHONY LYNCH'S AND
THIRD-PARTY DEFENDANT AUTO GAMING, INC.'S
OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS DEFENDANT COINMASTER USA, INC.'S
COUNTERCLAIM AND DEFENDANT PAUL A. COX'S
<u>COUNTERCLAIM AND THIRD-PARTY COMPLAINT</u>**

                                                    JAMES S. GREEN, ESQ. (DE0481)
                                                   KEVIN A. GUERKE, ESQ. (DE4096)
                                                   SEITZ, VAN OGTROP & GREEN, P.A
                                                   222 Delaware Avenue, Suite 1500
                                                   P. O. Box 68
                                                   Wilmington, DE  19899
                                                   (302) 888-0600
                                                         Attorneys for Plaintiff and
                                                         Third-Party Defendant

Dated: July  19, 2006

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF CITATIONS ................................................................................................. ii

   I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ...... 1

   II.  SUMMARY OF THE ARGUMENTS. .............................................................. 2

        A.  Defendants' Counterclaims and Third-Party Complaint for Intentional Interference with Prospective Business Relations and Conversion Should be Dismissed Because Defendants Lack Standing. ................................... 2

   III.     STATEMENT OF FACTS. ........................................................................... 3

   IV.     ARGUMENT. ............................................................................................... 4

        A.  Defendants' Counterclaims and Third-Party Complaint for Intentional Interference with Prospective Business Relations and Conversion Should be Dismissed Because Defendants Lack Standing. ................................... 4

   V.  CONCLUSION. ............................................................................................... 9

# **TABLE OF CITATIONS**

Cases

Alabama By-Products Corp. v. Cede & Co., 657 A.2d 254, 265 (Del. 1995)................... 6

Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)............................... 4

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ................................................................... 4

Enzo Life Sciences., Inc. v. Digene Corp., 295 F. Supp. 2d 424, 426-27 (D. Del. 2003).. 4

Fed. R. Civ. P. 12(b)(6).................................................................................................... 4

In Re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).............. 4

Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) ....................................................... 4

Lipson v. Anesthesia Services, P.A., 790 A.2d 1261, 1285 (Del. Super. 2001)................. 7

Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998) ....................................................... 4

Rockwell Automation, Inc. v. Kall, 2004 WL 2965427 (Del. Ch. 2004).......................... 7

Society Hill Towers Owners' Association v. Rendell, 210 F.3d 168, 175-176
    (3rd. Cir. 2000)............................................................................................... 5, 6, 7

Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 690 (E.D.Pa. 1973)....................... 6

Other Authorities

*Federal Practice and Procedure,* § 1357, at 340 (2d ed. 1990) ......................................... 4

I.      **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.**

On April 4, 2006, Plaintiff Daniel Anthony Lynch ("Lynch") filed a Complaint against Coinmaster USA, Inc. ("CM") and Paul A. Cox ("Cox") (together "Defendants") in the Superior Court of the State of Delaware in and for New Castle County for breach of contract, deceptive trade practices, interference with prospective business relations, and fraud. Cox removed the matter to this Court on May 31, 2006.[1] On June 28, 2006, Cox filed an Answer to the Complaint, a Counterclaim against Lynch for Intentional Interference with Prospective Business Relations and Conversion, and a Third-Party Complaint against Auto Gaming, Inc. ("AGI") for Intentional Interference with Prospective Business Relations and Conversion. On June 28, 2006, CM filed an Answer to the Complaint and a Counterclaim against Lynch for Conversion. This is Lynch and AGI's Opening Brief in Support of their Motion to Dismiss Defendants' Counterclaims and Third Party Complaint.

---

[1] Lynch has filed a Motion to Remand the case to the State Court. That Motion has been fully briefed and is pending the Court's decision.

II.     **SUMMARY OF THE ARGUMENTS**.

     A.     *Defendants' Counterclaims and Third-Party Complaint for Intentional Interference with Prospective Business Relations and Conversion Should be Dismissed Because Defendants Lack Standing.*

### III.   STATEMENT OF FACTS.

CM is a Delaware corporation whose business includes developing and renting electronic casino games and is licensed to do business in, among other places, the State of California and at California Native American Tribal Casinos. (Cox Answer ¶1)[2] Cox is and has always been a shareholder of CM. (Id.) Cox owns 10% of CM stock. (Cox Answer ¶7) Lynch and Cox are two of the three members of CM's Board of Directors, with Cox serving as President and Lynch as Chairman. (Cox Answer ¶9). At all times relevant to this case, Cox did not act in his individual capacity, but was acting only as a director and/or representative of CM. (Cox Affirmative Defense ¶12)

High View, Inc. ("HV") is a Delaware corporation that was formed June 11, 2003. (Cox Counterclaim ¶1) Cox and Lynch are each 50% shareholders of HV. (Id.) In the Counterclaims, Defendants assert that Lynch and AGI absconded with HV assets, which allegedly deprived HV of the use of those assets. (Cox Counterclaim ¶4) Defendants further assert that Lynch and AGI did not pay HV for the assets or enter into any agreements with HV to use the assets. (Cox Counterclaim ¶6) Defendants are claiming a right to recovery for HV's injury and damage solely on the basis that they are shareholders and investors in HV. (Cox Counterclaim ¶118)

---

[2] Since the pleadings are the same, Movants' reference to Cox's Counterclaim and Third-Party Complaint are interchangeable with CM's Counterclaim for purposes of this brief.

## IV. ARGUMENT.

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) must be granted where a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While the Court must assume the truth of all well-pled allegations and construe the complaint in the light most favorable to the plaintiff, Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988), the Court need not accept "bald assertions" or "legal conclusions" when determining if a complaint is sufficient to survive a motion to dismiss. In Re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997); *see also* Enzo Life Sciences., Inc. v. Digene Corp., 295 F. Supp. 2d 424, 426-27 (D. Del. 2003). Legal conclusions couched as factual allegations are not given a presumption of truthfulness and conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Rather, the plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)(citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1357, at 340 (2d ed. 1990)).

### A. *Defendants' Counterclaims and Third-Party Complaint for Intentional Interference with Prospective Business Relations and Conversion Should be Dismissed Because Defendants Lack Standing.*

Cox and CM, in their individual capacity, have asserted claims on behalf of HV against Lynch and AGI. Cox asserts a Counterclaim for Intentional Interference with

Prospective Business Relations based on his investment and stockholdings in HV, alleging that HV owns and develops roulette gaming devices that Lynch misappropriated to use as his own.  (Cox Counterclaim ¶¶2, 5)  As a result, Cox asserts, HV is not able to utilize the games for profit, thus interfering with HV's prospective business relations.  (Cox Counterclaim ¶7)  Cox then makes the leap that, individually, he is entitled to damages on behalf of HV based on his rights and interests as a shareholder of HV.  (Cox Counterclaim ¶8)  Similarly, Cox claims entitlement to damages caused to HV for the same act under the theory of Conversion.  (Cox Counterclaim ¶3)  As for the Third-Party Complaint, Cox brings identical causes of action against AGI, merely adopting the claims against Lynch.

In the same vein, CM asserts a claim for Conversion against Lynch.  CM alleges that it "contributed substantial sums of money to High View, Inc. to aid in the development of this new gaming machine."  (CM Counterclaim ¶54)  CM then claims that Lynch's actions deprived "High View, Inc. and its owners and beneficiaries of the use of those assets."  (CM Counterclaim ¶56)  Further, CM alleges that it was injured because it could not use the games.  (CM Counterclaim ¶60)  However, CM does not assert an ownership interest in HV or any HV asset.

Defendants lack standing to bring any of the causes of action they assert because those actions, if they exist, must be brought in the name of HV.  Article III constitutional standing can be summarized as follows:

> (1)  the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized and (b) acting or imminent, not conjectural or hypothetical;

5

> (2) there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third-party not before the court; and
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Society Hill Towers Owners' Association v. Rendell, 210 F.3d 168, 175-176 (3rd. Cir. 2000)(citation omitted).

Defendants' claims fail on their face and do not satisfy any of the three elements outlined in Society Hill necessary to establish standing. First, neither Cox nor CM suffered any recoverable injury. In fact, if any cause of action exists, it is HV's not Defendants'. HV is the purported owner of the assets at issue. If those assets were converted, HV must bring the claim. The Defendants have no ownership interest in the assets and none is even alleged. The Defendants must establish injury in their own right, "[i]t is a fundamental principle of law that plaintiff must demonstrate injury to himself by the parties whom he sues before that plaintiff can successfully state a cause of action." Weiner v. Bank of King of Prussia, 358 F.Supp. 684, 690 (E.D.Pa. 1973).

Second, there is no causal connection between Defendants' alleged injury and the alleged conduct. If Lynch misappropriated HV's property, HV is the real party in interest and is the only one that can assert a claim and recover damages. For Cox to ever benefit from HV's cause of action, HV must sue Lynch in its own name, recover damages from Lynch, hold a board of directors' meeting to determine what to do with any recovery, and specifically pay out profits to shareholders, which may include Cox. This would clearly require independent action from a third-party - HV - that is not before the Court, which is clearly at odds with the second Society Hill requirement. CM's position is even more

tenuous than Cox's because it has no interest in HV, it is merely a third-party entity that claims to do business with HV.

Furthermore, Cox and CM have no power or authority to assert a claim on HV's behalf. "It is a fundamental principle of the Delaware General Corporation Law that directors, rather than shareholders, manage the business and affairs of the corporation." Alabama By-Products Corp. v. Cede & Co., 657 A.2d 254, 265 (Del. 1995)(citation omitted). "Consequently, the decision to pursue or refrain from undertaking a claim on behalf of the corporation is entrusted to the board of directors as within the ambit of its management responsibility." Id.

Third, according to the Defendants' theory of liability, they could recover damages for interference and conversion of HV property, but totally exclude HV from the equation. HV would not be involved in the case and HV would benefit in no way for the recovery of a loss of its assets. Therefore, a favorable decision will not redress HV's injury. Defendants "must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." Society Hill, 210 F.3d at 177. That is precisely what Defendants are attempting to do.

More specifically, to succeed on a claim for Intentional Interference with Prospective Business Relations, Cox must establish the following: "(a) the reasonable probability of a business opportunity, (b) the Intentional Interference by defendant with the opportunity, (c) proximate causation, and (d) damages." Lipson v. Anesthesia Services, P.A., 790 A.2d 1261, 1285 (Del. Super. 2001). However, "mere 'perception' of a prospective business relationship or contract will not 'form the basis of a *bona fide*

7

expectancy." Id. Here, Cox does not even assert a potential business opportunity, only a vague HV opportunity to use its assets for business. That is not enough. Thus, Cox has failed to plead a *prima facia* cause of action.

The conversion counts fail also. "Conversion is the 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." Rockwell Automation, Inc. v. Kall, 2004 WL 2965427 (Del. Ch. 2004)(attached as Exhibit "A"). To succeed on a claim for conversion, Defendants must prove that they had a recognizable property interest in the assets, and that, as a result of conversion, they sustained damages. Id. Defendants cannot make a *prima facia* case establishing any of the required elements of conversion. No property interest or right to possession is even asserted by either Defendant.

Cox's Third-Party Complaint against AGI is identical to Defendants' Counterclaims and is equally defective.

**V.    CONCLUSION.**

For all the reasons stated above, Defendants' Counterclaims and Cox's Third-Party Complaint should be dismissed for failure to state a claim upon which relief can be granted because Defendants lack standing to assert the claims.

                                      **SEITZ, VAN OGTROP & GREEN, P.A**

                                      **/S/ James S. Green**
                                      **JAMES S. GREEN, ESQ. (DE0481)**
                                      **KEVIN A. GUERKE, ESQ. (DE4096)**
                                      222 Delaware Avenue, Suite 1500
                                      P. O. Box 68
                                      Wilmington, DE  19899
                                      (302) 888-0600
                                              Attorneys for Plaintiff and
                                              Third Party Defendant

Dated:  July 19, 2006

## CERTIFICATE OF SERVICE

      I, James S. Green, Esquire, hereby certify that on the 19th day of July, 2006, I electronically filed an Amended Certificate of Service with PLAINTIFF DANIEL ANTHONY LYNCH'S AND THIRD-PARTY DEFENDANT AUTO GAMING, INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT COINMASTER USA, INC.'S COUNTERCLAIM AND DEFENDANT PAUL A. COX'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT the Clerk of Court using CM/ECF and served such filing to counsel as follows:

**VIA CM/ECF:**

Thomas P. Preston, Esq.
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 Market Street
Wilmington, DE  19801-4226

**VIA FIRST CLASS MAIL:**

Erin K. Brignola, Esq.
Cooper Levenson April Nieldelman
    & Wagenheim P.A.
30 Fox Hunt Drive
Bear, DE  19701

    /s/  James S. Green, Sr.
    _____
    James S. Green, Sr. (DE0481)
    jgreen@svglaw.com

# EXHIBIT A

Westlaw.

Not Reported in A.2d                                                                                          Page 1

Not Reported in A.2d, 2004 WL 2965427 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**H**
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
ROCKWELL AUTOMATION, INC.
v.
KALL
No. Civ.A. 526-N.

Submitted Nov. 15, 2004.
Decided Dec. 15, 2004.
Dear Counsel:

NOBLE, Vice Chancellor.
*1 Plaintiff Rockwell Automation, Inc. ("Rockwell") alleges that Defendant Jonathan J. Kall ("Kall"), a former employee: (1) misappropriated confidential information; (2) converted confidential information; and (3) breached his Employment Agreement (the "EA") by both disseminating confidential information and retaining confidential documents after his termination. Rockwell has moved, pursuant to Court of Chancery Rule 56, for summary judgment with respect to the conversion claim and the breach of the EA claim stemming from Kall's retention of documents. Kall has cross-moved for summary judgment seeking: (1) a declaration that he has not breached the EA by disseminating documents to his attorneys, accountants, and financial advisor; (2) authorization to retain documents subject to the Court's Order of July 2, 2004; and (3) attorneys' fees and costs. For the reasons discussed below, Rockwell's motion for summary judgment on its claim that Kall breached the EA by retaining Rockwell's confidential documents after his termination will be granted; otherwise, the motions will be denied.[FN1]

> FN1. The Court does not determine whether Kall breached the EA by disseminating Rockwell's confidential information to his agents.

**I. BACKGROUND**

Rockwell is a leading industrial automation company providing power, control, and information solutions. Kall is the former president and sole owner of Interwave Technology, Inc. ("Interwave"). Rockwell acquired substantially all of the assets of Interwave pursuant to the Asset Purchase Agreement (the "APA"), dated January 29, 2003. Kall became an employee of Rockwell pursuant to the EA, dated January 29, 2003. The APA and the EA were executed simultaneously. As the result of Rockwell's purchase of Interwave's assets, Kall received $12 million and, pursuant to the Earn-Out provision of the APA, Kall could potentially receive additional payouts totaling $12 million in years 1 and 3 of his employment. Rockwell terminated Kall, purportedly for cause, on June 22, 2004.

The EA contains a number of provisions regarding confidentiality. Section 8.2 of the EA, titled "Confidentiality and Surrender of Records," provides:
Employee shall not during the Period of Employment or at any time thereafter ... directly or indirectly give any "confidential records" to, or permit any inspection or copying of confidential records by, any individual or entity other than in the course of such individual's or entity's employment or retention by Employer, nor shall he retain, *and will deliver promptly to Employer, any of the same following termination of his employment.* For purposes hereof, "confidential records" means all correspondence, memoranda, files, manuals, books, lists, financial, operating or marketing records, magnetic tape, or electronic or other media or equipment of any kind which may be in Employee's possession or under his control or accessible to him which contain any proprietary information as defined in Section 8.1 above. All confidential records shall be and remain the sole property of Employer during the Period of Employment and thereafter.[FN2]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2
Not Reported in A.2d, 2004 WL 2965427 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

FN2. Emphasis added.

*2 Section 8.1, titled "Proprietary Information," sets out a number of broad categories of information which are to be considered proprietary information under the EA and which the employee is not permitted to use directly or indirectly for his own purposes or for the benefit of any person or entity other than Rockwell. Additionally, the employee may not disclose any proprietary information to any individual or entity unless such disclosure has been authorized in writing by Rockwell. The last portion of Section 8.1 reads:
However, proprietary information shall not include ...
. (B) other non-sensitive information that may be disclosed by Employee in the ordinary course of business, the disclosure of which is not reasonably likely to materially adversely affect Employer's business operations, its relationships with customers, vendors or employees or the results of its operations.

Rockwell asserts that Kall breached the EA and converted Rockwell's confidential information by failing to return to Rockwell documents that were in his or his agents' possession after he was terminated on June 22, 2004.

II. ANALYSIS

A. *Appropriate Standard*

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FN3 When the Court is faced with cross-motions for summary judgment the same standard must be applied to each of the parties' motions and the mere existence of cross-motions does not necessarily indicate that summary judgment is appropriate for one of the parties.FN4 The moving party always has the burden to show the absence of any genuine issue of material fact.FN5

FN3. Court of Chancery Rule 56(c).

FN4. *See Motorola, Inc. v. Amkor Tech, Inc.,* 849 A.2d 931 (Del.2004); *Kronenberg v. Katz,* 2004 WL 1152282, at *13 (Del. Ch.).

FN5. *Mell v. New Castle County,* 2003 WL 1919331, at *3 (Del. Ch.).

B. *Breach of Contract Claim*

In evaluating a contractual claim, the Court first reviews the contract "as a whole" to determine whether the parties' intent can be understood through the words chosen by the parties or whether the chosen words are ambiguous.FN6

FN6. *In re Explorer Pipeline Co.,* 781 A.2d 705, 714 (Del. Ch.2001) (citing *Supermex Trading Co., Ltd. v. Strategic Solutions Group, Inc.,* 1998 WL 229530 (Del. Ch.)). The EA is to be construed in accordance with Delaware law (EA, Section 9.4.). The APA is to be construed in accordance with Pennsylvania law (APA, Section 14.15.). Neither party has suggested that this distinction matters. Because Rockwell seeks relief under the EA, the Court looks to Delaware law.

Contract terms are controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language. When the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings, there is ambiguity. In those circumstances, the interpreting court must look beyond the language of the contract to ascertain the parties' intentions.FN7

FN7. *Motorola,* 849 A.2d at 938 (construing contract governed by Illinois law and citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232-33 (Del.1997)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 3

Not Reported in A.2d, 2004 WL 2965427 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Rockwell asserts that Kall and his agents are in possession of, and have refused to return, confidential records that Kall obtained during his employment and, therefore, Kall is in violation of Section 8.2 of the EA. Kall concedes that, for various reasons, either he or his agents have, after his termination, retained various documents that were obtained during his employment with Rockwell.[FN8]

> FN8. *See* Def.'s Op. Br. in Opp'n to Pl.'s Mot. For Summ. Judgment at 19-21; Def.'s Reply Br. at 1.

*3 Section 8.2 of the EA is unambiguous; it provides that upon the termination of employment, the employee must return to Rockwell all confidential documents in his possession.[FN9] Kall argues that he is entitled to retain these documents in order to challenge his Year 1 payment under the Earn-Out provision of the APA, in order to renegotiate the Earn-Out provision, and in order to challenge his termination for cause. These arguments, however, fail to provide a sufficient basis to allow Kall to retain documents in violation of the clear language of the EA.

> FN9. Kall acknowledges that the documents which he or his agents have retained contain proprietary information. There is no significant dispute between the parties as to the identity of the documents which are the subject of Rockwell's motion.

Section 13.1(f) of the APA gives Kall the right to challenge his Earn-Out Payment; it states:
Buyer shall prepare and maintain records and books of accounts which reasonably substantiate the Year One Earn-Out Payment and Year Three Earn-Out Payment (the "Records"). Such records shall be open to inspection and subject to audit by Seller's Representatives to the extent necessary to adequately permit evaluation and verification by Seller of the [Earn-Out] following Buyer's delivery of the applicable Earn-Out Statement referred to in Section 14.1(g). Inspections or audits of the Records shall only take place during normal working hours, upon reasonable advance written notice.

While Kall has the right to challenge his Earn-Out Payment, the provision authorizing such a contest also establishes the scope of, and procedure for, Kall's review of Rockwell documents. In no way does this provision empower Kall to retain any of the documents now held by him or his agents. To allow Kall to retain these documents would be to allow Kall to flout the clear provisions of both the EA and the APA and to allow Kall to engage in self-help. Documents that might assist Kall during his Earn-Out challenge do not form an exception to Section 8.2 of the EA and Kall is not permitted to retain these documents after termination.[FN10] Furthermore, Kall's argument that he may retain certain documents for purposes of renegotiation of the Earn-Out provision has become moot because of Kall's termination.[FN11]

> FN10. Not all of the documents retained by Kall or his agents are relevant to the Earn-Out dispute.
>
> FN11. Kall contends that Rockwell, when it cited his handling of the documents in its letter terminating him, made them the subject matter not only of this action but also of any litigation involving his termination; thus, he asserts that Rockwell has independently conferred upon him a right to retain the documents. As far as this action is concerned, the argument is circular. In substance, Kall appears to be arguing that Rockwell cannot retrieve the documents because, by complaining about how Kall has dealt with the documents, it has allowed him to retain them. If that were so, Rockwell could never recover the documents through litigation. As to any other dispute, Kall may seek access to the documents under the rules of the forum where the other dispute is addressed.

In addition, Kall's argument that he may retain documents to assist in his challenge of his termination does not fall under any exception to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                  Page 4
Not Reported in A.2d, 2004 WL 2965427 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Section 8.2 of the EA. Following a personnel review, Kall was directed by Rockwell to produce weekly performance reports starting in February 2004. Kall admits that he distributed these reports and the information that he used to prepare these reports to his agents. Kall simply asserts that, because he is challenging his termination, he is allowed to keep these documents to help him make his case. However, as clearly stated in Section 8.2 of the EA, Kall is not permitted to retain any proprietary information. If Kall desires to use such documents, he is free to seek them from Rockwell through the traditional routes available to him in the forum adjudicating his claims. He may not avoid his contractual obligations under the EA through self-help.[FN12]

> FN12. Kall tenders two other arguments that merit brief attention. First, he asserts that his possession of the documents is authorized by a temporary restraining order entered by this Court with the consent of the parties on July 2, 2004, which prohibited further dissemination of the documents and required Kall to provide a listing of Rockwell's proprietary documents in his possession or his agents' possession. Rockwell seeks the return of the listed documents. That order, however, preserved the *status quo* to enable consideration of Rockwell's claims on the merits. It certainly was not a permanent resolution. Second, Kall argues that Rockwell's actions constitute an amendment of the EA by conduct or by waiver of any right to disgorgement. As to recovery of the documents, Rockwell promptly sought their return. Even if Rockwell implicitly consented to Kall's sharing of some of the documents with his advisors, it does not follow that Rockwell has somehow lost its right to insist upon their return following his dismissal.

*4 There are no genuine issues of material fact with respect to this claim because both Kall and Rockwell agree that Kall retained certain documents. Furthermore, Kall concedes that the information he retained falls under the definition of confidential or proprietary information within Section 8.2. With no exceptions available to Kall to allow him to retain such confidential information, the Court concludes that as a matter of law Kall breached Section 8.2 of the EA by retaining Rockwell's confidential information after he was terminated. In short, no reasonable person in Kall's position would have an expectation under the EA and the APA that he could retain the subject documents. Thus, Court grants Rockwell summary judgment on this claim.

### C. *Conversion*

Conversion is the "act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it ." [FN13] The necessary elements of conversion are that Rockwell had a property interest in the confidential document; that Rockwell had a right to possession of the documents; and that Rockwell sustained damages.[FN14] Obviously, Rockwell has a property interest in its confidential information. Furthermore, the Court has already concluded that Kall had no right to retain these documents, and, therefore, Rockwell had a right to possession of the confidential documents that Kall retained after he was terminated. However, there is a genuine issue of material fact with respect to what damages, if any, Rockwell has suffered as a result of Kall's retention of Rockwell's confidential documents. Therefore, the Court denies Rockwell's motion for summary judgment with respect to its conversion claim.

> FN13. *McGowan v. Ferro*, 2004 WL 2423570, at *19 (Del. Ch.) (quoting *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del.1996)).

> FN14. *See Facciolo Constr. Co. v. Bank of Del.*, 514 A.2d 413 (Del.1986); *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch.1988).

### D. *Kall's Claims*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 5
Not Reported in A.2d, 2004 WL 2965427 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

The Court denies summary judgment with respect to Kall's request for a declaration that he did not breach the EA by disseminating documents to his agents. There are genuine issues of material fact as to how Kall came into possession of the various documents and whether Rockwell knew or should have been on notice of Kall's distribution of those documents. The Court also denies Kall's request to be allowed to retain the documents that still may be in his or his agent's possession. The Court has already concluded that Kall does not have a right to retain such documents. Lastly, as Kall has not been successful in his motion for summary judgment, he is not, under any rationale, entitled to attorneys' fees.

### III. CONCLUSION

For the foregoing reasons, Rockwell is granted partial summary judgment with respect to its breach of Employment Agreement claim based on Kall's retention of confidential documents. Within ten days, Kall and his agents shall tender to Rockwell all confidential documents that may still be in their possession.[FN15] The motions are otherwise denied.

> FN15. There may be issues involving Kall's attorney-client privilege with respect to a limited number of documents. Kall shall, no later than twenty days from the date of this letter opinion, provide Rockwell with a log identifying those documents and the good faith basis for assertion of the privilege. The documents subject to a good faith claim of privilege need not be surrendered until the claims of privilege have been addressed.

IT IS SO ORDERED.[FN16]

> FN16. This directive is expressly conditioned upon Rockwell's holding of all documents tendered by Kall or his agents in a separate repository in order that they may be available if needed in any subsequent proceeding between the parties.

Del.Ch.,2004.
Rockwell Automation, Inc. v Kall
Not Reported in A.2d, 2004 WL 2965427 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.