IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL ANTHONY LYNCH,      )
                                )
           Plaintiff,      )
                                )
         v.         )     Civil Action No. 06-365 JJF
                                )
COINMASTER USA, INC., a Delaware    )
corporation, and PAUL A. COX,     )
                                )
           Defendants.     )

---

## MOTION FOR LEAVE TO FILE AMENDED ANSWER, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT OF DEFENDANT/COUNTERCLAIM PLAINTIFF/THIRD PARTY PLAINTIFF PAUL A. COX

---

Defendant/Counterclaim Plaintiff/Third Party Plaintiff Paul A. Cox moves for leave to amend his Answer, Counterclaim and Third-Party Complaint to state those claims more fully. The basis for his Motion is as follows:

1.     Plaintiff Daniel Anthony Lynch ("Lynch) filed his Complaint against Cox and Coinmaster USA, Inc. ("Coinmaster") on or about April 4, 2006.  The Complaint was thereafter served on Cox and Coinmaster.

2.     Thereafter Cox removed the Complaint to the United States District Court for the District of Delaware.

3.     Cox filed his Answer, Counterclaim, and Third-Party Complaint on or about June 28, 2006.

4.     That Counterclaim included counts for Intentional Interference with Prospective Business Relations and Conversion against Lynch, arising from Lynch's alleged conversion of the assets of High View, Inc. ("High View") for use by Third-Party Defendant Auto Gaming Inc. ("AGI").

5.     That Third-Party Complaint included counts for Intentional Interference with Prospective Business Relations and Conversion against AGI, arising from the conversion of the assets of High View for use by AGI.

6.     Lynch and AGI thereafter filed a Motion to Dismiss, claiming that Cox, in his role as an individual shareholder of High View, lacked standing to assert claims for Intentional Interference with Prospective Business Relations and Conversion against Lynch or AGI.

7.     Attached hereto as Exhibit "A" is the Proposed Amended Answer, Counterclaim and Third-Party Complaint showing deletions in brackets and new text underlined.  Also submitted herewith as Exhibit "B" is the actual Proposed Amended Answer, Counterclaim, and Third-Party Complaint for which Cox seeks leave to file.

8.     This Amended Answer, Counterclaim, and Third-Party Complaint further develops and restates Cox's claims as being brought on behalf of himself and, derivatively, on behalf of High View.

9.     This Amended Answer, Counterclaim, and Third-Party Complaint makes it clear that Cox has standing to pursue claims against Lynch and AGI on behalf of himself and, derivatively, on behalf of High View.  Such right is established in Del. Ch. Ct. R. 23.1 (Derivative Actions by Shareholders) and case law construing same.  *See Harry Lewis v. Senior Aronson, et. al.,* 473 A. 2d. 805 (Del. 1984).

10.     F.R.C.P. 15(a) establishes that leave to amend shall be freely given when justice so requires.  The circumstances of this case demonstrate that such relief is required to prevent Lynch's wrongdoings and transgressions from going unredressed.


WHEREFORE, Cox respectfully requests that its Motion to Amend be granted, and that his Amended Answer, Counterclaim, and Third-Party Complaint attached hereto as Exhibit B, be accepted for filing.

Respectfully submitted,

COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.


By:_____/s/ Erin K. Brignola_____

DATED: July 31, 2006

Erin K. Brignola (DE #2723)
Kevin J. Thornton (NJ #1332)
Fredric L. Shenkman (NJ #4102)
30 Fox Hunt Drive
Bear, Deleaware 19701
(302) 838-2600
(302) 838-1942 fax

ATTORNEYS FOR DEFENDANT,
PAUL A. COX

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL ANTHONY LYNCH, )
         )
   Plaintiff,   )
         ) Civil Action No. 06-365 JJF
   v.     )
         )
COINMASTER USA, INC., a Delaware )
corporation, and PAUL A. COX, )
         )
   Defendants,  ) **JURY TRIAL DEMANDED**
         ) **NON-ARBITRATION**
   and    )
         )
PAUL A. COX,    )
         )
   Third-Party Plaintiff, )
         )
   v.     )
         )
AUTO GAMING, INC., a Delaware )
corporation,     )
         )
   Third-Party Defendant. )

---

## <u>AMENDED</u> ANSWER, DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT

---

Defendant, Paul A. Cox ("Cox") by way of Amended Answer to the Complaint filed on behalf of the Plaintiff, Daniel Anthony Lynch ("Lynch") says:

## Introduction

1.      Admitted that Defendant, Coinmaster USA, Inc. [("CUSA")] ("Coinmaster"), is a Delaware corporation whose business includes developing and renting electronic casino games and that is licensed to and does do business in among other places the State of California and at California Native American Tribal Casinos and that Cox was and is a shareholder of [CUSA] Coinmaster.  Denied that Lynch was a Director of [CUSA] Coinmaster from its inception.  As to the remaining allegations, [Cox is without sufficient knowledge or information to ascertain the veracity of such allegations and therefore denies same leaving Lynch to his proofs.  Hereinafter, such a response will be indicated by the answer denied/proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

### Parties

2.      [Denied/Proofs.]  Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

3.      Admitted.

4.      Admitted that Cox is a British foreign national who currently resides in the State of Florida.  As to the remaining allegations, [Denied/Proofs.]  Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

### Background

5.      Denied that Coinmaster Gaming PLC ("CG") was formed in 1980.  As to the remaining allegations, [Denied/Proofs.]  Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

2

6.      Admitted.

7.      Admitted only that Lynch approached Cox and requested that he become involved in the [CUSA] Coinmaster activities in the United States, to which Cox agreed, in exchange for a ten percent (10%) interest in [CUSA] Coinmaster. As to the remaining allegations, [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

8.      Admitted.

9.      Admitted.

10.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

11.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

12.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

13.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

14.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

15.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

16.     Admitted.

17.     [Denied/Proofs.] Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

3

18.    Admitted that Cox, Lynch and Brad Hutcheon ("Hutcheon") agreed to bid for CG's interest in [CUSA] Coinmaster.  The remaining allegations are denied.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

Count 1

(Breach of Contract)

28.    [Cox repeats his responses to the paragraphs above as if set forth at length herein.]  Cox incorporates his responses to Paragraphs 1 through 27 as if fully set forth herein.

29.    Denied.

30.    Denied.

31.    Denied.

COUNT II

(Deceptive Trade Practices)

32.    [Cox repeats his responses to the paragraphs above as if set forth at length herein.]  Cox incorporates his responses to Paragraphs 1 through 31 as if fully set forth herein.

33.    Denied.

4

34.     Denied.

35.     Denied.

36.     Denied.

## COUNT III

### (Intentional Interference With Prospective Business Relations)

37.     [Cox repeats his responses to the paragraphs above as if set forth at length herein.] Cox incorporates his responses to Paragraphs 1 through 36 as if fully set forth herein.

38.     Denied.

39.     Denied.

40.     Denied.

## COUNT IV

### (Fraud)

41.     [Cox repeats his responses to the paragraphs above as if set forth at length herein.] Cox incorporates his responses to Paragraphs 1 through 40 as if fully set forth herein.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state any valid or viable cause of action upon which relief may be granted.

2.     Service of the Summons and the Complaint was defective and invalid and all rights, privileges, and defenses are reserved.

3.      Lynch's claims for relief are barred by applicable statutes of limitations.

4.      Lynch's claims for relief are barred by the Doctrine of Laches.

5.      Lynch's claims for relief are barred by the Doctrine of Unclean Hands.

6.      Lynch's claims for relief are barred by the Doctrine of Estoppel.

7.      Lynch's claims for relief are barred by the Doctrine of Waiver.

8.      Lynch's claims for relief are barred because he intentionally failed to disclose to Coinmaster and Cox the existence and the terms and conditions of his Directors and/or Executive Services Contract with and his legal obligations to CG.

9.      Lynch's claims for relief are barred because the Directors and/or Executive Services Contract attached as Exhibit "A" to Lynch's Complaint [(the "CUSA Complaint")] (the "Coinmaster Complaint") is null and void and/or voidable for numerous reasons including but not limited to that Lynch admitted it might be in conflict with or barred by his Directors and/or Executive Services Contract with CG and he agreed that if that was the case, then the [CUSA] Coinmaster Contract would be voided.

10.     The [CUSA] Coinmaster Contract should be reformed to accurately reflect the parties' true intentions that it was to serve as, among other things, a "Poison Pill" and the stated terms of compensation manifestly bore no relationship to what was affordable to a new business venture that was unprofitable with minimal turnover.

11.     Cox breached no contractual obligations to Lynch.

12.     Cox did not act in his individual capacity and was acting as a director officer and/or an authorized representative of [CUSA] Coinmaster and at all times discharged his duties honestly, lawfully, in good faith, and in accordance with applicable fiduciary duties.

13.     Cox is not indebted to Lynch for any sum of money.

6

14.    Cox denies that Lynch is entitled to any sum or damages from him, but to the extent there is any such finding, Cox is entitled to damages and set-offs against Lynch.

15.    Lynch is not entitled to punitive damages against Cox nor [CUSA] Coinmaster.

16.    Cox will rely upon all defenses pled by and/or available to [CUSA] Coinmaster per controlling law and statutes and any contracts between Lynch and [CUSA] Coinmaster that might be valid and enforceable.

17.    Investigation and discovery are on-going and Cox reserves the right to assert additional defenses as same may be revealed.

WHEREFORE, Defendant, Paul A. Cox, demands judgment dismissing the Complaint with prejudice and with an award of attorneys' fees and costs together with all such further relief as the Court deems just and appropriate.

## [COUNTERCLAIM] AMENDED COUNTERCLAIM

[Paul A. Cox ("Cox"), by way of Counterclaim against Daniel Anthony Lynch says:]
Paul A. Cox ("Cox"), individually and derivatively, on behalf of High View, Inc. ("High View"), by way of Counterclaim against Daniel Anthony Lynch ("Lynch") says:

### COUNT I

### (Intentional Interference With Prospective Business Relations)

1.    [High View, Inc. ("HVI")], High View, a Delaware corporation, was formed on or about June 11, 2003 and Cox and Lynch were and are fifty percent (50%) shareholders.

2.    [Cox invested in HVI which in turn invested substantial funds and human capital resources in developing and owns the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster USA Inc. ("CUSA") and/or other entities marketing and

7

leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.] <u>On information and belief, Lynch is a British foreign national who currently resides at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom.</u>

3.    [On information and belief, development proceeded as expected, and the Devices developed by HVI are ready for introduction into the gaming market in the United States and elsewhere in the world.] <u>Lynch was, at one time, a director of Defendant, Coinmaster USA, Inc. ("Coinmaster").</u>

4.    [On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving HVI and its owners and beneficiaries of the use of those assets.] <u>Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.</u>

5.    [On information and belief, Lynch directly and/or via an entity known as AutoGaming, Inc. ("AGI"), misappropriated the Devices and HVI's assets and has sought to obtain required approvals and/or licenses from gaming laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.] <u>Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.</u>

6.    [Lynch has not paid HVI for those assets, nor entered into any agreement with HVI to acquire or make any use of the Devices.] <u>These actions ended Lynch's formal association with Coinmaster.</u>

7.    [There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered and continue to intentionally interfering with HVI's prospective business relations.] <u>In June of 2003, Lynch and</u>

Cox, who was also a shareholder and director of Coinmaster, formed High View, as a Delaware corporation. Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of High View.

8.    [Lynch's and AGI's intentional interference have proximately caused damage to HVI and thus to Cox's rights to and interests as a shareholder of HVI.]  Cox invested in High View which in turn invested substantial funds and human capital resources into developing and owning the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

9.    The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control.  Cox relied on Lynch to carry out the agreed upon common purpose of High View.  Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

10.    On information and belief, development proceeded as expected, with Lynch in charge, and the Devices developed by High View are ready for introduction into the gaming market in the United States and elsewhere in the world.

11.    On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving High View and its shareholders and beneficiaries of the use of those assets.

CLAC 25623.1

12.     On information and belief, Lynch directly and/or via an entity known as AutoGaming, Inc. ("AGI"), misappropriated the Devices and High View's assets and has sought to obtain required approvals and/or licenses from gaming laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.

13.     Neither Lynch nor AGI have paid High View for those assets, nor entered into any agreement with High View to acquire or make any use of the Devices.

14.     There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered with and continue to intentionally interfere with High View's prospective business relations.

15.     Lynch's and AGI's intentional interference and other conduct and communications have proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

16.     On or about June 1, 2006 Lynch filed a Petition for Dissolution of High View and the Appointment of a Receiver in the Chancery Court of the State of Delaware in and for New Castle County, Civil Action No.: 2193-N.  High View and Cox were named as Respondents in that action.  (See Petition, attached as Exhibit A, hereto.)

17.     Lynch's actions, the pending Petition for Dissolution of High View, and his fifty percent (50%) interest in High View have rendered the management of High View powerless in that the Board of Directors of High View, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having High View sue him.  Accordingly, any demand that High View's management pursue High View's rights against Lynch and AGI would be futile.

18.    Based upon all of the foregoing, Cox is excused from having to make any demand upon High View to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name and also for the benefit of High View so as to prevent injustice and to adequately and fairly protect the interests and rights of High View.

WHEREFORE, Cox, individually and derivatively, on behalf of High View, demands judgment against Lynch for the following:

(i)    compensatory and punitive damages;

(ii)    injunctive relief;

(iii)    reasonable attorneys' fees and costs;

(iv)    pre and post judgment interest on all sums awarded; and

(v)    all such further relief as the Court deems just and appropriate.

COUNT II

(Conversion)

19.    [Cox repeats his allegations in paragraphs numbers 1 through 8 above as if set forth at length herein] Cox repeats his allegations in paragraphs numbered 1 through 18 above as if fully set forth herein.

20.    [Lynch has] Lynch, directly and/or through AGI, converted the Devices and other assets of [HVI] High View to the detriment of [HVI] High View and Cox by taking those assets for [his own use and the use of AGI] his and AGI's own use without permission and without paying for same.

21.    Lynch's conversion, directly and/or through AGI, has proximately caused damage to [HVI and thus to Cox's rights] High View and to Cox's rights and interests as a shareholder of

11

[HVI] High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

WHEREFORE, [Counterclaimant Paul A.] Cox, individually and derivatively on behalf of High View, demands judgment against [Daniel Anthony] Lynch [as follows] for the following:

(i)      [for] compensatory and punitive damages;

(ii)     [for] injunctive relief;

(iii)    [for] reasonable attorneys' fees and costs;

(iv)    [for] pre and post judgment interest on all sums awarded; and

(v)     [for] all such further relief as the Court deems just and appropriate.

COUNT III

(Fraud)

22.    Cox repeats his allegations in paragraphs numbered 1 through 21 above as if fully set forth herein.

23.    Cox and Lynch formed High View for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing the Devices to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

24.    The purpose of developing the Devices was to benefit High View and its shareholders and beneficiaries and to allow Coinmaster to increase its market share and avoid certain of the problems which had limited its growth in the U.S. market up to that time.

25.    The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox

12

charged with all financial accounting and project control.  Cox relied on Lynch to carry out the agreed upon common purpose of High View.  Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

26.    Both Cox and Lynch, as well as Coinmaster, contributed substantial funds to High View for the development of the Devices, to which Lynch had access for the purpose of developing the Device.

27.    Lynch undertook the development efforts, retaining the services of others and developing the gaming machine allegedly for the benefit of High View and, derivatively, Cox.

28.    However, by the Spring and Summer of 2004, it became clear that Lynch considered the software intellectual property rights related to the machine to belong to him, and was embarked on a development process which suited his needs and desires, rather than High View's or Cox's.

29.    Disagreements on the direction Lynch was taking were unavailing, inasmuch as Lynch simply ignored the advice and demands of Cox.

30.    On information and belief, the development of the machine was completed by late-2004 or early-2005.

31.    Thereafter, Lynch directly and/or through AGI took the machine for his and/or AGI's own use, marketing it in Europe and the United States, solely for his and/or AGI's benefit and ignoring the rights and interests of Cox, High View and High View's shareholders and beneficiaries.

32.    On information and belief, Lynch never intended to develop the machine for the benefit of High View, Cox or Coinmaster and mislead Cox and Coinmaster into investing in High View

without ever intending to use the newly developed gaming machine for the benefit of Cox, High View and High View's shareholders and beneficiaries.

33.    Cox and High View reasonably relied upon Lynch's knowing misrepresentations when they provided him with substantial development funds and control over the development of the Devices.

34.    Cox, High View and High View's shareholders and beneficiaries have been damaged insofar as the value of High View's shares has been reduced or totally destroyed by Lynch's theft, independently and/or through AGI, of the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

(i)    compensatory and punitive damages;

(ii)   injunctive relief;

(iii)  reasonable attorneys' fees and costs;

(iv)   pre and post judgment interest on all sums awarded; and

(v)    all such further relief as the Court deems just and appropriate.

## COUNT IV

### (Breach of Fiduciary Duty)

35.    Cox repeats his allegations in paragraphs numbered 1 through 34 above as if fully set forth herein.

36.    As a fifty percent (50%) shareholder and a Director of High View, Lynch owes a fiduciary duty to High View and to Cox, in Cox's capacity as a fifty-percent (50%) shareholder and Director of High View.

37.    <u>Lynch's theft, independently and/or through AGI, of the Devices and all assets and good will of High View, resulting in the reduction of total destruction of the value of High View's shares, violates Lynch's fiduciary duties owed to High View and to Cox.</u>

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

(i)     compensatory and punitive damages;

(ii)    injunctive relief;

(iii)   reasonable attorneys' fees and costs;

(iv)    pre and post judgment interest on all sums awarded; and

(v)     all such further relief as the Court deems just and appropriate.

**[THIRD-PARTY COMPLAINT] <u>AMENDED THIRD-PARTY COMPLAINT</u>**

Paul A. Cox ("Cox"), <u>individually and derivatively on behalf of High View,</u> by way of Third-Party Complaint against [Third-Party Defendant] AutoGaming, Inc. ("AGI") says:

<u>COUNT I</u>

<u>(Intentional Interference With Prospective Business Relations)</u>

1.    High View, Inc. (["HVI"] <u>"High View"</u>), a Delaware corporation, was formed on or about June 11, 2003 and Cox and <u>Daniel A</u>. Lynch <u>("Lynch")</u> were and are fifty percent (50%) shareholders.

2.    AGI is believed to be a Delaware corporation formed by [Daniel A.] Lynch [("Lynch") in or after 2004.

3.    [Cox invested in HVI which in turn invested substantial funds and human capital resources in developing and owns the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of

15

directly and/or through Coinmaster USA Inc. ("CUSA") and/or other entities marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.] <u>On information and belief, Lynch is a British foreign national who currently resides at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom.</u>

4.      [On information and belief, development proceeded as expected, and the Devices developed by HVI are ready for introduction into the gaming market in the United States and elsewhere in the world.] <u>Lynch was, at one time, a director of Defendant, Coinmaster USA, Inc. ("Coinmaster").</u>

5.      [On information and belief, AGI absconded with all of the assets of HVI necessary for the final development and marketing of the Devices, depriving HVI and its owners and beneficiaries of the use of those assets and the Devices.] <u>Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.</u>

6.      [On information and belief, AGI and Lynch misappropriated the Devices and HVI's assets and have sought to obtain required approvals and/or licenses from gaming laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.] <u>Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.</u>

7.      [AGI has not paid HVI for those assets, nor entered into any agreement with HVI to acquire or make any use of the Devices.] <u>These actions ended Lynch's formal association with Coinmaster.</u>

8.      [There are only a limited number of casinos that need the Devices in said market, and others, and by seeking to lease them to such casinos, AGI and Lynch have intentionally

16

interfered and continue to intentionally interfere with HVI's prospective business relations.]  In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed High View, as a Delaware corporation.  Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of High View.

9.      [AGI and Lynch's intentional interference have proximately caused damage to 1 and thus to Cox's rights to and interests as a shareholder of HVI.]  Cox invested in High View which in turn invested substantial funds and human capital resources into developing and owning the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

10.      The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control.  Cox relied on Lynch to carry out the agreed upon common purpose of High View.  Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

11.      On information and belief, development proceeded as expected, with Lynch in charge, and the Devices developed by High View are ready for introduction into the gaming market in the United States and elsewhere in the world.

12.      On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving High View and its shareholders and beneficiaries of the use of those assets.

17

13.    On information and belief, Lynch and AGI, misappropriated the Devices and High View's assets and has sought to obtain required approvals and/or licenses from gaming laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.

14.    Neither Lynch nor AGI have paid High View for those assets, nor entered into any agreement with High View to acquire or make any use of the Devices.

15.    There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered with and continue to intentionally interfere with High View's prospective business relations.

16.    Lynch's and AGI's intentional interference and other conduct and communications have proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

17.    On or about June 1, 2006 Lynch filed a Petition for Dissolution of High View and the Appointment of a Receiver in the Chancery Court of the State of Delaware in and for New Castle County, Civil Action No.: 2193-N.  High View and Cox were named as Respondents in that action.  (See Petition, attached as Exhibit A, hereto.)

18.    Lynch's actions, the pending Petition for Dissolution of High View, and his fifty percent (50%) interest in High View have rendered the management of High View powerless in that the Board of Directors of High View, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having High View sue him..  Accordingly, any demand that High View's management pursue High View's rights against Lynch and AGI would be futile.

19.    Based upon all of the foregoing, Cox is excused from having to make any demand upon High View to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name and also for the benefit of High View so as to prevent injustice and to adequately and fairly protect the interests and rights of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against AGI for the following:

(i)    [for] compensatory and punitive damages;

(ii)    [for] injunctive relief;

(iii)    [for] reasonable attorneys' fees and costs;

(iv)    [for] pre and post judgment interest on all sums awarded; and

(v)    [for] all such further relief as the Court deems just and appropriate.

## COUNT II

### (Conversion)

20.    Cox repeats his allegations in paragraphs numbered 1 through 19 above as if [set forth at length herein] fully set forth herein.

21.    AGI, directly and/or through Lynch, has converted the Devices and other assets of [HVI] High View to the detriment of [HVI] High View and Cox by taking those assets for its own use without permission and without paying for same.

22.    AGI's conversion has proximately caused damage to [HVI] High View and [thus to] Cox's rights and interests as a shareholder of [HVI] High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

19

WHEREFORE, [Third-Party Plaintiff Paul A.] Cox, <u>individually and derivatively on</u>

<u>behalf of High View,</u> demands judgment against [Third-Party Defendant AutoGaming, Inc.] <u>AGI</u>

[as follows] <u>for the following:</u>

      (i)      [for] compensatory <u>and punitive</u> damages;

      (ii)      [for] injunctive relief;

      (iii)      [for] reasonable attorneys' fees and costs;

      (iv)      [for] pre and post judgment interest on all sums awarded; and

      (v)      [for] all such further relief as the Court deems just and appropriate.


COOPER LEVENSON APRIL NIEDELMAN &
WAGENHEIM, P.A.
ATTORNEYS FOR DEFENDANT, PAUL A. COX


By:  /S/ Erin K. Brignola
      Erin K. Brignola (DE #2723)
      Kevin J. Thornton (NJ #1332)
      Fredric L. Shenkman (NJ #4102)
      30 Fox Hunt Drive
      Bear, Delaware 19701
      (302) 838-2600
      (302) 838-1942 fax

DATED: July 31, 2006

CLAC 25623.1

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DANIEL ANTHONY LYNCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-365 JJF |
| | ) | |
| COINMASTER USA, INC., a Delaware | ) | |
| corporation, and PAUL A. COX, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| and | ) | **NON-ARBITRATION** |
| | ) | |
| PAUL A. COX, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO GAMING, INC., a Delaware | ) | |
| corporation, | | |
| | | |
| Third-Party Defendant. | | |

---

**AMENDED ANSWER, DEFENSES, COUNTERCLAIM,
AND THIRD-PARTY COMPLAINT**

---

Defendant, Paul A. Cox ("Cox") by way of Amended Answer to the Complaint filed on

behalf of the Plaintiff, Daniel Anthony Lynch ("Lynch") says:

<u>Introduction</u>

1.      Admitted that Defendant, Coinmaster USA, Inc. ("Coinmaster"), is a Delaware corporation whose business includes developing and renting electronic casino games and that is licensed to and does do business in among other places the State of California and at California Native American Tribal Casinos and that Cox was and is a shareholder of Coinmaster. Denied that Lynch was a Director of Coinmaster from its inception. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

<u>The Parties</u>

2.      Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

3.      Admitted.

4.      Admitted that Cox is a British foreign national who currently resides in the State of Florida. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

<u>Background</u>

5.      Denied that Coinmaster Gaming PLC ("CG") was formed in 1980. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

6.      Admitted.

7.      Admitted only that Lynch approached Cox and requested that he become involved in the Coinmaster activities in the United States, to which Cox agreed, in exchange for a ten percent

2

(10%) interest in Coinmaster.   As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

8.    Admitted.

9.    Admitted.

10.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

11.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

12.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

13.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

14.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

15.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

16.    Admitted.

17.    Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

18.    Admitted that Cox, Lynch and Brad Hutcheon ("Hutcheon") agreed to bid for CG's interest in Coinmaster.   The remaining allegations are denied.

19.    Denied.

3

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

<u>Count 1</u>

<u>(Breach of Contract)</u>

28.    Cox incorporates his responses to Paragraphs 1 through 27 as if fully set forth herein.

29.    Denied.

30.    Denied.

31.    Denied.

<u>COUNT II</u>

<u>(Deceptive Trade Practices)</u>

32.    Cox incorporates his responses to Paragraphs 1 through 31 as if fully set forth herein.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Denied.

4

## COUNT III

## (Intentional Interference With Prospective Business Relations)

37.     Cox incorporates his responses to Paragraphs 1 through 36 as if fully set forth herein.

38.     Denied.

39.     Denied.

40.     Denied.

## COUNT IV

## (Fraud)

41.     Cox incorporates his responses to Paragraphs 1 through 40 as if fully set forth herein.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state any valid or viable cause of action upon which relief may be granted.

2.      Service of the Summons and the Complaint was defective and invalid and all rights, privileges, and defenses are reserved.

3.      Lynch's claims for relief are barred by applicable statutes of limitations.

4.      Lynch's claims for relief are barred by the Doctrine of Laches.

5.      Lynch's claims for relief are barred by the Doctrine of Unclean Hands.

6.      Lynch's claims for relief are barred by the Doctrine of Estoppel.

CLAC 25524.1

7.      Lynch's claims for relief are barred by the Doctrine of Waiver.

8.      Lynch's claims for relief are barred because he intentionally failed to disclose to Coinmaster and Cox the existence and the terms and conditions of his Directors and/or Executive Services Contract with and his legal obligations to CG.

9.      Lynch's claims for relief are barred because the Directors and/or Executive Services Contract attached as Exhibit "A" to Lynch's Complaint (the "Coinmaster Complaint") is null and void and/or voidable for numerous reasons including but not limited to that Lynch admitted it might be in conflict with or barred by his Directors and/or Executive Services Contract with CG and he agreed that if that was the case, then the Coinmaster Contract would be voided.

10.     The Coinmaster Contract should be reformed to accurately reflect the parties' true intentions that it was to serve as, among other things, a "Poison Pill" and the stated terms of compensation manifestly bore no relationship to what was affordable to a new business venture that was unprofitable with minimal turnover.

11.     Cox breached no contractual obligations to Lynch.

12.     Cox did not act in his individual capacity and was acting as a director officer and/or an authorized representative of Coinmaster and at all times discharged his duties honestly, lawfully, in good faith, and in accordance with applicable fiduciary duties.

13.     Cox is not indebted to Lynch for any sum of money.

14.     Cox denies that Lynch is entitled to any sum or damages from him, but to the extent there is any such finding, Cox is entitled to damages and set-offs against Lynch.

15.     Lynch is not entitled to punitive damages against Cox nor Coinmaster.

16.     Cox will rely upon all defenses pled by and/or available to Coinmaster per controlling law and statutes and any contracts between Lynch and Coinmaster that might be valid and enforceable.

17.     Investigation and discovery are on-going and Cox reserves the right to assert additional defenses as same may be revealed.

WHEREFORE, Defendant, Paul A. Cox, demands judgment dismissing the Complaint with prejudice and with an award of attorneys' fees and costs together with all such further relief as the Court deems just and appropriate.

## AMENDED COUNTERCLAIM

Paul A. Cox ("Cox"), individually and derivatively, on behalf of High View, Inc. ("High View"), by way of Counterclaim against Daniel Anthony Lynch ("Lynch") says:

## COUNT I

### (Intentional Interference With Prospective Business Relations)

1.     High View, a Delaware corporation, was formed on or about June 11, 2003 and Cox and Lynch were and are fifty percent (50%) shareholders.

2.     On information and belief, Lynch is a British foreign national who currently resides at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom.

3.     Lynch was, at one time, a director of Defendant, Coinmaster USA, Inc. ("Coinmaster").

4.     Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.

5.     Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.

6.     These actions ended Lynch's formal association with Coinmaster.

7

7.      In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed High View, as a Delaware corporation. Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of High View.

8.      Cox invested in High View which in turn invested substantial funds and human capital resources into developing and owning the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

9.      The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control. Cox relied on Lynch to carry out the agreed upon common purpose of High View. Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

10.     On information and belief, development proceeded as expected, with Lynch in charge, and the Devices developed by High View are ready for introduction into the gaming market in the United States and elsewhere in the world.

11.     On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving High View and its shareholders and beneficiaries of the use of those assets.

12.     On information and belief, Lynch directly and/or via an entity known as AutoGaming, Inc. ("AGI"), misappropriated the Devices and High View's assets and has sought to obtain

8

required approvals and/or licenses from gaming laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.

13.    Neither Lynch nor AGI have paid High View for those assets, nor entered into any agreement with High View to acquire or make any use of the Devices.

14.    There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered with and continue to intentionally interfere with High View's prospective business relations.

15.    Lynch's and AGI's intentional interference and other conduct and communications have proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

16.    On or about June 1, 2006 Lynch filed a Petition for Dissolution of High View and the Appointment of a Receiver in the Chancery Court of the State of Delaware in and for New Castle County, Civil Action No.: 2193-N.  High View and Cox were named as Respondents in that action.  (See Petition, attached as Exhibit A, hereto.)

17.    Lynch's actions, the pending Petition for Dissolution of High View, and his fifty percent (50%) interest in High View have rendered the management of High View powerless in that the Board of Directors of High View, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having High View sue him.  Accordingly, any demand that High View's management pursue High View's rights against Lynch and AGI would be futile.

18.    Based upon all of the foregoing, Cox is excused from having to make any demand upon High View to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name

and also for the benefit of High View so as to prevent injustice and to adequately and fairly protect the interests and rights of High View.

WHEREFORE, Cox, individually and derivatively, on behalf of High View, demands judgment against Lynch for the following:

      (i)     compensatory and punitive damages;

      (ii)    injunctive relief;

      (iii)   reasonable attorneys' fees and costs;

      (iv)   pre and post judgment interest on all sums awarded; and

      (v)    all such further relief as the Court deems just and appropriate.

## COUNT II

### (Conversion)

19.    Cox repeats his allegations in paragraphs numbered 1 through 18 above as if fully set forth herein.

20.    Lynch, directly and/or through AGI, converted the Devices and other assets of High View to the detriment of High View and Cox by taking those assets for his and AGI's own use without permission and without paying for same.

21.    Lynch's conversion, directly and/or through AGI, has proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

      (i)     compensatory and punitive damages;

CLAC 25524.1

      (ii)     injunctive relief;

      (iii)    reasonable attorneys' fees and costs;

      (iv)    pre and post judgment interest on all sums awarded; and

      (v)    all such further relief as the Court deems just and appropriate.

<u>COUNT III</u>

<u>(Fraud)</u>

22.    Cox repeats his allegations in paragraphs numbered 1 through 21 above as if fully set forth herein.

23.    Cox and Lynch formed High View for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing the Devices to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

24.    The purpose of developing the Devices was to benefit High View and its shareholders and beneficiaries and to allow Coinmaster to increase its market share and avoid certain of the problems which had limited its growth in the U.S. market up to that time.

25.    The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control.  Cox relied on Lynch to carry out the agreed upon common purpose of High View.  Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

11

26.    Both Cox and Lynch, as well as Coinmaster, contributed substantial funds to High View for the development of the Devices, to which Lynch had access for the purpose of developing the Device.

27.    Lynch undertook the development efforts, retaining the services of others and developing the gaming machine allegedly for the benefit of High View and, derivatively, Cox.

28.    However, by the Spring and Summer of 2004, it became clear that Lynch considered the software intellectual property rights related to the machine to belong to him, and was embarked on a development process which suited his needs and desires, rather than High View's or Cox's.

29.    Disagreements on the direction Lynch was taking were unavailing, inasmuch as Lynch simply ignored the advice and demands of Cox.

30.    On information and belief, the development of the machine was completed by late-2004 or early-2005.

31.    Thereafter, Lynch directly and/or through AGI took the machine for his and/or AGI's own use, marketing it in Europe and the United States, solely for his and/or AGI's benefit and ignoring the rights and interests of Cox, High View and High View's shareholders and beneficiaries.

32.    On information and belief, Lynch never intended to develop the machine for the benefit of High View, Cox or Coinmaster and mislead Cox and Coinmaster into investing in High View without ever intending to use the newly developed gaming machine for the benefit of Cox, High View and High View's shareholders and beneficiaries.

33.    Cox and High View reasonably relied upon Lynch's knowing misrepresentations when they provided him with substantial development funds and control over the development of the Devices.

12

34.    Cox, High View and High View's shareholders and beneficiaries have been damaged insofar as the value of High View's shares has been reduced or totally destroyed by Lynch's theft, independently and/or through AGI, of the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

(i)    compensatory and punitive damages;

(ii)    injunctive relief;

(iii)    reasonable attorneys' fees and costs;

(iv)    pre and post judgment interest on all sums awarded; and

(v)    all such further relief as the Court deems just and appropriate.

## COUNT IV

### (Breach of Fiduciary Duty)

35.    Cox repeats his allegations in paragraphs numbered 1 through 34 above as if fully set forth herein.

36.    As a fifty percent (50%) shareholder and a Director of High View, Lynch owes a fiduciary duty to High View and to Cox, in Cox's capacity as a fifty-percent (50%) shareholder and Director of High View.

37.    Lynch's theft, independently and/or through AGI, of the Devices and all assets and good will of High View, resulting in the reduction of total destruction of the value of High View's shares, violates Lynch's fiduciary duties owed to High View and to Cox.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

13

      (i)     compensatory and punitive damages;

      (ii)    injunctive relief;

      (iii)   reasonable attorneys' fees and costs;

      (iv)   pre and post judgment interest on all sums awarded; and

      (v)    all such further relief as the Court deems just and appropriate.

## AMENDED THIRD-PARTY COMPLAINT

Paul A. Cox ("Cox"), individually and derivatively on behalf of High View, by way of Third-Party Complaint against AutoGaming, Inc. ("AGI") says:

## COUNT I

### (Interference With Prospective Business Relations)

1.    High View, Inc. ("High View"), a Delaware corporation, was formed on or about June 11, 2003 and Cox and Daniel A. Lynch ("Lynch") were and are fifty percent (50%) shareholders.

2.    AGI is believed to be a Delaware corporation formed by Lynch in or after 2004.

3.    On information and belief, Lynch is a British foreign national who currently resides at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom.

4.    Lynch was, at one time, a director of Defendant, Coinmaster USA, Inc. ("Coinmaster").

5.    Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.

6.    Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.

7.    These actions ended Lynch's formal association with Coinmaster.

14

8.     In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed High View, as a Delaware corporation.  Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of High View.

9.     Cox invested in High View which in turn invested substantial funds and human capital resources into developing and owning the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

10.    The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control.  Cox relied on Lynch to carry out the agreed upon common purpose of High View.  Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

11.    On information and belief, development proceeded as expected, with Lynch in charge, and the Devices developed by High View are ready for introduction into the gaming market in the United States and elsewhere in the world.

12.    On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving High View and its shareholders and beneficiaries of the use of those assets.

13.    On information and belief, Lynch and AGI, misappropriated the Devices and High View's assets and has sought to obtain required approvals and/or licenses from gaming

laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.

14.    Neither Lynch nor AGI have paid High View for those assets, nor entered into any agreement with High View to acquire or make any use of the Devices.

15.    There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered with and continue to intentionally interfere with High View's prospective business relations.

16.    Lynch's and AGI's intentional interference and other conduct and communications have proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

17.    On or about June 1, 2006 Lynch filed a Petition for Dissolution of High View and the Appointment of a Receiver in the Chancery Court of the State of Delaware in and for New Castle County, Civil Action No.: 2193-N.  High View and Cox were named as Respondents in that action.  (See Petition, attached as Exhibit A, hereto.)

18.    Lynch's actions, the pending Petition for Dissolution of High View, and his fifty percent (50%) interest in High View have rendered the management of High View powerless in that the Board of Directors of High View, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having High View sue him..  Accordingly, any demand that High View's management pursue High View's rights against Lynch and AGI would be futile.

19.    Based upon all of the foregoing, Cox is excused from having to make any demand upon High View to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name

and also for the benefit of High View so as to prevent injustice and to adequately and fairly protect the interests and rights of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against AGI for the following:

(i)     compensatory and punitive damages;

(ii)    injunctive relief;

(iii)   reasonable attorneys' fees and costs;

(iv)    pre and post judgment interest on all sums awarded; and

(v)     all such further relief as the Court deems just and appropriate.

<u>COUNT II</u>

<u>(Conversion)</u>

20.    Cox repeats his allegations in paragraphs numbered 1 through 19 above as if fully set forth herein.

21.    AGI, directly and/or through Lynch, has converted the Devices and other assets of High View to the detriment of High View and Cox by taking those assets for its own use without permission and without paying for same.

22.    AGI's conversion has proximately caused damage to High View and Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against AGI for the following:

(i)     compensatory and punitive damages;

(ii)    injunctive relief;

CLAC 25524.1

(iii)    reasonable attorneys' fees and costs;

(iv)    pre and post judgment interest on all sums awarded; and

(v)    all such further relief as the Court deems just and appropriate.


COOPER LEVENSON APRIL NIEDELMAN &
WAGENHEIM, P.A.
ATTORNEYS FOR DEFENDANT, PAUL A. COX


By:_____/s/ Erin K. Brignola_____

DATED: July 31, 2006          Erin K. Brignola (DE #2723)
                              Kevin J. Thornton (NJ #1332)
                              Fredric L. Shenkman (NJ #4102)
                              30 Fox Hunt Drive
                              Bear, Delaware 19701
                              (302) 838-2600
                              (302) 838-1942 fax


18

19

EFiled: Jun 1 2006 3:46PM EDT
Transaction ID 11421444

## IN THE CHANCERY COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| DANIEL ANTHONY LYNCH, | ) | C.A. No. _21930_ |
| Petitioner, | ) | |
| v. | ) | |
| HIGH VIEW, INC., | ) | |
| a Delaware corporation, and | ) | |
| PAUL A. COX, | ) | |
| Respondents. | ) | |

## PETITION FOR DISSOLUTION AND APPOINTMENT OF RECEIVER PURSUANT TO 8 Del. C. §§ 273 AND 279

Petitioner Daniel Anthony Lynch ("Lynch"), by and through counsel states in support of his Petition as follows:

## INTRODUCTION

1.    Lynch, as one of two fifty percent stockholders of the Delaware joint venture corporation High View, Inc. (the "Corporation"), petitions this Court, pursuant to 8 Del. C. § 273, to order the discontinuation of the joint venture and the disposition of its business and assets. In addition, Lynch petitions this Court, pursuant to 8 Del. C. § 279, to appoint a receiver for the Corporation because the two stockholders and directors are so divided that they have failed to hold any meetings, conduct any business, or communicate in any meaningful way since 2004.

## PARTIES

2.    Petitioner Lynch is a British foreign national with a residence located at 134 The Aspect, Queen Street, Cardiff CF 10 2GP, Wales, United Kingdom.

53805 v1

3.    Respondent High View, Inc. is a corporation organized and incorporated pursuant to the law of the State of Delaware on June 11, 2003. The Corporation can be served by serving its registered agent, Delaware Intercorp, Inc., 113 Barksdale Professional Center, Newark, Delaware 19711-3528.

4.    Respondent Paul A. Cox ("Cox") is a British foreign national residing at 15 Colonial Drive, Cocoa Beach, Florida. Cox can be served pursuant to Delaware long arm statutes 10 Del. C. §§ 3104 and/or 3114.

BACKGROUND

5.    Lynch and Cox are the Corporation's two directors. Each is an equal 50% stockholder in the Corporation, and they have served as the sole members of the Corporation's board of directors and sole stockholders since its inception.

6.    Lynch and Cox own three hundred and seventy-fifty shares of the Corporation's one thousand five hundred outstanding shares of stock.

7.    Since August 2004, Lynch and Cox have been unable to work or communicate with each other and are currently involved in a legal action relating to another company, Coinmaster USA, Inc., in which Lynch and Cox are both directors, captioned Daniel Anthony Lynch v. Coinmaster USA, Inc., Superior Court of the State of Delaware in and for New Castle County, C.A. No. 06C-04-038 CHT.

8.    As alleged in the other action, Lynch discovered that in June 2003 Cox forged Lynch's signature on an application for a tribal gaming vendor license with the Santa Ynez Tribal Gaming Agency in California and had it illegally notarized by his business associate in Florida.

2

9.    Lynch has committed large sums of money to fund the Corporation.  Cox agreed to issue additional corporate shares of stock to Lynch commensurate with Lynch's investment, but Cox has refused to issue any shares.

10.    The Corporation is, and has since its inception, been insolvent.  It has several significant outstanding invoices that it has failed to pay.  It has little or no assets.  The two directors and equal stockholders have been in conflict, and the Corporation has been inactive for well over a year.

11.    Cox also held board of director meetings without Lynch's knowledge or presence. He then produced fraudulent meeting minutes falsely reflecting Lynch's presence and participation.

12.    Lynch desires to discontinue the joint venture corporation, to dissolve the Corporation, and to dispose of the assets used in the joint venture in accordance with a plan to be agreed upon by Lynch and Cox or, if no plan is agreed upon, in accordance with the instructions of this Court pursuant to its authority under Section 273 of the Delaware General Corporation Law.

13.    Attached as Exhibit A hereto is a copy of the Plan of Discontinuance and Distribution proposed by Lynch.

14.    Copies of this Petition and Exhibit A attached hereto have been transmitted in writing to the Corporation and Cox, and a certificate so stating is attached hereto as Exhibit B.

## COUNT I
### (Petition to Appoint a Receiver)

15.    Lynch incorporates the allegations stated in paragraph 1 through 14 of this Petition into this Count I.

3

16.   As noted above, the stockholders are so divided that they have failed to hold any meetings, conduct any business, or communicate in any meaningful way since 2004, and they are involved in litigation that will make their relationship more contentious.   Because neither a directors nor a stockholders meeting can be convened, and, in any event, given the divisiveness between the directors and stockholders, the board and the Corporation are deadlocked on all corporate governance and management issues.   As a result, the business of the Corporation is suffering, and continues to be threatened, with irreparable injury.

17.   Petitioner has no adequate remedy at law.

18.   Pursuant to 8 Del. C. § 279, Lynch petitions this Court to appoint one or more persons to act as receiver of the Corporation and to enter such further decrees concerning the authority and actions of the receiver as the Court deems appropriate.

## COUNT II
### (Dissolution of Joint Venture Corporation)

19.   Lynch incorporates the allegations stated in paragraphs 1 through 18 of this Petition into this Count II.

20.   Lynch and Cox are each stockholders owning 50% of the outstanding stock of the Corporation.

21.   At all times since on or about June 11, 2003, Lynch and Cox have operated the Corporation as a joint venture.  The Corporation is an enterprise undertaken by Lynch and Cox to carry out the single business enterprise known as High View, Inc. for the mutual benefit of Lynch and Cox.  Lynch and Cox, as the only officers and directors of the Corporation, have participated in the joint venture equally as follows:

A.      Equal stockholder interests in the Corporation;

4

B.    Joint decision makers on all decisions relating to the hiring, terminating, and compensating of employees of the Corporation;

C.    Joint participants in all major decisions concerning the Corporation;

D.    Active participants in all previous negotiations to sell or lease any assets of the business.

22.    Lynch desires that the stockholders discontinue the joint venture and dispose of the assets of the Corporation pursuant to a plan to market the assets or the stock of the Corporation in order to maximize value for the stockholders.

23.    Lynch desires to discontinue the joint venture and to dispose of the assets used in the joint venture in accordance with a plan to be agreed upon by both stockholders, or that, if no such plan shall be agreed upon by both stockholders, the Corporation be dissolved.

24.    Lynch's proposed plan of discontinuance is attached to this Petition as Exhibit A.

WHEREFORE, Lynch prays for the following:

1.    That if within three months from the filing of this Petition, or upon the expiration of such longer period as Lynch and Cox may agree upon in accordance with Section 273(b) of the Delaware General Corporation Law, both stockholders have not filed with the Court a certificate stating that they have agreed upon the plan attached as Exhibit A to this Petition, or a modification of that plan, this Court enter an order directing the discontinuance of the joint venture and the distribution of the assets used in the joint venture in accordance with the plan proposed in Exhibit A or such other plan as the Court may deem just and appropriate;

2.    Awarding Petitioner his attorneys' fees, expenses and costs incurred in connection with this action;

5

3.    That this Court appoint a receiver with all necessary powers to dissolve the corporation, liquidate its assets, and wind up its affairs; and

4.    Such other relief as this Court deems appropriate.

SEITZ, VAN OGTROP & GREEN, P.A

/s/ Kevin A. Guerke
JAMES S. GREEN, ESQ. (DE0481)
KEVIN A. GUERKE, ESQ. (DE4096)
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
Attorneys for Plaintiff

Dated: June  1  , 2006

6

EFiled: Jun 1 2006 3:46PM
Transaction ID 11421444

# EXHIBIT A

## IN THE CHANCERY COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

DANIEL ANTHONY LYNCH,                  )
                                       )        C.A. No. _____
              Petitioner,              )
                                       )
        v.                             )
                                       )
HIGH VIEW, INC.,                       )
a Delaware corporation, and            )
PAUL A. COX,                           )
                                       )
              Respondent.              )

## PLAN OF DISCONTINUANCE AND DISTRIBUTION OF
## ASSETS OF HIGH VIEW, INC.

WHEREAS, Daniel Anthony Lynch ("Lynch") and Paul A. Cox ("Cox") own, in equal

amounts, all of the issued and outstanding stock of High View, Inc., a Delaware corporation (the

"Corporation"); and

WHEREAS, Lynch and Cox are engaged in the prosecution of a joint venture through the

Corporation; and

WHEREAS, Lynch and Cox are unable to agree upon the desirability of discontinuing

the joint venture and distributing the assets used in such joint venture; and

WHEREAS, Lynch has filed a Petition in the Court of Chancery of the State of Delaware

in and for New Castle County ("Court of Chancery") pursuant to Sections 273 and 279 of the

Delaware General Corporation Law; and

WHEREAS, Lynch and Cox deem it to be in their respective best interests to agree upon

a plan for the discontinuance of the joint venture and the distribution of the assets used in such

venture.

53861 v1

NOW, THEREFORE, in consideration of the foregoing and of their mutual covenants and agreements herinafter set forth, Lynch and Cox hereby agree as follows:

1.    Lynch and Cox (the "Stockholders") shall agree, and in the event that they do not agree, they shall make a joint application of the Court of Chancery for the appointment of qualified receiver pursuant to Section 273 of the Delaware General Corporation Law, to effect an orderly and prompt dissolution of the Corporation and sale of the assets of the Corporation as contemplated by this Plan of Discontinuance and Distribution of Assets (the "Plan").    The receiver's compensation shall be determined by agreement between the receiver and the Corporation subject to approval of the Court of Chancery, which may fix the receiver's compensation in the event of a disagreement between the receiver and the Corporation.

2.    For a period of one hundred twenty (120) days, the receive shall solicit bids for the purchase of the assets of the Corporation, and shall coordinate and oversee the sale of the assets of the Corporation to the purchaser which offers the highest price, and which demonstrates its financial ability to pay such price, and provides commercially reasonable assurances of the timely payment of the purchase price.

3.    Offers to purchase the assets of the Corporation shall be solicited, and negotiations with purchasers shall be conducted, in such manner and pursuant to such procedures as the receiver shall determine to be appropriate.

4.    The Stockholders of the Corporation may submit purchase offers which offers the receiver shall evaluate under the same criteria as offers from third parties.

5.    In the event of a dispute as to which purchase offers the highest price, the receiver shall determine the highest price offered by an offer or which has demonstrated its financial ability to pay such price and provide commercially reasonable assurances of timely payment.

2

6.    Upon the execution of this Plan by the Stockholders, all of the books and records and past and current financial information and documentation of the Corporation shall be made freely available to the Stockholders, the receiver, and potential purchasers who shall also, for their examination, be entitled to inspect all physical assets of the Corporation.    Potential purchasers to whom information or documentation is provided shall be required to sign appropriate confidentiality agreements.

7.    The directors and the Stockholders shall vote to effectuate the sale of the assets of the Corporation to the purchaser on the terms recommended by the receiver.

8.    Within one week following the sale of the assets, the Board of Directors of the Corporation shall adopt appropriate resolutions providing for the dissolution of the Corporation and disposition of its assets in accordance with this Plan.

9.    Within three (3) days following adoption by the Board of Directors of resolutions providing for the dissolution of the Corporation and distribution of the assets in accordance with this Plan, the stockholders shall execute a written consent of stockholders pursuant to Section 228 of the Delaware General Corporation Law approving the above-specified resolutions.

10.    Performance of the obligations and undertakings of Lynch and Cox under this Plan may be specifically enforced in the Court of Chancery, and Lynch and Cox hereby consent to the jurisdiction of the Court of Chancery for such purpose.

11.    This Plan shall be construed according to the interests, rights, duties, and privileges of the parties to this agreement and shall be governed by the laws of the State of Delaware.

12.    This Plan shall inure to the benefit of the successors, representatives, receivers, trustees, and assigns of Lynch and Cox.

3

IN WITNESS WHEREOF, Lynch and Cox have executed this agreement on this ___ day of _____, 2006.

DANIEL A. LYNCH

By: _____

Title: _____


PAUL A. COX

By: _____

Title: _____

4

# EXHIBIT B

## IN THE CHANCERY COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| DANIEL ANTHONY LYNCH, | ) | C.A. No. _____ |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HIGH VIEW, INC., | ) | |
| a Delaware corporation, and | ) | |
| PAUL A. COX, | ) | |
| | ) | |
| Respondents. | ) | |

## CERTIFICATE

I hereby certify that a copy of the Petition and a copy of the proposed Plan of Discontinuance and Distribution attached as Exhibit A to the Petition have been transmitted in writing by certified mail, return receipt requested, to High View, Inc. and Paul A. Cox, the Corporation's only officer and director other than Petitioner Anthony Daniel Lynch, at the following addresses:

> High View, Inc.
> c/o Registered Agent
> Delaware Intercorp, Inc.
> 113 Barksdale Professional Center
> Newark, DE 19711-3528
>
> Paul A. Cox
> 15 Colonial Drive
> Cocoa Beach, FL 32931-2743

53865 v1

SEITZ, VAN OGTROP & GREEN, P.A

*Kevin Guerke*

/s/ Kevin A. Guerke
**JAMES S. GREEN, ESQ. (DE0481)**
**KEVIN A. GUERKE, ESQ. (DE4096)**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
          Attorneys for Plaintiff

Dated: June  1 , 2006

2

**SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(a)**
**OF THE RULES OF THE COURT OF CHANCERY**

EFiled: Jun 1 2006 3:46PM
Transaction ID 11421444

The information contained herein is for the use by the Court for statistical and administrative only. Nothing stated herein shall be deemed an admission by or bind upon any party.

1. Caption of Case:
   Lynch, Daniel Anthony v. High View, Inc. and Paul A. Cox

2. Date filed:
   June 1, 2006

3. Name and address of counsel for Petitioner:
   James S. Green, Esquire
   Kevin A. Guerke, Esquire
   Seitz, Van Ogtrop & Green, P.A.
   222 Delaware Avenue, Suite 1500
   P. O. Box 68
   Wilmington, DE 19899

4. Short statement and nature of claim asserted: Petitioner seeks dissolution of High View, Inc. and appointment of receiver pursuant to 8 Del. C. § 273 and 279.

5. Substantive field of law involved (check one):
   _____ Administrative Law          _____ Trade secrets/trademark/or other
   _____ Commercial Law                      intellectual property
   _____ Constitutional Law          _____ Trusts
   __X__ Corporation Law             _____ Wills and estates
   _____ Guardianships               _____ Zoning
   _____ Labor Law                   _____ Other
   _____ Real Property

6. Related case(s):
   NONE

7. Basis of court's jurisdiction (including citation of any statute conferring jurisdiction):
   8 Del. C. § 273 and 279 -

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought:
   N/A

9. If the complaint seeks summary or expedited proceedings, check here _____.

                              /s/ Kevin A. Guerke
                              Signature of Attorney of Record
                              **JAMES S. GREEN, ESQ. (DE0481)**
                              **KEVIN A. GUERKE, ESQ. (DE4096)**
                              **SEITZ, VAN OGTROP & GREEN, P.A.**
                              222 Delaware Avenue, Suite 1500
                              P. O. Box 68
                              Wilmington, DE 19899
                              (302) 888-0600

54282 v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL ANTHONY LYNCH,    )
       )
     Plaintiff,    )
       )
     v.    )   Civil Action No. 06-365 JJF
       )
COINMASTER USA, INC., a Delaware    )
corporation, and PAUL A. COX,    )
       )
     Defendants.    )

## ORDER GRANTING LEAVE TO FILE AMENDED ANSWER, DEFENSES COUNTERCLAIM, AND THIRD-PARTY COMPLAINT

AND NOW, this _____ day of _____, 2006, the Court having considered

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff, Paul A. Cox's Motion for Leave to File

an Amended Answer, Defenses, Counterclaim, and Third-Party Complaint,

IT IS ORDERED that the Motion is GRANTED.

_____
J.

STATE OF DELAWARE

NEW CASTLE COUNTY

BE IT REMEMBERED that on this 31st day of July, 2006, personally appeared before me the undersigned, the Subscriber, a Notary Public for the State and County aforesaid, Beverly Bumgamer, who, being by me duly sworn according to law, depose and says that she is employed in the offices of Cooper Levenson, 30 Fox Hunt Drive, Unit 30, Fox Run Shopping Center, Bear, DE 19701, and that on the above date she deposited in the mailbox at the Bear Post Office, Bear, Delaware the attached papers addressed to:

Thomas Preston, Esquire
Blank Rome LLP
1201 North Market Street
Suite 800
Wilmington, DE 19899
Attorney for Coinmaster USA, Inc.

James S. Green, Esquire
Kevin A. Guerke, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
Suite 1500
P.O. Box 68
Wilmington, DE 19899
Attorney for Daniel A. Lynch

Daniel Anthony Lynch
134 The Aspect, Queen Street
Cardiff CF 102GP
Wales, UK

Paul A. Cox
650 East 3rd Avenue
Mount Dora, FL 32757

Cooper Levenson April Niedelman & Wagenheim, P.A.
Attention: Kevin J. Thornton, Esquire
1125 Atlantic Avenue
Atlantic City, NJ 08401

_____/s/ Beverly Bumgarner_____
BEVERLY BUMGARNER


SWORN AND SUBSCRIBED before me the day, month and year aforesaid.

_____/s/ Stacey Mania_____
NOTARY PUBLIC