## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DANIEL ANTHONY LYNCH,      )
                            )     C.A. No. 06-365 - JJF
        Plaintiff,           )
                            )
           v.               )
                            )
COINMASTER USA, INC.,       )
a Delaware corporation,        )
                            )
        Defendant/Counterclaim Plaintiff,    )
                            )
PAUL A. COX,              )
                            )
        Defendant/Counterclaim Plaintiff and   )
        Third-Party Plaintiff,         )
                            )
           v.               )
                            )
AUTO GAMING, INC.,         )
                            )
        Third-Party Defendant.       )

### PLAINTIFF'S AND THIRD-PARTY DEFENDANT'S REPLY
### BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

**JAMES S. GREEN, ESQ. (DE0481)**
**KEVIN A. GUERKE, ESQ. (DE4096)**
SEITZ, VAN OGTROP & GREEN, P.A
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600
Attorneys for Plaintiff and
Third Party Defendant

Dated: August 7, 2006

55322 v1

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ................................................................................................................. 1

A.  Cox's Counterclaim and Third-Party Complaint Should Be Dismissed ................................... 1

B.  CM's Counterclaim Should be Dismissed ................................................................. 3

C.  The Motions to Amend should be Denied ................................................................. 3

CONCLUSION ................................................................................................................ 4

# TABLE OF AUTHORITIES

Wilson v. Department of Correction of Delaware,
2001 WL 845652, *4 (D. Del. 2001) .......................................................................3

Levine v. Milton,
19 A.2d 145 (Del. Ch. 1966) ...............................................................................1

## I.    **Argument**

Cox[1] and CM lack standing to bring their Counterclaims and Third-Party Complaint.  In

an attempt to cure the obvious defects in their pleadings, Cox and CM have attempted to add a

separate entity and non-party, HV, to try to bolster their claims.  By doing so, Cox and CM

tacitly admit that they lacked standing to bring the claims in their own right.

### A.    **Cox's Counterclaim and Third-Party Complaint should be Dismissed.**

Cox lacks standing to bring his Counterclaim and Third-Party Complaint and attempting

to add HV to this case violates numerous Rules of this Court.  In response to Lynch's and AGI's

Motion to Dismiss, Cox does nothing more than move to amend his claims, adding another party.

He offers no counter arguments.  He offers no counter authority.  Instead, he filed a motion to

amend adding a derivative action by a non-party entity, HV, which would have to be joined as a

nominal defendant and indispensable party. Levine v. Milton, 219 A.2d 145 (Del. Ch. 1966).

However, there is no attempt to officially bring HV into this case as a party.

Cox, individually, lacks standing to bring his claims.  He has no personal ownership

interest in HV's assets.  Cox acknowledges this throughout his amended pleadings when he

confirms that the assets that were allegedly stolen were HV's, not Cox's.  (See Amended

Counterclaim ¶¶ 8, 12, 15).  After the Motion to Dismiss was filed and it was pointed out that

any claim would be HV's, Cox attempted to add HV as a party in violation of Rule 13.

Rule 13 authorizes only persons who are already parties to assert counterclaims against

opposing parties, whether permissive or compulsory. Fed. R. Civ. P. 13.  Furthermore, a

compulsory counterclaim must arise out of the transaction or occurrence that is the subject matter

of the opposing party's claim. Fed. R. Civ. P. 13(a).  Cox's counterclaim satisfies neither of

these requirements.  HV is not a party in this case and the alleged counterclaim has nothing to do

---

[1] Movants refer to their Opening Brief for defined terms.

with the subject matter of Lynch's Complaint. Moreover, HV cannot be joined through Rules 19 or 20 because HV already brought identical claims against both Lynch and AGI in the Delaware Court of Chancery. (Exhibit "A"). With another action pending in the Delaware Court of Chancery asserting identical claims, both Courts and the parties risk having inconsistent rulings and multiple recoveries.

Additionally, Cox's Third-Party Complaint fails for lack of jurisdiction because both AGI and High View are Delaware corporations, and are parties to a previously filed action in the Delaware Court of Chancery where Cox and High View assert identical claims against AGI. "[P]ermissive counterclaims must be supported by independent grounds of federal jurisdiction." Wright & Miller, 6 Federal Practice and Procedure, § 1422. Diversity jurisdiction here is defeated because High View and AGI are both Delaware corporations.

Cox is not permitted to file a Third-Party Complaint against AGI pursuant to Rule 14 because under no interpretation of the allegations in the Third-Party Complaint is AGI potentially liable to Lynch. Such a claim can only be brought against a non-party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). "A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied. Id. at § 1446. In his Complaint, Lynch asserts claims for breach of contract, deceptive trade practices, consumer fraud, and fraud. Cox's Third-Party Complaint against AGI is foreign to those claims.

**B.**    <u>**CM's Counterclaim should be Dismissed.**</u>

CM's counterclaim against Lynch fails because it lacks standing. Similar to Cox, CM offers nothing to rebut Lynch's arguments and authority supporting his Motion to Dismiss, it merely offers to amend its claim. CM only asserts a claim for conversion. To have such a claim, CM must own the property allegedly converted. At best, CM asserts only a vague expectancy in HV's assets.

CM fails to assert a contractual right to HV's assets or any ownership interest in those assets. If it had a contractual right to HV's property, its claim would be against HV not Lynch. CM alleges that the assets were "to be sold exclusively to Coinmaster for use in its California market." (Amended Counterlcaim ¶ 55). (See Amended Counterlcaim ¶¶ 57, 58) Admittedly, CM is merely a potential customer of HV.

**C.**    <u>**The Motions to Amend should be Denied.**</u>

The "Court may consider such factors as undue delay, undue prejudice to the opposing party and futility of the amendment in determining whether leave to amend should be granted." <u>Wilson v. Department of Correction of Delaware</u>, 2001 WL 845652, *4 (D. Del. 2001). (Exhibit "B") The Motion to Amend should be denied because it will cause Lynch undue prejudice and because it is futile. Lynch will be unduly prejudiced if he is forced to expend the time and expense defending identical claims in two courts. (See Exhibit "A") Moreover, he risks the prospect of two different, inconsistent judgments. The Motion to Amend should be denied as futile because the additional claims are not permitted by Court Rule as described above.

Additionally, the Motion to Amend necessitates bringing in HV as a nominal party defendant thus, defeating diversity jurisdiction.

## CONCLUSION

For all the reasons stated above, Cox and CM's Counterclaim and Third-Party Complaint

should be dismissed.  Their Motion to Amend should also be Denied.


SEITZ, VAN OGTROP & GREEN, P.A

/s/ *Kevin A. Guerke*

**JAMES S. GREEN, ESQ. (DE0481)**
**KEVIN A. GUERKE, ESQ. (DE4096)**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
Attorneys for Plaintiff and
Third Party Defendant


Dated:  August 7, 2006

## CERTIFICATE OF SERVICE

I, Kevin A. Guerke, Esquire, hereby certify that on the 7th day of August, 2006, I electronically filed **PLAINTIFF'S AND THIRD-PARTY DEFENDANT'S REPLY BREIF IN SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of Court using CM/ECF and served such filing to counsel as follows:

**VIA CM/ECF:**

Thomas P. Preston, Esq.
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 Market Street
Wilmington, DE  19801-4226

**VIA FIRST CLASS MAIL:**

Erin K. Brignola, Esq.
Cooper Levenson April Nieldelman
      & Wagenheim P.A.
30 Fox Hunt Drive
Bear, DE  19701

/s/  *Kevin A. Guerke*
_____
Kevin A. Guerke (DE4096)
kguerke@svglaw.com

# EXHIBIT A

IN THE CHANCERY COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

DANIEL ANTHONY LYNCH,      )
                           )
           Petitioner,     )
                           )
      v.                )    Civil Action No. 2193-N
                           )
HIGH VIEW, INC., a      )
Delaware corporation, and   )
PAUL A. COX,          )
           Respondents.   )

---

**ANSWER TO PETITION FOR DISSOLUTION AND APPOINTMENT OF
RECEIVER PURSUANT TO 8 *DEL. C.* §§273 AND 279 AND
COUNTER-PETITION AND THIRD-PARTY PETITION BY PAUL A. COX,
INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF HIGH VIEW, INC.**

---

Respondent Paul A. Cox ("Cox"), individually and on behalf of High View, Inc. ("HV"),
by and through counsel, opposes the Petition for Dissolution and Appointment of Receiver and
asserts the following by way of Counter-Petition:

### INTRODUCTION

1.     Admitted only that Petitioner Daniel Anthony Lynch ("Lynch") brings this
Petition pursuant 8 *Del. C.* §§ 273 and 279, and that Respondent Cox is a fifty percent (50%)
stockholder and director of HV and that as the result of Lynch's conduct, the management of HV
has been rendered powerless in that its Board of Directors are deadlocked.  HV and Cox are
without knowledge or information sufficient to form a belief as to the remaining allegations in
this paragraph and, therefore, they are denied.

## PARTIES

2.     HV and Cox are without knowledge or information sufficient to form a belief as to the allegations in this paragraph and, therefore, they are denied.

3.     Admitted.

4.     Denied as to the residence of Respondent Paul A. Cox, which is 650 East 3rd Avenue, Mount Dora, FL 32757. The remaining allegations are denied as legal conclusions.

## BACKGROUND

5.     Admitted.

6.     Admitted.

7.     Admitted only that the related litigation involving Lynch, Cox and Coinmaster USA, Inc. ("Coinmaster") is pending in the United States District Court for the District of Delaware. HV and Cox are without knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and, therefore, they are denied.

8.     Denied.

9.     Denied. On the contrary, Coinmaster and Cox contributed substantial sums to fund the operations of HV, the result of which was the development of assets which Lynch has improperly retained for his own use. By way of further answer, the development of assets by HV was intended to benefit HV and Coinmaster exclusively, and the issuance of additional stock in HV was to be for the benefit of Coinmaster, in response to its investment in HV.

10.     Denied. On the contrary, HV has significant assets, all of which Lynch has taken for his own use, without permission or justification. To the extent HV is insolvent or has failed to pay its debts, that is attributable to Lynch's conversion of HV's assets.

11.     Denied.

12.    Denied that Lynch should be permitted to dissolve HV, inasmuch as Lynch has absconded with the assets of HV without permission or compensation. Further denied that the Plan attached as Exhibit A to the Petition is fair or reasonable.

13.    Admitted only that a Plan of Discontinuation and Distribution was proposed by Lynch and attached. Denied that it was fair, reasonable or appropriate.

14.    Admitted only that Cox and HV received a copy of this Petition and the attachments thereto by way of service of the Petition.

## COUNT I
## (PERMISSION TO APPOINT A RECEIVER)

15.    Cox and HV incorporate by reference the allegations set forth in Paragraphs 1-14 of this Answer.

16.    Admitted that as a result of Lynch's conduct, the management of HV has been rendered powerless in that its Board of Directors are deadlocked. Denied that the corporation has been harmed by any action or omission of Cox. On the contrary, Cox and HV have been victimized by Lynch's improper taking of the assets HV developed for its own use, and which were intended to be provided to Coinmaster for its benefit. HV and Cox are without knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and, therefore, they are denied.

17.    Denied as a legal conclusion.

18.    Admitted that Lynch brings this Petition and seeks relief pursuant 8 *Del. C.* §§ 273 and 279. HV and Cox are without knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and, therefore, they are denied.

## COUNT II
## (DISSOLUTION OF JOINT VENTURE CORPORATION)

19.    Cox and HV incorporate by reference the allegations stated in Paragraphs 1-18 of this Answer.

20.    Admitted.

21.    Admitted, except that it is denied that HV was to be operated solely for the benefit of Lynch and Cox, since the whole purpose of HV was to develop a gaming machine to be used solely by Coinmaster, as is reflected by Coinmaster's investment in HV.

22.    Denied inasmuch as Lynch has already stolen the assets of HV and taken those assets for his own profit and benefit, in breach of his fiduciary duties to HV and Cox.

23.    Denied, inasmuch as Lynch has stolen the assets of HV and taken them for his own profit and use.

24.    Admitted only that a Plan was attached as Exhibit to the Petition.

WHEREFORE, Respondents Cox, individually, and on behalf of HV, demands that Cox and Lynch's Petition be denied and his Plan dismissed, and that Cox and HV be awarded such other relief as the Court deems appropriate.

## COUNTER-PETITION

25.    Cox, individually, and derivatively on behalf of HV brings this action against Respondent Daniel Anthony Lynch for intentional interference with prospective business relations, conversion, breach of fiduciary duty and fraud inasmuch as Lynch has taken the assets of HV which were intended to be developed and used for the benefit of all shareholders and Coinmaster USA, Inc. ("Coinmaster"), and has used those for his own use and benefit, without compensation to or the permission of HV.

26.    Lynch was, at one time, a director of Coinmaster.

27.    Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.

28.    Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.

29.    These actions ended Lynch's formal association with Coinmaster.

30.    In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed HV as a Delaware corporation. Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of HV.

31.    The purpose of HV was to develop a new, multi-player roulette gaming machine, specifically designed for Coinmaster's use in the California market.

32.    The role of HV was to develop and build the machine, with the machines to be sold, at least initially, to Coinmaster, which would, in turn, market the machines to the California gaming industry where Coinmaster was already well established.

33.    All rights to the newly developed gaming machine were to reside with HV.

34.    Development efforts began in the Fall of 2003 and continued through 2004, with Respondent Lynch and Paul Cox contributing substantial funds during this period, as well as Coinmaster. By April, 2004, Lynch had invested approximately $48,000, Paul Cox had invested approximately $30,000, and Coinmaster had contributed an additional $20,000. By July, Cox and Coinmaster had increased their investments substantially, and Lynch had reduced his by absconding with funds from the HV bank account. At that time, the stock remained 50% in the hands of Lynch, and 50% in the hands of Cox, although it was anticipated that Coinmaster would receive stock in HV in due course.

35.     Throughout this period of time, it was recognized and acknowledged by Lynch and Cox that Coinmaster was to be HV's "only customer" and was to have the exclusive rights to the HV product.

36.     Yet, just weeks later, for the first time, Respondent Lynch claimed the intellectual property design rights in the new game developed by HV.

37.     Following this new and unjustified claim, on information and belief, Lynch took the HV game and began marketing same in markets, both in the United States and abroad.

38.     HV has never assigned to Lynch any rights to the game, nor has Lynch ever attempted or succeeded in purchasing rights to the game from HV.

39.     Similarly, Lynch has never acquired Cox's 50% interest in HV or reimbursed or otherwise compensated Coinmaster for its investment in HV.

40.     On or about June 1, 2006 Lynch filed this Petition for Dissolution of HV.

41.     Lynch's actions, this pending Petition for Dissolution of HV, and his fifty percent (50%) interest in HV have rendered the management of HV powerless in that the Board of Directors of HV, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having HV sue him.  Accordingly, any demand that HV's management pursue HV's rights against Lynch and AGI would be futile.

42.     Based upon all of the foregoing, Cox is excused from having to make any demand upon HV to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name and also for the benefit of HV so as to prevent injustice and to adequately and fairly protect the interests and rights of HV.

## COUNT I
### (Intentional Interference With Prospective Business Relations)

43.    The allegations contained in Paragraphs 1-42, supra, are incorporated by reference.

44.    There are only a limited number of casinos that need the new game developed by HV in the marketplace and by seeking to lease the new game to such casinos, Lynch has interfered with and continues to intentionally interfere with HV's prospective business relations.

45.    Lynch's intentional interference and other conduct and communications have proximately caused damage to HV and to Cox's rights and interests as a shareholder of HV by reducing or totally destroying the value of its shares and by stealing its assets and good will.

WHEREFORE, Cox and HV ask for judgment in their favor and against Lynch for damages, punitive and compensatory, suffered as a result of Lynch's conversion of the HV assets for Lynch's own benefit, together with attorneys' fees, costs and such other relief as the Court deems appropriate.

## COUNT II
### (Conversion)

46.    The allegations contained in Paragraphs 1-45, supra, are incorporated by reference.

47.    Lynch has, without authorization, assumed and exercised the right of ownership over HV's assets, i.e., the newly developed multi-player roulette game.

48.    Lynch has excluded HV from exercising HV's right of ownership over those assets.

49.    Lynch has acted without authorization to deprive HV of its right of ownership over these assets, and has refused and failed to permit HV to exercise ownership control over those assets.

WHEREFORE, Cox and HV ask for judgment in their favor and against Lynch for damages, compensatory and punitive, suffered as a result of Lynch's conversion of the HV assets to Lynch's own benefit, together with attorneys' fees, costs and such other relief as the Court deems appropriate.

## COUNT III
### (Breach of Fiduciary Duty)

50.    Cox and HV incorporate by reference the allegations contained in Paragraph 1-49, supra.

51.    Lynch, as a 50% shareholder and one of two directors of HV, owed and owes fiduciary duties to HV and to Cox.

52.    Lynch has failed to honor and carry out his fiduciary obligations to HV and to Cox by effectively stealing the assets of HV and converting those assets to Lynch's own benefit.

WHEREFORE, Cox and HV ask for judgment in their favor and against Lynch for damages, compensatory and punitive, suffered as a result of Lynch's breach of his fiduciary duties, together with attorneys' fees, costs, and such other relief as the Court may deem appropriate.

## COUNT IV
### (Fraud)

53.    Cox and HV incorporate by reference the allegations contained in Paragraphs 1-52, supra.

54.    When HV was formed by Cox and Lynch, where each of the individuals are 50% shareholders and directors, it was agreed and understood that the purpose of forming HV was to develop a new gaming machine for the use of Coinmaster in its California market place.

55.    The development of the machine was to allow Coinmaster to increase its market share and avoid certain of the problems which had limited its growth in the U.S. market up to that time.

56.    The development of the machine was left largely in the hands of Lynch, who had experience in developing gaming machines, and on whom Cox relied to carry out the agreed common purpose. Cox was in charge of financial accounting and project control for HV, with neither shareholder entitled to any payment for these services.

57.    Both Cox and Coinmaster, as well as Lynch, contributed substantial funds to HV for the development of this new gaming machine, all of which funds Lynch had access to use, allegedly for the development of the HV gaming machine.

58.    Lynch undertook the development efforts, retaining the services of others and developing the gaming machine allegedly for the benefit of HV and Coinmaster.

59.    However, by the Spring and Summer of 2004, it became clear that Lynch considered the software intellectual property rights related to the machine to belong to him, and was embarked on a development process which suited his needs and desires, rather than HV's or Coinmaster's.

60.    Disagreements on the direction Lynch was taking were unavailing, inasmuch as Lynch simply ignored the advice and demands of Cox.

61.    On information and belief, the development of the machine was completed by late-2004 or early-2005.

62.     Thereafter, Lynch took the machine for his own uses, marketing it in Europe and the United States, solely for his own benefit and ignoring the rights of HV, Cox and Coinmaster.

63.     On information and belief, Lynch never intended to develop the machine for the benefit of HV, Cox or Coinmaster but, rather, simply gave lip service to this plan in order to mislead Cox and Coinmaster into investing in HV without ever intending to use the newly developed gaming machine for the benefit of either HV or Coinmaster.

64.     Cox, HV and Coinmaster reasonably relied upon Lynch's knowing misrepresentations, and provided him with thousands of dollars of development funds and free reign to develop the new gaming machine for the benefit of HV and Coinmaster.

65.     Lynch has deprived HV and Coinmaster of the use of this asset, and has taken control of the assets solely for his own benefit and to the detriment of HV, Coinmaster and Cox.

WHEREFORE, Cox and HV ask for judgment in their favor and against Lynch for fraud, and seek damages, compensatory and punitive, attorneys' fees, costs and such other relief as the Court may deem appropriate.

## THIRD-PARTY PETITION

66.     Cox, individually, and derivatively on behalf of HV brings this action against Third-Party Respondent AutoGaming, Inc. ("AGI") for conversion and fraud inasmuch as Lynch, through AGI, has taken the assets of HV which were intended to be developed and used for the benefit of all shareholders and Coinmaster USA, Inc. ("Coinmaster"), and has used those for his own use and benefit, without compensation to or the permission of HV.

67.     AGI is believed to be a Delaware corporation formed by Lynch in or after 2004.

68.     Lynch was, at one time, a director of Coinmaster.

69.     Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.

70.     Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.

71.     These actions ended Lynch's formal association with Coinmaster.

72.     In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed HV as a Delaware corporation. Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of HV.

73.     On or about June 11, 2003, HV was incorporated in Delaware with Paul Cox and Respondent Lynch, each as 50% shareholders and the sole directors of HV.

74.     The purpose of HV was to develop a new, multi-player roulette gaming machine, specifically designed for Coinmaster's use in the California market.

75.     The role of HV was to develop and build the machine, with the machines to be sold, at least initially, to Coinmaster USA, Inc., which would, in turn, market the machines to the California gaming industry where Coinmaster was already well established.

76.     All rights to the newly developed gaming machine were to reside with HV.

77.     Development efforts began in the Fall of 2003 and continued through 2004, with Respondent Lynch and Paul Cox contributing substantial funds during this period, as well as Coinmaster USA. By April, 2004, Lynch had invested approximately $48,000, Paul Cox had invested approximately $30,000, and Coinmaster had contributed an additional $20,000. By July, Cox and Coinmaster had increased their investments substantially, and Lynch had reduced his by absconding with funds from the HV bank account. At that time, the stock remained 50%

in the hands of Lynch, and 50% in the hands of Cox, although it was anticipated that Coinmaster USA would receive stock in HV in due course.

78.     Throughout this period of time, it was recognized and acknowledged by Lynch and Cox that Coinmaster was to be HV's "only customer" and was to have the exclusive rights to the HV product.

79.     Yet, just weeks later, for the first time, Respondent Lynch claimed the intellectual property design rights in the new game developed by HV.

80.     Following this new and unjustified claim, on information and belief, Lynch and AGI took the HV game and began marketing same in markets, both in the United States and abroad through AGI.

81.     HV has never assigned to AGI any rights to the game, nor has AGI ever attempted or succeeded in purchasing rights to the game from HV.

82.     Similarly, AGI has never acquired Cox's 50% interest in HV or reimbursed or otherwise compensated Coinmaster for its investment in HV.

83.     On or about June 1, 2006 Lynch filed this Petition for Dissolution of HV.

84.     Lynch's actions, this pending Petition for Dissolution of HV, and his fifty percent (50%) interest in HV have rendered the management of HV powerless in that the Board of Directors of HV, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having HV sue him.  Accordingly, any demand that HV's management pursue HV's rights against Lynch and AGI would be futile.

85.     Based upon all of the foregoing, Cox is excused from having to make any demand upon HV to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name

and also for the benefit of HV so as to prevent injustice and to adequately and fairly protect the interests and rights of HV.

### COUNT I
### (Intentional Interference With Prospective Business Relations)

86.    The allegations contained in Paragraphs 1-85, supra, are incorporated by reference.

87.    There are only a limited number of casinos that need the new game developed by HV in the marketplace and by seeking to lease the new game to such casinos, AGI has interfered with and continues to intentionally interfere with HV's prospective business relations.

88.    AGI's intentional interference and other conduct and communications have proximately caused damage to HV and to Cox's rights and interests as a shareholder of HV by reducing or totally destroying the value of its shares and by stealing its assets and good will.

WHEREFORE, Cox and HV ask for judgment in their favor and against Lynch for damages, compensatory and punitive, suffered as a result of AGI's intentional interference with HV's prospective business relations, together with attorneys' fees, costs and such other relief as the Court deems appropriate.

### COUNT II
### (Conversion)

89.    The allegations contained in Paragraphs 1-88, supra, are incorporated by reference.

90.    AGI has, without authorization, assumed and exercised the right of ownership over HV's assets, i.e., the newly developed multi-player roulette game.

91.    AGI has excluded HV from exercising HV's right of ownership over those assets.

92.     AGI has acted without authorization to deprive HV of its right of ownership over these assets, and has refused and failed to permit HV to exercise ownership control over those assets.

WHEREFORE, Cox and HV ask for judgment in their favor and against AGI for damages, compensatory and punitive, suffered as a result of AGI's conversion of the HV assets to AGI's own benefit, together with attorneys' fees, costs and such other relief as the Court deems appropriate.

**COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.**

By:     /s/ Erin K. Brignola
          Erin K. Brignola, Esquire
          I.D. No. 2723
          30 Fox Hunt Drive
          Bear, DE 19701
          (302) 838-2600

          *Attorneys for Respondents, Counter-
          Petitioners,     and     Third-Party
          Petitioners, Paul A. Cox and High
          View, Inc.*

OF COUNSEL:

Kevin J. Thornton, Esquire
**COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.**
1125 Atlantic Avenue
Atlantic City, NJ 08401
(609) 572-7502

July 31, 2006

125762.00601/40163683v.1

## CERTIFICATE OF SERVICE

I, Erin K. Brignola, hereby certify that on the 31st day of July, 2006, a copy of the

**ANSWER TO PETITION FOR DISSOLUTION AND APPOINTMENT OF RECEIVER,**

**COUNTER-PETITION, AND THIRD-PARTY PETITION BY PAUL A. COX,**

**INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF HIGH VIEW, INC.** was

served on the following counsel of record:

### BY ELECTRONIC SERVICE

James S. Green, Esquire
Kevin A. Guerke, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

Thomas P. Preston, Esquire
Blank Rome
1201 Market Street, Suite 800
Wilmington, DE 19801

/s/ Erin K. Brignola
Erin K. Brignola, Esquire (2723)
30 Fox Hunt Drive
Bear, DE 19701
(302) 838-2600

**Susan Pappa**

| | |
|---|---|
| **From:** | Susan Pappa |
| **Sent:** | Monday, July 31, 2006 4:17 PM |
| **To:** | Tony Lynch (tonylynch@autogaminginc.com) |
| **Cc:** | James S Green; Susan Pappa |
| **Subject:** | FW: Case: 2193-N; Transaction: 11936366 - Notification of Service |

 

ANSWER TO    CERTIFICATE OF
TITION F.pdf (77 K SERVI.pdf (18 K...

                    Please see below notification and attachments.  Thank you.

Sue Pappa
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
e-mail:  spappa@svglaw.com
tel:  (302) 888-0600 X625
fax:  (302) 888-0606
-------------------------------------------------
The information contained in this message from Seitz, Van Ogtrop & Green, P.A. and any
attachments are confidential and intended only for the named recipient(s).  If you have
received this message in error, you are prohibited from copying, distributing or using the
information.  Please contact the sender immediately by return e-mail and delete the
original message.  Thank you.


-----Original Message-----
From: LexisNexis File & Serve [mailto:eFile@fileandserve.lexisnexis.com]
Sent: Monday, July 31, 2006 4:12 PM
To: Susan Pappa
Subject: Case: 2193-N; Transaction: 11936366 - Notification of Service


James S Green, Kevin A Guerke has allowed you, Susan Pappa, to receive a copy of this
notification for Transaction ID 11936366. The details for this transaction are listed
below.

To: James S Green, Kevin A Guerke
Subject: E-Service for DE Court of Chancery

Titles:
      ANSWER TO PETITION FOR DISSOLUTION AND APPOINTMENT OF RECEIVER PURSUANT TO 8
DEL.C.SECTIONS 273 AND 279 AND COUNTER-PETITION AND THIRD-PARTY PETITION BY PAUL A. COX,
INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF HIGH VIEW, INC. (14 pages)
      CERTIFICATE OF SERVICE (1 page)
Case: Lynch, Daniel Anthony vs High View Inc
Case #: 2193-N
Date: Jul 31 2006  4:08PM EDT
Attorney: Erin A Brignola
Firm: Cooper Levenson April Niedelman & Wagenheim
Transaction #: 11936366
Check for additional details (and view the documents) online at:
https://fileandserve.lexisnexis.com/Login/Login.aspx?FI=11936366 (subscriber login
required)

Thank you for using LexisNexis File & Serve.

Questions? For prompt, courteous assistance please contact LexisNexis Customer Service by
phone at 1-888-529-7587 (24/7).

<<ANSWER TO PETITION F.pdf>>
<<CERTIFICATE OF SERVI.pdf>>

**Susan Pappa**

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Monday, July 31, 2006 4:35 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:06-cv-00365-JJF Lynch v. Coinmaster USA Inc. et al "Response to Motion" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Brignola, Erin entered on 7/31/2006 at 4:35 PM EDT and filed on 7/31/2006

| | |
|---|---|
| **Case Name:** | Lynch v. Coinmaster USA Inc. et al |
| **Case Number:** | 1:06-cv-365 |
| **Filer:** | Paul A. Cox |
| **Document Number:** | 19 |

**Docket Text:**
RESPONSE to Motion re [15] MOTION to Dismiss for Failure to State a Claim *Plaintiff and Third Party Defendant's Motion to Dismiss Counterclaims and Third Party Complaint* filed by Paul A. Cox. (Attachments: # (1) Affidavit Certificate of service)(Brignola, Erin)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/31/2006] [FileNumber=252016-0]
[20e2accbde302bfd185fb0f5e82a5925d3cba6cab6fa2c028cdfc8da8560716c9508
b60d7f5af00c38a568fe46ac1eacb070e410b393ddee212857fb84c3b0b7]]
**Document description:**Affidavit Certificate of service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/31/2006] [FileNumber=252016-1]
[57247eec169bcf4be1c6427bfc3d0b970f6a69ee3c59515140090bc8a9bd3538a1fb
7534220b370886acd035eb7f1b6a80b8f42248212e98d74f2e8e7b23c831]]

**1:06-cv-365 Notice will be electronically mailed to:**

Erin K. Brignola    bbumgarner@cooperlevenson.com

James S. Green    jgreen@svglaw.com, spappa@svglaw.com

Thomas P. Preston    preston-t@blankrome.com, clark-pa@blankrome.com

1:06-cv-365 Notice will be delivered by other means to:

# EXHIBIT B

**Westlaw.**

Not Reported in F.Supp.2d                                      Page 1

Not Reported in F.Supp.2d, 2001 WL 845652 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Tony A. WILSON, Plaintiff,
v.
DEPARTMENT OF CORRECTION OF
DELAWARE, Alan Machtinger, Joe Paesant,
Michael McFarland, Ron Turner, Thomas G.
Bailor, James Supiett, Mr. Keen, Forest Jacobs, Mr.
Kuminski, Dave Stebbins, Pinkerton, Inc.,
Unidentified, Defendants.
**No. Civ.A. 99-614-JJF.**

July 24, 2001.

Tony A. Wilson, Plaintiff, pro se.
Stuart B. Drowos, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Defendants.

*MEMORANDUM OPINION*

FARNAN, J.
*1 Pending before the Court are four motions filed
by Plaintiff, Tony A. Wilson, a Motion For Relief
From Judgment Or Order Pursuant To Rule
60(b)(1) (D.I.51), a Motion To Amend Complaint
Pursuant To Rule 15(a)(b) (D.I.52), a Motion To
Amend Judgment Pursuant To Rule 59(e) (D.I.53),
and an Amended Motion To Amend Judgment
Pursuant To Rule 59(e) (D.I.54). For the reasons set
forth below, Plaintiffs' Motions will be denied.

BACKGROUND

By Memorandum Opinion and Order dated March
30, 2001, the Court granted the State Defendants'
Motion To Dismiss Plaintiff's Complaint. (D.I.48,
49). By his Complaint, Plaintiff alleged that
Defendants violated Title VII and his Fourteenth
Amendment due process rights by rescinding an
offer to employ Plaintiff in the Delaware

Department of Corrections. Concluding that
Plaintiff could not maintain an action under Title
VII against the individual Defendants and that
Plaintiff could not establish that non-members of
the protected class were treated more favorably than
Plaintiff, the Court dismissed Plaintiff's Title VII
claims. With regard to Plaintiff's claim under the
Fourteenth Amendment, the Court concluded that
Plaintiff had no property interest in employment by
the Delaware Department of Corrections, because
Plaintiff was never hired by the Department and his
offer of employment was conditional.

Following the Court's March 30th decision, Plaintiff
filed the instant Motions seeking to amend his
Complaint and obtain relief from the Court's
decision granting Defendants' Motion To Dismiss.
Before the Motions were responded to by the State
Defendants, Plaintiff filed a Notice of Appeal
(D.I.56). Thereafter, the State Defendants filed their
Response Brief (D.I.60) and Plaintiff filed his
Reply Brief (D.I.61). Because the Motions have
now been fully briefed by the parties, they are ripe
for the Court's consideration.

DISCUSSION

I. Motion For Relief From Judgment Under Rule
60(b)

In relevant part, Federal Rule of Civil Procedure
60(b) provides:
On motion and upon such terms as are just, the
court may relieve a party or a party's legal
representative from a final judgment, order or
proceeding for the following reasons: (1) mistake,
inadvertence, surprise, or excusable neglect; (2)
newly discovered evidence which by due diligence
could not have been discovered in time to move for
a new trial under Rule 59(b); (3) fraud (whether
heretofore denominated intrinsic or extrinsic),
misrepresentation, or other misconduct of an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 845652 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reasons justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

**\*2** Fed.R.Civ.P. 60(b). The decision to grant or deny relief pursuant to Rule 60(b) is committed to the "sound discretion" of the district court. *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir.1981) (citations omitted); *United States v. Witco Corp.,* 76 F.Supp.2d 519, 527 (D.Del.1999) (citations omitted). However, the court's exercise of its discretion is not unfettered. *Moolenar v. Government of the Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987) (recognizing that Rule 60(b) " does not confer upon the district courts a standardless residual of discretionary power to set aside judgments"). In applying Rule 60(b), the court should be cognizant that final judgments are not to be disturbed lightly and the procedures in Rule 60(b) are not meant to be a substitute for an appeal. *Kock v. Government of the Virgin Islands,* 811 F.2d 240, 246 (3d Cir.1987). Thus, relief under Rule 60(b) is considered extraordinary and is only warranted in special circumstances sufficient to overcome the overriding interest in the finality of judgments. *Harris v. Martin,* 834 F.2d 361, 364 (3d Cir.1987) (citations omitted); *Moolenaar,* 822 F.2d at 1346 (citations omitted).

By his Rule 60 Motion, Plaintiff contends that the Court should grant him relief from the March 30th decision granting Defendants' Motion To Dismiss, because Plaintiff has established mistake and excusable neglect. Specifically, Plaintiff contends that he made an excusable mistake by failing to include in his Complaint in this Court an allegation contained in his Complaint before the Equal Employment Opportunity Commission ("EEOC") that "[t]he Department of Correction and the Department of Probation and Parole kept the Probation and Parole Officer (I)[sic] position open

that was offered to Mr. Wilson and sought applications from other applicants who possessed the *same* qualifications as Mr. Wilson." (D.I. 51 at ¶ 2) (emphasis in original).

Even if the Court were to consider Plaintiff's omission of this allegation as a mistake within the meaning of Rule 60(b), the Court concludes that Plaintiff is not entitled to relief from the Court's decision of March 30, 2001. To establish a prima facie case of discrimination under Title VII, Plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for a position that the employer was trying to fill, and (3) individuals who were not members of the protected class were treated more favorably than Plaintiff. *Goosby v. Johnson & Johnson Medical, Inc.,* 228 F.3d 313, 318 (3d Cir.2000). Accepting Plaintiff's allegation as true that Defendants sought applications from other individuals for the same position as Plaintiff and that other individuals may have been hired in lieu of Plaintiff, the Court concludes that Plaintiff's allegation is insufficient to establish the third prong of the prima facie case. Plaintiff's bare allegation fails to specify that the individuals he refers to were non-members of the protected class, and Plaintiff fails to identify any such individuals.

**\*3** To the extent that Plaintiff contends that his allegation should be sufficient to establish a genuine issue of material fact, the Court likewise rejects Plaintiff's argument. Plaintiff offers no facts or evidence to support his allegation or to establish that non-members of the protected class were treated more favorable than Plaintiff. Accordingly, the Court concludes that Plaintiff is not entitled to relief from the Court's March 30, 2001 judgment under Rule 60(b).

### II. Plaintiff's Motions To Amend Judgment Pursuant To Rule 59(e)

To obtain relief under Federal Rule of Civil Procedure 59(e), Plaintiff must establish one of three threshold requirements: (1) there is an intervening change in controlling law; (2) new evidence has become available; or (3) there is a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 845652 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

need to correct the Court's clear error of law or prevent manifest injustice. *Pipe Liners, Inc. v. Pipelining Products, Inc.,* 2000 WL 1251907 (D.Del. Aug. 9, 2000) (Robinson, J.) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)).

In this case, Plaintiff has filed two Motions pursuant to Rule 59(e). By his Motions, Plaintiff reiterates the same allegations he made in his Rule 60(b) Motion. In addition, Plaintiff contends that the Court's footnote in its Memorandum Opinion addressing the service of process issue in this case was erroneous.

To the extent that Plaintiff's Rule 59(e) motion duplicates his claim under Rule 60(b), the Court rejects Plaintiff's argument for the reasons discussed previously. As for Plaintiff's argument regarding the service of process issue, the Court likewise rejects Plaintiff's argument. By its footnote, the Court stated that despite the service of process issue regarding four of the Defendants, the Court would nevertheless address the issues raised by Defendants' motion. (D.I. 48 at 3, n. 1). The Court then concluded that, although there was a question as to whether four of the Defendants were properly served, Plaintiff could not maintain his lawsuit against the individual Defendants because Title VII does not permit redress against individuals. As such, the Court did not rest its decision regarding Defendants' Motion to dismiss on the service of process issue, and therefore, any claim by Plaintiff that the Court erred on the service of process issue would not affect the Court's decision in this case. Accordingly, the Court concludes that Plaintiff is not entitled to an amended or altered judgment under Rule 59(e).

### III. Plaintiff's Motion To Amend Complaint

By his Motion To Amend Complaint, Plaintiff contends that the Court should permit Plaintiff to amend his Complaint to include the allegations raised by Plaintiff in his Second Affidavit. Plaintiff appears to contend that this affidavit establishes the facts required for Plaintiff to demonstrate a prima facie case of discrimination.

Plaintiff's Motion To Amend relies on both Rule 15(a) and Rule 15(b) of the Federal Rules of Civil Procedure. However, Rule 15(b) only contemplates amendments made during or after a trial, as a result of issues raised during the course of the trial, which are not covered in the original pleadings. "Rule 15(b) ... is limited to situations where the issue has been tried. [Where] no trial has occurred, [plaintiff] can find no solace in Rule 15(b)." *Vosgerichian v. Commodore Internat'l Ltd.,* 1998 WL 966026,[*]3 (D.N.J. Nov. 6, 1998) (denying motion to amend based on Rule 15(b) where no trial has begun and plaintiff's motion to amend was made in response to a summary judgment motion). Because no trial occurred in this case, the Court cannot permit Plaintiff to amend his Complaint under Rule 15(b).

[*]4 As for an amendment pursuant to Rule 15(a), Rule 15(a) requires the Court to freely permit amendments "when justice so requires." Fed.R.Civ.P. 15(a). However, the Court may consider such factors as undue delay, undue prejudice to the opposing party and futility of the amendment in determining whether leave to amend should be granted. *Vosgerichian,* 1998 WL 966026 at [*]3. Notwithstanding the fact that the timing of Plaintiff's Motion To Amend suggests the likelihood of undue delay and prejudice to the nonmovants in this case, the Court has reviewed the Second Affidavit offered by Plaintiff.

After reviewing Plaintiff's Second Affidavit, the Court concludes that the amendment proposed by Plaintiff to incorporate the allegations of his Second Affidavit into his Complaint would be futile. Plaintiff's Second Affidavit reiterates legal arguments regarding Plaintiff's claims and does not add any allegations or evidence pertaining to the third prong of the prima facie case under Title VII. Because, Plaintiff's Second Affidavit does nothing to advance his claims, the Court concludes that the amendment Plaintiff seeks would be futile. Accordingly, the Court will deny Plaintiff's Motion To Amend Complaint.

### CONCLUSION

For the reasons discussed, Plaintiff's Motion For

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 845652 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Relief From Judgment Or Order Pursuant To Rule 60(b)(1) (D.I.51), Motion To Amend Complaint Pursuant To Rule 15(a)(b) (D.I.52), Motion To Amend Judgment Pursuant To Rule 59(e) (D.I.53), and Amended Motion To Amend Judgment Pursuant To Rule 59(e) (D.I.54) will be denied.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 24 day of July 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Plaintiff's Motion For Relief From Judgment Or Order Pursuant To Rule 60(b)(1) (D.I.51) is DENIED.

2. Plaintiff's Motion To Amend Complaint Pursuant To Rule 15(a)(b) (D.I.52) is DENIED.

3. Plaintiff's Motion To Amend Judgment Pursuant To Rule 59(e) (D .I. 53) is DENIED.

4. Plaintiff's Amended Motion To Amend Judgment Pursuant To Rule 59(e) (D.I.54) is DENIED.

D.Del.,2001.
Wilson v. Department of Correction of Delaware
Not Reported in F.Supp.2d, 2001 WL 845652 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.