IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL ANTHONY LYNCH,<br><br>  Plaintiff,<br><br>v.<br><br>COINMASTER USA, INC., a Delaware corporation, and PAUL A. COX,<br><br>  Defendants. | Civil Action No. 06-365 |

## ANSWER AND AMENDED COUNTERCLAIM OF DEFENDANT COINMASTER USA, INC. TO COMPLAINT

1. Admitted and denied. Sentences 1-3, 5 and 7 of this paragraph are admitted. The fourth sentence is denied. The sixth sentence is denied inasmuch as answering Defendant Coinmaster USA, Inc. ("Coinmaster") lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied.

### The Parties

2. Coinmaster lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied.

3. Admitted.

4. The allegations in this paragraph are directed to a defendant other than Coinmaster and, therefore, they are neither admitted nor denied.

## Background

5. Coinmaster lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, they are denied.

6. The allegations in this paragraph are directed to a defendant other than Coinmaster and, therefore, they are neither admitted nor denied.

7. Admitted only that Lynch approached Paul A. Cox ("Cox") and requested that he become involved in the Coinmaster activities in the United States, to which Cox agreed, in exchange for a 10% interest in Coinmaster. Cox then became the sole director of Coinmaster. The remaining allegations are denied.

8. Admitted.

9. Admitted.

10. Admitted only that the minutes of the November 8, 2002 Annual Meeting reflect three-year elections. However, those elections were contrary to the by-laws of Coinmaster and, therefore, were invalid.

11. Denied. Only proposals, not actual service agreements, were reviewed by the Board at the referenced meeting.

12. Denied.

13. Denied inasmuch as the referenced service agreement ("Contract") speaks for itself. By way of further answer, the Contract specifically provides only for the payment of expenses.

14. Denied inasmuch as the referenced Contract speaks for itself.

15. Denied inasmuch as the referenced Contract speaks for itself.

16. Admitted.

17. Admitted only that CG went into receivership on or about March 1, 2003 and, on information and belief, Lynch resigned from CG and all its subsidiaries and affiliates. After reasonable investigation, Coinmaster lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, they are denied.

18. Denied.

19. Denied. By way of further answer, Mr. Lynch resigned from CG and from all subsidiaries and affiliates of CG, including Coinmaster, on February 28, 2003, a fact Lynch hid from Coinmaster. Further, on this same date Lynch terminated a Service Agreement he had entered into with Coinmaster Gaming, PLC on November 6, 2001, which termination brought to an end Lynch's involvement with CG and all its subsidiaries. See Service Agreement between Coinmaster Gaming, PLC and Tony Lynch, dated November 6, 2001, attached as Exhibit A.

20. Denied. By way of further answer, Lynch had repeatedly consented to and had knowledge of, numerous applications filed by Coinmaster with various tribal gaming agencies in California, which applications reflected Lynch's notarized signature which was secured from Lynch by various means necessitated by his unavailability to sign these applications. Lynch was fully aware of these undertakings and consented to them.

21. Denied. See response to Paragraph 20, supra.

22. Denied.

23. Denied.

24. Denied. By way of further answer, Lynch terminated himself by his resignation on February 28, 2003.

25. Denied.

26. Denied.

27. Denied.

## Count I

### (Breach of Contract)

28. Coinmaster incorporates by reference its responses to Paragraphs 1-27, supra.

29. Denied.

30. Denied.

31. Denied.

## Count II

### (Deceptive Trade Practices)

32. Coinmaster incorporates by reference its responses to Paragraphs 1-31, supra.

33-36. The allegations in these paragraphs are directed to a defendant other than Coinmaster and, therefore, they are neither admitted nor denied. To the extent they are deemed to relate to Coinmaster, they are denied in their entirety.

## Count III

### (Intentional Interference with Prospective Business Relations)

37. Coinmaster incorporates by reference its responses to Paragraphs 1-36, supra.

38-40. The allegations in these paragraphs are directed to a defendant other than Coinmaster and, therefore, they are neither admitted nor denied. To the extent they are deemed to relate to Coinmaster, they are denied in their entirety.

## Count IV

### (Fraud)

41. Coinmaster incorporates by reference its responses to Paragraphs 1-40, <u>supra</u>.

42-45. The allegations in these paragraphs are directed to a defendant other than Coinmaster and, therefore, they are neither admitted nor denied. To the extent they are deemed to relate to Coinmaster, they are denied in their entirety.

WHEREFORE, Defendant Coinmaster demands judgment in its favor and against Plaintiff on all Plaintiff's claims, together with an award of fees and costs in favor of Coinmaster, and such other relief as the Court may deem just and warranted.

## AFFIRMATIVE DEFENSES

46. Under the November 6, 2001 Service Agreement between Coinmaster Gaming, PLC and Tony Lynch, Lynch waived his right to seek any claim against Coinmaster under Paragraph 18.2.

47. Lynch's claims against Coinmaster, if he had any, are barred by the running of the statute of limitations, inasmuch as Lynch resigned all of his positions at CG and Coinmaster on February 28, 2003.

48. Lynch's claims under the alleged Contract between Lynch and Coinmaster are barred inasmuch as the November 15, 2002 Letter Agreement with Coinmaster, attached as Exhibit A to the Complaint, was void at its inception by the terms of the Service Agreement between Coinmaster Gaming, PLC and Lynch, attached as Exhibit A to this Answer and Amended Counterclaim.

49. Plaintiff fails to state a claim on which relief may be granted.

50. Plaintiff's claims are barred by the doctrines of waiver and estoppel.

## AMENDED COUNTERCLAIM OF COINMASTER AGAINST LYNCH

51. Defendant/Counterclaim Plaintiff Coinmaster USA, Inc. ("CMUSA") is a Delaware corporation, having been incorporated on January 10, 2001. CMUSA provides electronic gambling games, particularly in the California gambling market.

52. Plaintiff/Counterclaim Defendant Lynch is, on information and belief, a British foreign national, residing at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom. Lynch was at one time a director of CMUSA.

53. Lynch resigned from CMUSA on or about February 28, 2003, although Lynch failed to inform CMUSA of that fact until later. On that same date, Lynch terminated a Service Agreement he had entered into with CMUSA and thereby ended all formal relations with CMUSA.

54. In June, 2003, Lynch, together with another shareholder and director of CMUSA, Paul A. Cox, formed High View, Inc. as a Delaware corporation, with each owning 50% of the High View common stock.

55. The purpose behind forming High View, Inc. was to use that company to develop a new roulette game machine to be sold exclusively to CMUSA for use in its California market. See e-mails of May 6 and June 8, 2003, attached as Exhibit B.

56. The work of High View was divided between Cox and Lynch, with the latter charged with developing the new game and Paul Cox charged with all financial accounting and project control. Neither Cox nor Lynch was to be paid for these services, as the benefits to be realized were to come from High View's success in selling the new gaming machine to CMUSA.

57. The work on developing the game, which Lynch undertook utilizing the expertise of others in the industry, was, from the beginning, designed to create a machine for the use of CMUSA. See e-mail of August 18, 2003 between Lynch and Paul Cox, attached as Exhibit C. See also Contract for Services between ML Solutions Limited and High View, Inc., attached as Exhibit D.

58. The development of the High View machine proceeded more or less on schedule. By the Spring and Summer of 2004, a machine was close to completion and, for the first time, Lynch asserted his personal control over these assets. Cox objected, reminding Lynch of the input of CMUSA and Cox and the commitment of Cox and Lynch to develop the machine through High View for the exclusive use of CMUSA. See e-mail of April 27, 2004 from Paul Cox to Tony Lynch, attached as Exhibit E.

59. During this time period, there was no question that CMUSA was to be a shareholder in High View, and had invested in the development of the new gaming asset. See e-mail of May 17, 2004 from Lynch to Cox, attached as Exhibit F.

60. On July 1, 2004, Lynch finally came out of the closet, asserting, for the first time, that the intellectual property rights in the new game belonged to him. See e-mail of July 1, 2004 from Lynch to Cox, attached as Exhibit G.

61. With this development, Lynch improperly took total control of the High View asset and completed development of the new game. Thereafter, on information and belief, he marketed the game in Europe and the United States, and perhaps other markets, seeking to sell the game solely for his benefit.

62. At no time did Lynch pay High View for the new game, or otherwise seek release from the agreement that CMUSA had with High View that CMUSA would help fund the

7

development of the new game, in exchange for its exclusive use of the game for CMUSA's markets in California.

## COUNT I
### (Conversion)

63. CMUSA incorporates by reference the allegations contained in Paragraphs 51-62, supra.

64. Lynch converted the assets of High View, Inc., which were committed to CMUSA, by taking those assets for his own purposes and use without permission or payment to High View, Inc. or CMUSA.

65. Lynch was fully aware of the commitment to and investment by CMUSA in the development of those assets.

66. Lynch, in taking the new gaming assets, has failed to compensate CMUSA for its investment and commitment with High View to use these new assets, and has injured CMUSA by causing it to rely on High View to develop the new game CMUSA requires to remain competitive in the California market place.

WHEREFORE, CMUSA asks for judgment in its favor and against Lynch for damages stemming from this conversion, together with attorneys' fees, costs and such other relief as the Court may deem appropriate.

BLANK ROME LLP

By: */s/ Thomas P. Preston*
_____
Thomas P. Preston, Esquire
I.D. No. 2548
1201 Market Street, Suite 1500
Wilmington, DE 19801
(302) 425-6400

Counsel for Defendant Coinmaster, USA, Inc.

Dated: July 31, 2006

## CERTIFICATE OF SERVICE

I, Thomas P. Preston, hereby certify that on the 31st day of July, 2006, a copy of the **ANSWER AND AMENDED COUNTERCLAIM OF DEFENDANT COINMASTER USA, INC. TO COMPLAINT** was served on the following counsel of record:

### BY ELECTRONIC SERVICE

James S. Green, Esquire
Kevin A. Guerke, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

Erin K. Brignola, Esquire
Cooper Levenson April Niedelman &
 Niedelman & Wagenheim, P.A.
30 Fox Hunt Drive
Bear, DE 19701

### BY FIRST-CLASS MAIL

Kevin J. Thornton, Esquire
Cooper Levenson, Attorneys at Law
1125 Atlantic Avenue
Atlantic City, NJ 08401

/s/ *Thomas P. Preston*
_____
Thomas P. Preston
I.D. No. 2548