IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DANIEL ANTHONY LYNCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-365 JJF |
| ) | |
| COINMASTER USA, INC., a Delaware ) | |
| corporation, and PAUL A. COX, ) | |
| ) | |
| Defendants, ) | |
| ) | **JURY TRIAL DEMANDED** |
| and ) | **NON-ARBITRATION** |
| ) | |
| PAUL A. COX, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| AUTO GAMING, INC., a Delaware ) | |
| corporation, | |
| | |
| Third-Party Defendant. | |

---

**AMENDED ANSWER, DEFENSES, COUNTERCLAIM,
AND THIRD-PARTY COMPLAINT**

---

Defendant, Paul A. Cox ("Cox") by way of Amended Answer to the Complaint filed on behalf of the Plaintiff, Daniel Anthony Lynch ("Lynch") says:

Introduction

1. Admitted that Defendant, Coinmaster USA, Inc. ("Coinmaster"), is a Delaware corporation whose business includes developing and renting electronic casino games and that is licensed to and does do business in among other places the State of California and at California Native American Tribal Casinos and that Cox was and is a shareholder of Coinmaster. Denied that Lynch was a Director of Coinmaster from its inception. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

The Parties

2. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

3. Admitted.

4. Admitted that Cox is a British foreign national who currently resides in the State of Florida. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

Background

5. Denied that Coinmaster Gaming PLC ("CG") was formed in 1980. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

6. Admitted.

7. Admitted only that Lynch approached Cox and requested that he become involved in the Coinmaster activities in the United States, to which Cox agreed, in exchange for a ten percent

(10%) interest in Coinmaster. As to the remaining allegations, Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

8. Admitted.

9. Admitted.

10. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

11. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

12. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

13. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

14. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

15. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

16. Admitted.

17. Cox lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, therefore, they are denied and Lynch is left to his proofs.

18. Admitted that Cox, Lynch and Brad Hutcheon ("Hutcheon") agreed to bid for CG's interest in Coinmaster. The remaining allegations are denied.

19. Denied.

CLAC 25524.1

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

## Count 1

### (Breach of Contract)

28. Cox incorporates his responses to Paragraphs 1 through 27 as if fully set forth herein.

29. Denied.

30. Denied.

31. Denied.

## COUNT II

### (Deceptive Trade Practices)

32. Cox incorporates his responses to Paragraphs 1 through 31 as if fully set forth herein.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

## COUNT III

### (Intentional Interference With Prospective Business Relations)

37. Cox incorporates his responses to Paragraphs 1 through 36 as if fully set forth herein.

38. Denied.

39. Denied.

40. Denied.

## COUNT IV

### (Fraud)

41. Cox incorporates his responses to Paragraphs 1 through 40 as if fully set forth herein.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state any valid or viable cause of action upon which relief may be granted.

2. Service of the Summons and the Complaint was defective and invalid and all rights, privileges, and defenses are reserved.

3. Lynch's claims for relief are barred by applicable statutes of limitations.

4. Lynch's claims for relief are barred by the Doctrine of Laches.

5. Lynch's claims for relief are barred by the Doctrine of Unclean Hands.

6. Lynch's claims for relief are barred by the Doctrine of Estoppel.

CLAC 25524.1

7.      Lynch's claims for relief are barred by the Doctrine of Waiver.

8.      Lynch's claims for relief are barred because he intentionally failed to disclose to Coinmaster and Cox the existence and the terms and conditions of his Directors and/or Executive Services Contract with and his legal obligations to CG.

9.      Lynch's claims for relief are barred because the Directors and/or Executive Services Contract attached as Exhibit "A" to Lynch's Complaint (the "Coinmaster Complaint") is null and void and/or voidable for numerous reasons including but not limited to that Lynch admitted it might be in conflict with or barred by his Directors and/or Executive Services Contract with CG and he agreed that if that was the case, then the Coinmaster Contract would be voided.

10.     The Coinmaster Contract should be reformed to accurately reflect the parties' true intentions that it was to serve as, among other things, a "Poison Pill" and the stated terms of compensation manifestly bore no relationship to what was affordable to a new business venture that was unprofitable with minimal turnover.

11.     Cox breached no contractual obligations to Lynch.

12.     Cox did not act in his individual capacity and was acting as a director officer and/or an authorized representative of Coinmaster and at all times discharged his duties honestly, lawfully, in good faith, and in accordance with applicable fiduciary duties.

13.     Cox is not indebted to Lynch for any sum of money.

14.     Cox denies that Lynch is entitled to any sum or damages from him, but to the extent there is any such finding, Cox is entitled to damages and set-offs against Lynch.

15.     Lynch is not entitled to punitive damages against Cox nor Coinmaster.

6

16. Cox will rely upon all defenses pled by and/or available to Coinmaster per controlling law and statutes and any contracts between Lynch and Coinmaster that might be valid and enforceable.

17. Investigation and discovery are on-going and Cox reserves the right to assert additional defenses as same may be revealed.

WHEREFORE, Defendant, Paul A. Cox, demands judgment dismissing the Complaint with prejudice and with an award of attorneys' fees and costs together with all such further relief as the Court deems just and appropriate.

## AMENDED COUNTERCLAIM

Paul A. Cox ("Cox"), individually and derivatively, on behalf of High View, Inc. ("High View"), by way of Counterclaim against Daniel Anthony Lynch ("Lynch") says:

## COUNT I

(Intentional Interference With Prospective Business Relations)

1. High View, a Delaware corporation, was formed on or about June 11, 2003 and Cox and Lynch were and are fifty percent (50%) shareholders.

2. On information and belief, Lynch is a British foreign national who currently resides at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom.

3. Lynch was, at one time, a director of Defendant, Coinmaster USA, Inc. ("Coinmaster").

4. Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.

5. Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.

6. These actions ended Lynch's formal association with Coinmaster.

7

CLAC 25524.1

7.  In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed High View, as a Delaware corporation. Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of High View.

8.  Cox invested in High View which in turn invested substantial funds and human capital resources into developing and owning the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

9.  The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control. Cox relied on Lynch to carry out the agreed upon common purpose of High View. Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

10. On information and belief, development proceeded as expected, with Lynch in charge, and the Devices developed by High View are ready for introduction into the gaming market in the United States and elsewhere in the world.

11. On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving High View and its shareholders and beneficiaries of the use of those assets.

12. On information and belief, Lynch directly and/or via an entity known as AutoGaming, Inc. ("AGI"), misappropriated the Devices and High View's assets and has sought to obtain

required approvals and/or licenses from gaming laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.

13. Neither Lynch nor AGI have paid High View for those assets, nor entered into any agreement with High View to acquire or make any use of the Devices.

14. There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered with and continue to intentionally interfere with High View's prospective business relations.

15. Lynch's and AGI's intentional interference and other conduct and communications have proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

16. On or about June 1, 2006 Lynch filed a Petition for Dissolution of High View and the Appointment of a Receiver in the Chancery Court of the State of Delaware in and for New Castle County, Civil Action No.: 2193-N. High View and Cox were named as Respondents in that action. (See Petition, attached as Exhibit A, hereto.)

17. Lynch's actions, the pending Petition for Dissolution of High View, and his fifty percent (50%) interest in High View have rendered the management of High View powerless in that the Board of Directors of High View, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having High View sue him. Accordingly, any demand that High View's management pursue High View's rights against Lynch and AGI would be futile.

18. Based upon all of the foregoing, Cox is excused from having to make any demand upon High View to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name

9

CLAC 25524.1

and also for the benefit of High View so as to prevent injustice and to adequately and fairly protect the interests and rights of High View.

WHEREFORE, Cox, individually and derivatively, on behalf of High View, demands judgment against Lynch for the following:

    (i)    compensatory and punitive damages;

    (ii)    injunctive relief;

    (iii)    reasonable attorneys' fees and costs;

    (iv)    pre and post judgment interest on all sums awarded; and

    (v)    all such further relief as the Court deems just and appropriate.

## COUNT II

### (Conversion)

19. Cox repeats his allegations in paragraphs numbered 1 through 18 above as if fully set forth herein.

20. Lynch, directly and/or through AGI, converted the Devices and other assets of High View to the detriment of High View and Cox by taking those assets for his and AGI's own use without permission and without paying for same.

21. Lynch's conversion, directly and/or through AGI, has proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

    (i)    compensatory and punitive damages;

  (ii)  injunctive relief;

  (iii)  reasonable attorneys' fees and costs;

  (iv)  pre and post judgment interest on all sums awarded; and

  (v)  all such further relief as the Court deems just and appropriate.

COUNT III

(Fraud)

22. Cox repeats his allegations in paragraphs numbered 1 through 21 above as if fully set forth herein.

23. Cox and Lynch formed High View for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing the Devices to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

24. The purpose of developing the Devices was to benefit High View and its shareholders and beneficiaries and to allow Coinmaster to increase its market share and avoid certain of the problems which had limited its growth in the U.S. market up to that time.

25. The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control. Cox relied on Lynch to carry out the agreed upon common purpose of High View. Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

11

26. Both Cox and Lynch, as well as Coinmaster, contributed substantial funds to High View for the development of the Devices, to which Lynch had access for the purpose of developing the Device.

27. Lynch undertook the development efforts, retaining the services of others and developing the gaming machine allegedly for the benefit of High View and, derivatively, Cox.

28. However, by the Spring and Summer of 2004, it became clear that Lynch considered the software intellectual property rights related to the machine to belong to him, and was embarked on a development process which suited his needs and desires, rather than High View's or Cox's.

29. Disagreements on the direction Lynch was taking were unavailing, inasmuch as Lynch simply ignored the advice and demands of Cox.

30. On information and belief, the development of the machine was completed by late-2004 or early-2005.

31. Thereafter, Lynch directly and/or through AGI took the machine for his and/or AGI's own use, marketing it in Europe and the United States, solely for his and/or AGI's benefit and ignoring the rights and interests of Cox, High View and High View's shareholders and beneficiaries.

32. On information and belief, Lynch never intended to develop the machine for the benefit of High View, Cox or Coinmaster and mislead Cox and Coinmaster into investing in High View without ever intending to use the newly developed gaming machine for the benefit of Cox, High View and High View's shareholders and beneficiaries.

33. Cox and High View reasonably relied upon Lynch's knowing misrepresentations when they provided him with substantial development funds and control over the development of the Devices.

34. Cox, High View and High View's shareholders and beneficiaries have been damaged insofar as the value of High View's shares has been reduced or totally destroyed by Lynch's theft, independently and/or through AGI, of the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

    (i)    compensatory and punitive damages;

    (ii)    injunctive relief;

    (iii)    reasonable attorneys' fees and costs;

    (iv)    pre and post judgment interest on all sums awarded; and

    (v)    all such further relief as the Court deems just and appropriate.

## COUNT IV

### (Breach of Fiduciary Duty)

35. Cox repeats his allegations in paragraphs numbered 1 through 34 above as if fully set forth herein.

36. As a fifty percent (50%) shareholder and a Director of High View, Lynch owes a fiduciary duty to High View and to Cox, in Cox's capacity as a fifty-percent (50%) shareholder and Director of High View.

37. Lynch's theft, independently and/or through AGI, of the Devices and all assets and good will of High View, resulting in the reduction of total destruction of the value of High View's shares, violates Lynch's fiduciary duties owed to High View and to Cox.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against Lynch for the following:

    (i)     compensatory and punitive damages;

    (ii)    injunctive relief;

    (iii)   reasonable attorneys' fees and costs;

    (iv)   pre and post judgment interest on all sums awarded; and

    (v)    all such further relief as the Court deems just and appropriate.

## AMENDED THIRD-PARTY COMPLAINT

Paul A. Cox ("Cox"), individually and derivatively on behalf of High View, by way of Third-Party Complaint against AutoGaming, Inc. ("AGI") says:

## COUNT I

### (Interference With Prospective Business Relations)

1. High View, Inc. ("High View"), a Delaware corporation, was formed on or about June 11, 2003 and Cox and Daniel A. Lynch ("Lynch") were and are fifty percent (50%) shareholders.

2. AGI is believed to be a Delaware corporation formed by Lynch in or after 2004.

3. On information and belief, Lynch is a British foreign national who currently resides at 134 The Aspect, Queen Street, Cardiff CF102GP, Wales, United Kingdom.

4. Lynch was, at one time, a director of Defendant, Coinmaster USA, Inc. ("Coinmaster").

5. Lynch resigned from Coinmaster on or about February 28, 2003, but did not inform Coinmaster of same at that time.

6. Also on February 28, 2003, Lynch terminated a Service Agreement into which he had entered with Coinmaster.

7. These actions ended Lynch's formal association with Coinmaster.

8. In June of 2003, Lynch and Cox, who was also a shareholder and director of Coinmaster, formed High View, as a Delaware corporation. Then, now, and at all times material hereto, Lynch and Cox have remained fifty percent (50%) shareholders of High View.

9. Cox invested in High View which in turn invested substantial funds and human capital resources into developing and owning the rights to new six (6) and ten (10) player station roulette gaming devices (hereinafter both are referred to as the "Devices") for the specific purpose of directly and/or through Coinmaster and/or other entities, marketing and leasing same to various Native American Tribal Casinos in California and other gaming entities in the United States and elsewhere in the world.

10. The work of High View was divided between Cox and Lynch, with Lynch charged with developing the new Device, due to his experience in developing gaming machines, and Cox charged with all financial accounting and project control. Cox relied on Lynch to carry out the agreed upon common purpose of High View. Neither Cox nor Lynch was to be paid for these services as the benefits to be realized were to come from High View's success in selling the devices to Coinmaster.

11. On information and belief, development proceeded as expected, with Lynch in charge, and the Devices developed by High View are ready for introduction into the gaming market in the United States and elsewhere in the world.

12. On information and belief, Lynch absconded with all of the assets necessary for the final development and marketing of the Devices, depriving High View and its shareholders and beneficiaries of the use of those assets.

13. On information and belief, Lynch and AGI, misappropriated the Devices and High View's assets and has sought to obtain required approvals and/or licenses from gaming

15

laboratories, state agencies, tribal authorities, and casino management for the purpose of causing such casinos to lease the Devices.

14. Neither Lynch nor AGI have paid High View for those assets, nor entered into any agreement with High View to acquire or make any use of the Devices.

15. There are only a limited number of casinos that need the Devices in said market and by seeking to lease them to such casinos, Lynch and AGI have interfered with and continue to intentionally interfere with High View's prospective business relations.

16. Lynch's and AGI's intentional interference and other conduct and communications have proximately caused damage to High View and to Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

17. On or about June 1, 2006 Lynch filed a Petition for Dissolution of High View and the Appointment of a Receiver in the Chancery Court of the State of Delaware in and for New Castle County, Civil Action No.: 2193-N. High View and Cox were named as Respondents in that action. (See Petition, attached as Exhibit A, hereto.)

18. Lynch's actions, the pending Petition for Dissolution of High View, and his fifty percent (50%) interest in High View have rendered the management of High View powerless in that the Board of Directors of High View, to wit: Lynch and Cox, are deadlocked with it being obvious that Lynch will not consent to having High View sue him.. Accordingly, any demand that High View's management pursue High View's rights against Lynch and AGI would be futile.

19. Based upon all of the foregoing, Cox is excused from having to make any demand upon High View to sue Lynch and AGI and Cox is permitted to sue Lynch and AGI in his own name

16

and also for the benefit of High View so as to prevent injustice and to adequately and fairly protect the interests and rights of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against AGI for the following:

    (i)    compensatory and punitive damages;

    (ii)    injunctive relief;

    (iii)    reasonable attorneys' fees and costs;

    (iv)    pre and post judgment interest on all sums awarded; and

    (v)    all such further relief as the Court deems just and appropriate.

## COUNT II

### (Conversion)

20. Cox repeats his allegations in paragraphs numbered 1 through 19 above as if fully set forth herein.

21. AGI, directly and/or through Lynch, has converted the Devices and other assets of High View to the detriment of High View and Cox by taking those assets for its own use without permission and without paying for same.

22. AGI's conversion has proximately caused damage to High View and Cox's rights and interests as a shareholder of High View by reducing or totally destroying the value of its shares and by stealing the Devices and all assets and good will of High View.

WHEREFORE, Cox, individually and derivatively on behalf of High View, demands judgment against AGI for the following:

    (i)    compensatory and punitive damages;

    (ii)    injunctive relief;

    (iii)    reasonable attorneys' fees and costs;

    (iv)    pre and post judgment interest on all sums awarded; and

    (v)    all such further relief as the Court deems just and appropriate.

COOPER LEVENSON APRIL NIEDELMAN &
WAGENHEIM, P.A.
ATTORNEYS FOR DEFENDANT, PAUL A. COX

DATED: July 31, 2006

By: /s/ Erin K. Brignola
Erin K. Brignola (DE #2723)
Kevin J. Thornton (NJ #1332)
Fredric L. Shenkman (NJ #4102)
30 Fox Hunt Drive
Bear, Delaware 19701
(302) 838-2600
(302) 838-1942 fax

CLAC 25524.1