IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DANIEL ANTHONY LYNCH, | ) | |
| | ) | C.A. No. 06-365 JJF |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COINMASTER USA, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff, | ) | |
| | ) | |
| PAUL A. COX, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO GAMING, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF
PLAINTIFF DANIEL ANTHONY LYNCH AND THIRD-PARTY DEFENDANT AUTO
GAMING, INC.'S MOTION FOR SUMMARY JUDGMENT**

                                      JAMES S. GREEN, ESQ. (DE0481)
                                      KEVIN A. GUERKE, ESQ. (DE4096)
                                      SEITZ, VAN OGTROP & GREEN, P.A
                                      222 Delaware Avenue, Suite 1500
                                      P. O. Box 68
                                      Wilmington, DE 19899
                                      (302) 888-0600
                                            Attorneys for
                                            Plaintiff Daniel Anthony Lynch and
                                            Third-Party Defendant Auto Gaming, Inc.

Dated: January 31, 2008

63065 v1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF CITATIONS ............................................................................................................. ii

    I.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ......................... 1

    II.    SUMMARY OF ARGUMENT ........................................................................................ 2

    III.    CONCISE STATEMENT OF THE FACTS .................................................................. 3

    IV.    ARGUMENT..................................................................................................................... 4

        A.    Summary Judgment Standard ............................................................................... 4

        B.    CMUSA Breached the Service Agreement........................................................... 4

        C.    Cox and CMUSA's Claims Against Lynch and Autogaming Fail...................... 7

    V.    CONCLUSION................................................................................................................. 9

# TABLE OF CITATIONS

Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................................. 8

Celotex Corp. v. Catrett, 477 US 317 (1986) ........................................................................... 4, 8

Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300 (3rd Cir. 1995) ............................. 4

Other Authorities

Federal Civil Rules of Procedure ................................................................................................ 4

I.  **STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

Daniel Anthony Lynch's ("Lynch") Complaint against Paul Cox ("Cox") and Coinmaster USA, Inc. ("CMUSA") was removed to this Court on May 31, 2006. (D.I. 1) CMUSA filed Counterclaims against Lynch and Third-Party Complaints against Autogaming, Inc. ("Autogaming") (D.I. 29) This is Lynch's and Autogaming's Opening Brief in Support of their Motion for Summary Judgment on all claims asserted against them and on Lynch's breach of contract claim.

## II. SUMMARY OF ARGUMENT

1. CMUSA breached Lynch's Service Agreement when it failed to pay him according to its terms during Lynch's tenure at CMUSA and upon his termination.

2. Cox and CMUSA's Counterclaims and Third-Party Complaints fail as a matter of law and fact because neither Lynch nor Autogaming stole or converted any High View property.

**III.   CONCISE STATEMENT OF THE FACTS**

Lynch and Autogaming hereby incorporates the Statement of Facts contained in their Answering Brief in Opposition to CMUSA and Cox's Motion for Summary Judgment and Appendix attached thereto.

## IV. ARGUMENT.

### A. Summary Judgment Standard.

Federal Civil Rules of Procedure 56(c) provides that a Court should grant summary judgment when the record shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is appropriate when the court, reviewing the record as a whole and drawing reasonable inferences in the light most favorable to the non-moving party, determines that the above Rule 56(c) standard has been met. See Celotex Corp. v. Catrett, 477 US 317, 322-24 (1986) "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3rd Cir. 1995).

### B. CMUSA Breached the Service Agreement.

Unlike other aspects of Lynch's claims, his entitlement to a $600,000.00 termination fee according to the terms of his Service Agreement is unchallenged in Cox's and CMUSA's Motion for Summary Judgment outside of one sentence in their Opening Brief. The obvious reason is there is no defense to the claim.

The CMUSA shareholders elected Lynch to the CMUSA board of directors in 2001. (B318) They re-elected him on November 8, 2002 and again he was elected to serve as Chairman of the Board for the year 2003. (B320-321) It is undisputed that Lynch and CMUSA entered into the November 15, 2002 Service Agreement. (B512, 182-183) The Service Agreement was approved at a CMUSA November 2002 board meeting. (B513)

4

The Service Agreement was valid and enforceable. Both Lynch and CMUSA performed their obligations according to its terms. He provided services to CMUSA in 2003 and participated in Board of Director meetings. (B193, 201, 323, 325, 515, 519) Lynch also provided critical design and technical support, which greatly aided CMUSA. (B20) His services were provided throughout 2003 and into 2004. (B129)

For its part, CMUSA paid Lynch $8,000 a month in 2003. These payments were CMUSA's only obligation during the pendency of the Service Agreement. CMUSA paid Lynch $8,000.00 a month for March, April, May, June, July, August, and September 2003. (B114-121, 184-187) CMUSA held Lynch out as its Chairman of the Board of Directors. CMUSA never questioned the validity of Lynch's Service Agreement until Lynch refused to sign the Deal. In fact, it emphatically defended it and Lynch's service to CMUSA when challenged by the Receiver.

After the challenge was settled, Cox, CMUSA, and the Receiver negotiated the buyout of the Service Agreement in recognition that it would owe Lynch a termination fee if they could not get him to voluntarily resign from CMUSA. CMUSA offered to buyout Lynch's Service Agreement in the fall of 2003 for $190,000.00. (B82) After negotiations during the winter of 2003-2004, it increased its offer in March 2004 to $214,000.00 to take into account the delay and missed monthly payments over that period of time. (B84) In May 2004, Cox, CMUSA's President, accurately described the buyout offer as "a cash sum of $214,000.00 to cover the cessation of your old contract." (B93)

Prior to CMUSA's actions to remove Lynch, Cox and Brad Hutcheon discussed "firing" Lynch for not going along with the Deal. (B206, 207) On June 15, 2004, Cox stated in an e-mail to the Receiver: "If he doesn't want to sign the document as is, I'm prepared to 'fire him' (as

I told you last week!). Then he can pursue us through the courts." (B209) The Receiver responded two days later that if Lynch "refuses, we should discuss Tony's position and particularly whether dismissing him is the right way forward. I haven't looked at this closely for more than 6 months but I suspect that may be the only option." (B208) That is exactly what they did.

No AGM was held in 2003. The 2003 AGM was held on October 4, 2004. (B449, 264) At that meeting, Cox was re-elected to the Board and Hutcheon was elected for the first time. Lynch was not re-elected to the Board. (B449) Therefore, on October 4, 2004, CMUSA became contractually obligated to compensate Lynch $600,000.00 for CMUSA's decision to change Lynch's position in the organization. (B183, 449) "This obligation must be met in full, on the date of termination." (B183) CMUSA breached the Service Agreement when it failed to make payment.

CMUSA also breached the Service Agreement by failing to pay Lynch $8,000.00 for October, November, and December 2003 and $12,000.00 for January through September 2004, totaling $132,000.00. It is admitted that Lynch worked for CMUSA during this time. Furthermore, Lynch is due a 5% annual bonus of CMUSA's net profit for 2003. Cox was paid a $15,400.00 bonus for 2003 based on 3% of CMUSA's net profits according to his CMUSA contract, which has the same bonus structure as Lynch's. (B307, 188, 167, 113) Therefore, CMUSA owes Lynch $25,666.66 based on Cox's 2003 CMUSA bonus.

Lynch is, therefore, entitled to summary judgment on its breach of contract claim because CMUSA changed its position in 2004 and otherwise failed to pay him according to the terms of the Service Agreement.

### C.   Cox and CMUSA's Claims Against Lynch and Autogaming Fail

Cox and CMUSA's claims against Lynch and Autogaming fail as a matter of fact because they did not steal or convert High View or CMUSA property. Autogaming purchased the property from ML Solutions.

In Cox's Amended Counterclaim, he assets claims for intentional interference with prospective business relations (Count I), conversion (Count II), fraud (Count III), and breach of fiduciary duty (Count IV). (D.I. 29) All of those claims are based on the same allegation that Lynch absconded with High View assets. Cox repeats his allegations of interference and conversion for the same acts against Autogaming in his Amended Third-Party Complaint. (D.I. 18) Finally, in CMUSA's Counterclaim against Lynch, it asserts a claim for conversion of High View assets which it alleges were committed to CMUSA. (D.I. 18)

ML Solutions signed a contract and Retention of Title Agreement with High View. (B286-88, 457, 463) Under the contract, ML Solutions provided services, including new product development. (B459) ML Solutions started development of an electronics board and software that was intended to be part of a completed multi-player roulette game. (B459) The work started in June 2003 and continued through June 2004. In June 2004, ML Solutions had completed approximately 95% of the electronics board and 30-40% of the software when High View terminated the contract and failed to pay for the development work. (B460-462)

In July 2004, ML Solutions sent High View invoices for its work. The three invoices total $14,687.03. (B462-463) Since Cox removed all support to High View and refused to continue its funding, High View never paid ML Solutions for the invoices. ML Solutions, therefore, had the right to, and did, sell the board to Autogaming according to the terms of the Retention of Title Agreement. (B41-42, 464, 499-502) "Should the buyer...fail to pay any

7

outstanding monies for goods-services after a one hundred twenty day period from the due date of payment, the seller will have the right to dispose of any hardware-software to recover any and all outstanding monies due." (B288)

There is no evidence that Lynch absconded or converted any High View assets. Nor is there any evidence Autogaming stole anything. Autogaming merely purchased a partially developed electronics board and software from ML Solutions, which ML Solutions had a right to sell. ML Solutions sold the hardware and software according to the terms of its contracts with High View. Importantly, High View, Cox, and CMUSA never pursued legal action against ML Solutions. (B468-469)

The CMUSA claims fail for an additional reason. It had no rights in the hardware and software developed under contract with High View. Moreover, Cox and CMUSA admitted CMUSA and High View did not have a distribution agreement or any other contract. (B259)

The moving party has the burden to establish the lack of genuinely disputed material facts by proving "that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Lynch and Autogaming have met that burden here. Cox and CMUSA have no evidence to support their claims, only unsupported, and now disproved, assertions. Concrete evidence, rather than unsupported allegations, must be presented to avoid summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)

There is no evidence that either Lynch or Autogaming absconded or converted any High View assets. Therefore, each of Cox and CMUSA's claims fail as a matter of law.

## V. CONCLUSION.

For all of the reasons stated above, Lynch is entitled to summary judgment on his breach of contract claim and summary judgment should be granted in favor of Lynch and Autogaming on the Counterclaims and Third-Party Complaints asserted against them.

                                         **SEITZ, VAN OGTROP & GREEN, P.A**

                                         /S/ Kevin A. Guerke
                                         **JAMES S. GREEN, ESQ. (DE0481)**
                                         **KEVIN A. GUERKE, ESQ. (DE4096)**
                                         222 Delaware Avenue, Suite 1500
                                         P. O. Box 68
                                         Wilmington, DE  19899
                                         (302) 888-0600
                                                     Plaintiff Daniel Anthony Lynch and
                                                     Third-Party Defendant Auto Gaming, Inc.

Dated: January 31, 2008