IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL ANTHONY LYNCH,     )
    )
    Plaintiff,     )
    )
    v.     )     Civil Action No. 06-365
    )
COINMASTER USA, INC., a Delaware     )
corporation, and PAUL A. COX,     )
    )
    Defendants.     )

**ANSWERING BRIEF OF
DEFENDANTS COINMASTER USA, INC. AND PAUL A. COX
IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF PLAINTIFF DANIEL ANTHONY LYNCH AND
THIRD-PARTY DEFENDANT AUTO GAMING, INC.**

Thomas P. Preston, Esquire
I.D. No. 2548
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6478
Facsimile: (302) 425-6464

Attorneys for Defendants
Coinmaster USA, Inc. and
Paul A. Cox

Dated: February 15, 2008

## TABLE OF CONTENTS

I.    COUNTERSTATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........1

II.   SUMMARY OF ARGUMENT ....................................................................................2

III.  CONCISE STATEMENT OF THE FACTS ....................................................................3

IV.   ARGUMENT................................................................................................................4

      A.   The Motion For Summary Judgment Filed By Defendants Establishes, Based On
           The Testimony Of Plaintiff Lynch And Undisputed Documentary Evidence, That
           The Agreement Between CMUSA And Lynch Was Void Ab Initio......................4

      B.   Claims Against Lynch And Auto Gaming Cannot Be Decided On Summary
           Judgment ..................................................................................................................5

i

I.     <u>**COUNTERSTATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**</u>

Defendants Paul A. Cox ("Cox") and Coinmaster USA, Inc. ("CMUSA") agree that the proceedings, as set forth in the moving party's Statement of the Nature and Stage of Proceedings are largely accurate.    In addition, however, Defendants filed their Motion For Summary Judgment on December 21, 2007; Plaintiff responded to that Motion on January 31, 2008; and Defendants filed their Reply Brief on February 8, 2008.    Those briefs dealt in their entirety with the arguments raised in Section IV(B) of this Motion.

## II.  SUMMARY OF ARGUMENT

1.    CMUSA breached Lynch's Service Agreement when it failed to pay him according to its terms during Lynch's tenure at CMUSA and upon his termination.

**This argument is fully developed in the Defendants' Motion For Summary Judgment, referred to above.  This argument should be dismissed as moot.**

2.    Cox and CMUSA's Counterclaims and Third-Party Complaints fail as a matter of law and fact because neither Lynch nor Auto Gaming stole or converted any High View property.

**The undisputed testimony establishes that Plaintiff Lynch controlled all aspects of the dealings between Mike Lerwill and ML Solutions and High View, and that he engineered the theft or conversion of the property belonging to High View in which CMUSA had an interest.**

2

## III.    **CONCISE STATEMENT OF THE FACTS**

Defendants incorporate by reference the facts, as set forth in their Opening Brief in Support of Motion for Summary Judgment (D.I. No. 61) and Reply Brief in Support of Summary Judgment (D.I. No. 71), as referred to above.

Briefly, Plaintiff Daniel Anthony Lynch ("Lynch") entered into an employment agreement with Coinmaster Gaming, PLC ("PLC") in November, 2001. A year later, he attempted to negotiate another agreement for compensation with CMUSA, which was majority-owned by PLC.

Most of this lawsuit turns on Lynch's efforts to enforce his alleged agreement with CMUSA. Why that agreement is completely underlineforceable is a major part of Defendants' Motion For Summary Judgment.

Defendants also counterclaimed for damages suffered when Lynch engineered the sale of certain assets owned by High View, Inc., a company jointly owned with Defendant Cox and funded by CMUSA. These claims are the target of the latter portion of Lynch's Motion.

## IV.    ARGUMENT

There is no contention that Plaintiff has misstated the standard for summary judgment. What Plaintiff has done, repeatedly, is misrepresent the status of the factual record.

### A.    The Motion For Summary Judgment Filed By Defendants Establishes, Based On The Testimony Of Plaintiff Lynch And Undisputed Documentary Evidence, That The Agreement Between CMUSA And Lynch Was Void *Ab Initio*

As previously noted, this entire issue of the validity of the contract under which Lynch claims unpaid sums, was void the day it was signed. Lynch had previously entered into a Service Agreement as the President and CEO of PLC, which forbade him from entering into any further employment agreements with subsidiaries or associated companies of PLC. CMUSA fit in that category, as Lynch was fully aware.

The effort by Lynch to establish a basis for summary judgment in his favor on that agreement is grounded squarely on a remarkable misreading of the record. Without rearguing all that is set forth in Defendants' Opening and Reply Briefs in support of their Motion For Summary Judgment, it is worth noting a few of the misstatements of fact asserted by the Plaintiff:

1.    Plaintiff contends that he served as the Chairman of CMUSA in the year 2003, somehow contending that that justifies his demand for compensation. What he conveniently ignores is that his election at the Board and Stockholder meetings held on November 8, 2002 violated the by-laws of CMUSA because it purported to elect him to serve as Chairman for a three-year period. The by-laws forbid this, permitting Board elections only for one year. *See* Exhibit D-6 to Lynch deposition (attached as Exhibit 1) at Article II, Section 2.3.

4

2.      Lynch contends that CMUSA never questioned the validity of this agreement with CMUSA. What he neglects to mention to the Court is that the PLC Service Agreement was never provided to Cox or anyone else at CMUSA until late in the summer of 2003. Therefore, CMUSA never had the basis for knowing that the agreement between Lynch and CMUSA was void until well after the fact.

3.      Lynch claims that the Receiver and CMUSA attempted to negotiate a resolution of Lynch's CMUSA contract, apparently contending that that demonstrates the contract's validity. On the contrary, all that demonstrates is that there was a good-faith effort made to resolve all potential disputes at the time the Receiver sold the interest in CMUSA to Cox and Hutcheon, regardless of whether they had merit as a matter of law.

The bottom line, as developed in detail in Defendants' Motion For Summary Judgment, is that Lynch never had a valid contract with CMUSA. His contention that that contract should be upheld, particularly on a motion for summary judgment, flies directly in the face of his own deposition testimony and the critical documents.

**B.      Claims Against Lynch And Auto Gaming Cannot Be Decided On Summary Judgment**

Contrary to Lynch's contention in his Opening Brief, the facts as to what happened to the assets owned by High View and indisputably sold to Lynch and his company, Auto Gaming, are by no means able to be determined on summary judgment.

First, Mr. Lerwill testified in his deposition that Lynch, and Lynch alone, negotiated with Lerwill for his services, drafted the operative agreements, handled the payment of all invoices submitted by Lerwill's company, informed Lerwill that the agreement between Lerwill and High View had been terminated, and further informed Lerwill that he should sell the assets developed

5

for High View to Lynch. *See* Lerwill Deposition at 12, 20-22, 26-28 and 41-42 (*see* Plaintiff's App. at B454-495). In short, it is undisputed that Tony Lynch manipulated the entire relationship between Mike Lerwill and his company, ML Solutions, Ltd., and High View.

Second, Plaintiff totally ignores the language of the alleged contract between High View and ML Solutions in his Motion For Summary Judgment. That Agreement (*see* Plaintiff Appendix at B286-287) contains an integration clause, stating that "this is the entire Agreement between the parties." Yet Plaintiff ignores that language in contending that the Retention of Title Agreement was binding and somehow permitted ML Solutions, Ltd., and/or Mr. Lerwill to claw back assets on which he had worked on behalf of High View if his invoices were not paid. The Retention of Title Agreement (Plaintiff's Appendix at B288) says nothing about amending or otherwise modifying the Agreement with High View, other than an incomplete sentence at the end, which suggests that the Retention of Title was to be made part of some future agreement.

Third, Mr. Lerwill testified that Lynch controlled all payments to Lerwill and his company, that Lerwill had no contact with Cox or CMUSA, and Lynch suggested that Lerwill take the assets he had developed for High View and sell them to Auto Gaming. *See* Lerwill Deposition, *supra*. His testimony is remarkable, particularly since Lerwill also testified that he never even met Paul Cox (Lerwill Deposition at 3, 27), and had no idea what the relationship was between CMUSA and High View (Lerwill Deposition at 20), although he conceded that he was aware that CMUSA had paid for certain of the work done by ML Solutions in connection with its High View contract. Lerwill Deposition at 30, 40.

So what do we have here, based upon Lerwill's testimony? First, Lynch controlled all aspects of the relationship. Second, Lynch ended up with the assets paid for by High View, and CMUSA, in Lynch's own company, Auto Gaming, Inc. Third, the contract between

6

ML Solutions, Ltd. and High View did not contain a retention of title agreement, and did contain an integration clause which, at least, brings into question the validity of any such agreement. Fourth, it was Lynch who decided not to pay the invoices rendered by ML Solutions to High View, invoices which were rendered *after* the agreement with High View and ML Solutions had expired. Fifth, Paul Cox was never informed of any such invoices, and believed that all invoices between ML Solutions and High View had been paid. *See* Cox Deposition testimony at 172 (attached as Ex. 2).

Finally, we know from Mr. Lerwill that the assets that properly belong to High View were sold by him to Auto Gaming for a pittance. There was no effort to get market price, it is undisputed that High View paid tens of thousands of dollars more for the development of those assets than they were sold for, and neither High View nor CMUSA were given any opportunity to "bid" on those assets prior to their being sold. Lerwill Deposition at 31-35. In short, this has all of the appearances of a complete fraud designed to deprive High View, CMUSA, and their respective investors of the assets which properly belonged to High View.

Mr. Lynch's Motion should be denied out of hand.

Respectfully submitted,

BLANK ROME LLP

By: _____
     Thomas P. Preston, Esquire
     I.D. No. 2548
     1201 Market Street, Suite 1500
     Wilmington, DE 19801
     (302) 425-6400

     Counsel for Defendant
     Coinmaster USA, Inc.

Dated: February 15, 2008

8

**EXHIBIT 1**

# BY-LAWS

## OF

## COINMASTER USA INC.

### ARTICLE I

### OFFICES

**1.1** <u>Registered Office</u>:  The registered office shall be established and maintained at 113 Barksdale Prof. Center, Newark, DE and Delaware Intercorp Inc. shall be the registered agent of the Corporation in charge thereof.

**1.2** <u>Other Offices</u>: The corporation may have other offices, either within or without the State of Delaware, at such place or places as the Board of Directors may from time to time appoint or the business of the corporation may require, provided, however, that the corporation's books and records shall be maintained at such place within the continental United States as the Board of Directors shall from time to time designate.

### ARTICLE II

### STOCKHOLDERS

**2.1** <u>Place of Stockholders' Meetings</u>:  All meetings of the stockholders of the corporation shall be held at such place or places, within or outside the State of Delaware as may be fixed by the Board of Directors from time to time or as shall be specified in the respective notices thereof. The Board of Directors may, in its sole discretion, determine that the meeting shall not be held at any place, but may instead he held solely by means of remote communication. Stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication participate in a meeting of stockholders and be deemed present in person and vote at a meeting of stockholders whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (i) the corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (ii) the corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (iii) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such vote or other action shall be maintained by the corporation.

LYN00004

2.2    Date and Hour of Annual Meetings of Stockholders: An annual meeting of stockholders shall be held each year within five months after the close of the after the close of the fiscal year of the Corporation.

2.3    Purpose of Annual Meetings: At each annual meeting, the stockholders shall elect the members of the Board of Directors for the succeeding year. At any such annual meeting any further proper business may be transacted.

2.4    Special Meetings of Stockholders:    Special meetings of the stockholders or of any class or series thereof entitled to vote may be called by the President or by the Chairman of the Board of Directors, or at the request in writing by stockholders of record owning at least fifty (50%) percent of the issued and outstanding voting shares of common stock of the corporation.

2.5    Notice of Meetings of Stockholders: Except as otherwise expressly required or permitted by law, not less than ten days nor more than sixty days before the date of every stockholders' meeting the Secretary shall give to each stockholder of record entitled to vote at such meeting, written notice, served personally by mail or by telegram, stating the place, date and hour of the meeting the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Such notice, if mailed shall be deemed to be given when deposited in the United States mail, postage prepaid, directed to the stockholder at his address for notices to such stockholder as it appears on the records of the corporation. Any notice to stockholders shall be effective if given by a form of electronic transmission consented to by the stockholder to whom notice is to be given.

2.6    Quorum of Stockholders:    (a)    Unless otherwise provided by the Certificate of Incorporation or by law, at any meeting of the stockholders, the presence in person or by proxy of stockholders entitled to cast a majority of the votes thereat shall constitute a quorum. The withdrawal of any shareholder after the commencement of a meeting shall have no effect on the existence of a quorum, after a quorum has been established at such meeting.

(b)    At any meeting of the stockholders at which a quorum shall be present, a majority of voting stockholders, present in person or by proxy, may adjourn the meeting from time to time without notice other than announcement at the meeting. In the absence of a quorum, the officer presiding thereat shall have power to adjourn the meeting from time to time until a quorum shall be present. Notice of any adjourned meeting, other than announcement at the meeting, shall not be required to be given except as provided in paragraph (d) below and except where expressly required by law.

(c)    At any adjourned session at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting originally called but only those stockholders entitled to vote at the meeting as originally noticed shall be entitled to vote at any adjournment or adjournments thereof, unless a new record date is fixed by the Board of Directors.

2

**LYN00005**

(d)    If an adjournment is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

2.7    Chairman and Secretary of Meeting: The President, shall preside at meetings of the stockholders. The Secretary shall act as secretary of the meeting or if he is not present, then the presiding officer may appoint a person to act as secretary of the meeting.

2.8    Voting by Stockholders:    Except as may be otherwise provided by the Certificate of Incorporation or these by-laws, at every meeting of the stockholders each stockholder shall be entitled to one vote for each share of voting stock standing in his name on the books of the corporation on the record date for the meeting. Except as otherwise provided by these by-laws, all elections and questions shall be decided by the vote of a majority in interest of the stockholders present in person or represented by proxy and entitled to vote at the meeting.

2.9    Proxies:    Any stockholder entitled to vote at any meeting of stockholders may vote either in person or by proxy. A proxy may be in writing, subscribed by the stockholder or his duly authorized attorney-in-fact, but need not be dated, sealed, witnessed or acknowledged. A stockholder may authorize another person to act for such stockholder as proxy by transmitting a telegram, cablegram or other means of electronic transmission to the proxyholder, provided that any such communication must either set forth or be submitted with information from which it can be determined that such communication was authorized by the stockholder.

2.10    Inspectors:    The election of directors and any other vote by ballot at any meeting of the stockholders shall be supervised by at least two inspectors. Such inspectors may be appointed by the presiding officer before or at the meeting; or if one or both inspectors so appointed shall refuse to serve or shall not be present, such appointment shall be made by the officer presiding at the meeting.

2.11    List of Stockholders: (a)    At least ten days before every meeting of stockholders, the Secretary shall prepare and make a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder.

(b)    During ordinary business hours, for a period of at least ten days prior to the meeting, such list shall be open to examination by any stockholder for any purpose germane to the meeting, either at the principal place of business of the corporation or on a reasonably accessible electronic network, and the information required to gain access to such list is provided with the notice of the meeting. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place where the meeting is to be held and may be inspected by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall be open to inspection of any stockholder during the meeting on a reasonably accessible electronic network and the information required to access such list shall be provided with the notice of the meeting.

3

LYN00006

(d)    The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the stock ledger, the list required by this Section 2.11 or the books of the corporation, or to vote in person or by proxy at any meeting of stockholders.

2.12    <u>Procedure at Stockholders' Meetings:</u>Except as otherwise provided by these by-laws or any resolutions adopted by the stockholders or Board of Directors, the order of business and all other matters of procedure at every meeting of stockholders shall be determined by the presiding officer.

2.13    <u>Action By Consent Without Meeting:</u>    Unless otherwise provided by the Certificate of Incorporation, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.  An electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder shall be deemed to be written, signed and dated for the purposes of this section provided that such electronic transmission sets forth information from which the corporation can determine that the electronic transmission was transmitted by the stockholder or proxyholder and the date on which the stockholder or proxyholder transmitted such electronic transmission.  The date on which such electronic transmission is transmitted shall be deemed the date on which such consent was signed.  No consent given by electronic transmission shall be deemed delivered until reproduced in paper and delivered to the corporation at its registered office in the state, its principal place of business or an officer having custody of the record book of stockholder meetings in the manner provided by the board of directors.

## ARTICLE III

## DIRECTORS

3.1    <u>Powers of Directors</u>:  The property, business and affairs of the corporation shall be managed by its Board of Directors which may exercise all the powers of the corporation except such as are by the law of the State of Delaware or the Certificate of Incorporation or these by-laws required to be exercised or done by the stockholders.

3.2    <u>Number, Method of Election, Terms of Office of</u> Directors: The number of directors which shall constitute the Board of Directors shall be  1  ( one )  unless and  until otherwise determined by a vote of a majority of the entire Board of Directors.  Each Director shall hold office until the next annual meeting of stockholders and until his successor is elected and qualified, provided, however, that a director may resign at any time.  Directors need not be stockholders.  All elections of directors shall be by written ballot, unless otherwise provided in the certificate of incorporation; if authorized by the board of directors, such requirement of a written ballot shall be satisfied by a ballot submitted by electronic transmission, provided that

4

LYN00007

any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder or proxyholder.

3.3    Vacancies on Board of Directors; Removal: (a)    Any director may resign his office at any time by delivering his resignation in writing or by electronic transmission to the Chairman of the Board or to the President. It will take effect at the time specified therein or, if no time is specified, it will be effective at the time of its receipt by the corporation. The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.

(b)    Any vacancy in the authorized number of directors may be filled by majority vote of the stockholders and any director so chosen shall hold office until the next annual election of directors by the stockholders and until his successor is duly elected and qualified or until his earlier resignation or removal.

(c)    Any director may be removed with or without cause at any time by the majority vote of the stockholders given at a special meeting of the stockholders called for that purpose.

3.4    Meetings of the Board of Directors: (a)    The Board of Directors may hold their meetings, both regular and special, either within or outside the State of Delaware.

(b)    Regular meetings of the Board of Directors may be held at such time and place as shall from time to time be determined by resolution of the Board of Directors. No notice of such regular meetings shall be required. If the date designated for any regular meeting be a legal holiday, then the meeting shall be held on the next day which is not a legal holiday.

(c)    The first meeting of each newly elected Board of Directors shall be held immediately following the annual meeting of the stockholders for the election of officers and the transaction of such other business as may come before it. If such meeting is held at the place of the stockholders' meeting, no notice thereof shall be required.

(d)    Special meetings of the Board of Directors shall be held whenever called by direction of the Chairman of the Board or the President or at the written request of any one director.

(e)    The Secretary shall give notice to each director of any special meeting of the Board of Directors by mailing the same at least three days before the meeting or by telegraphing, telexing, or delivering the same not later than the date before the meeting.

Unless required by law, such notice need not include a statement of the business to be transacted at, or the purpose of, any such meeting. Any and all business may be transacted at any meeting of the Board of Directors. No notice of any adjourned meeting need be

LYN00008

given. No notice to or waiver by any director shall be required with respect to any meeting at which the director is present.

3.5     Quorum and Action: Unless provided otherwise by law or by the Certificate of Incorporation or these by-laws, a majority of the Directors shall constitute a quorum for the transaction of business; but if there shall be less than a quorum at any meeting of the Board, a majority of those present may adjourn the meeting from time to time. The vote of a majority of the Directors present at any meeting at which a quorum is present shall be necessary to constitute the act of the Board of Directors.

3.6     Presiding Officer and Secretary of the Meeting:     The President, or, in his absence a member of the Board of Directors selected by the members present, shall preside at meetings of the Board. The Secretary shall act as secretary of the meeting, but in his absence the presiding officer may appoint a secretary of the meeting.

3.7     Action by Consent Without Meeting: Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or electronic transmissions are filed with the minutes or proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

3.8     Action by Telephonic Conference:     Members of the Board of Directors, or any committee designated by such board, may participate in a meeting of such board or committee by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in such a meeting shall constitute presence in person at such meeting.

3.9     Committees: The Board of Directors shall, by resolution or resolutions passed by a majority of Directors designate may designate one or more committees, each of such committees to consist of one or more Directors of the Corporation, for such purposes as the Board shall determine. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

3.10     Compensation of Directors: Directors shall receive such reasonable compensation for their service on the Board of Directors or any committees thereof, whether in the form of salary or a fixed fee for attendance at meetings, or both, with expenses, if any, as the Board of Directors may from time to time determine. Nothing herein contained shall be construed to preclude any Director from serving in any other capacity and receiving compensation therefor.

6

LYN00009

# ARTICLE IV

## OFFICERS

4.1  <u>Officers. Title. Elections, Terms</u>:    (a)    The elected officers of the corporation shall be a President, a Treasurer and a Secretary, and such other officers as the Board of Directors shall deem advisable.  The officers shall be elected by the Board of Directors at its annual meeting following the annual meeting of the stockholders, to serve at the pleasure of the Board or otherwise as shall be specified by the Board at the time of such election and until their successors are elected and qualified.

(b)    The Board of Directors may elect or appoint at any time, and from time to time, additional officers or agents with such duties as it may deem necessary or desirable. Such additional officers shall serve at the pleasure of the Board or otherwise as shall be specified by the Board at the time of such election or appointment.  Two or more offices may be held by the same person.

(c)    Any vacancy in any office may be filled for the unexpired portion of the term by the Board of Directors.

(d)    Any officer may resign his office at any time.  Such resignation shall be made in writing and shall take effect at the time specified therein or, if no time be specified, at the time of its receipt by the corporation.  The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation.

(e)    The salaries of all officers of the corporation shall be fixed by the Board of Directors.

4.2  <u>Removal of Elected Officers</u>: Any elected officer may be removed at any time, either with or without cause, by resolution adopted at any regular or special meeting of the Board of Directors by a majority of the Directors then in office.

4.3  <u>Duties</u>: (a)  <u>President</u>:    The President shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall supervise and control all the business and affairs of the corporation.  He shall, when present, preside at all meetings of the stockholders and of the Board of Directors.  He shall see that all orders and resolutions of the Board of Directors are carried into effect (unless any such order or resolution shall provide otherwise), and in general shall perform all duties incident to the office of president and such other duties as may be prescribed by the Board of Directors from time to time.

(b)  <u>Treasurer</u>:    The Treasurer shall (1) have charge and custody of and be responsible for all funds and securities of the Corporation; (2) receive and give receipts for moneys due and payable to the corporation from any source whatsoever; (3) deposit all such moneys in the name of the corporation in such banks, trust companies, or other depositaries as shall be selected by resolution of the Board of Directors; and (4) in general perform all duties

7

LYN00010

incident to the office of treasurer and such other duties as from time to time may be assigned to him by the President or by the Board of Directors. He shall, if required by the Board of Directors, give a bond for the faithful discharge of his duties in such sum and with such surety or sureties as the Board of Directors shall determine.

(c) Secretary: The Secretary shall (1) keep the minutes of the meetings of the stockholders, the Board of Directors, and all committees, if any, of which a secretary shall not have been appointed, in one or more books provided for that purpose; (2) see that all notices are duly given in accordance with the provisions of these by-laws and as required by law; (3) be custodian of the corporate records and of the seal of the corporation and see that the seal of the corporation is affixed to all documents, the execution of which on behalf of the corporation under its seal, is duly authorized; (4) keep a register of the post office address of each stockholder which shall be furnished to the Secretary by such stockholder; (5) have general charge of stock transfer books of the Corporation; and (6) in general perform all duties incident to the office of secretary and such other duties as from time to time may be assigned to him by the President or by the Board of Directors.

## ARTICLE V

## CAPITAL STOCK

5.1 Stock Certificates: (a) Every holder of stock in the corporation shall be entitled to have a certificate signed by, or in the name of, the corporation by the President and by the Treasurer or the Secretary, certifying the number of shares owned by him:

(b) If such certificate is countersigned by a transfer agent other than the corporation or its employee, or by a registrar other than the corporation or its employee, the signatures of the officers of the corporation may be facsimiles, and, if permitted by law, any other signature may be a facsimile.

(c) In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the corporation with the same effect as if he were such officer at the date of issue.

(d) Certificates of stock shall be issued in such form not inconsistent with the Certificate of Incorporation as shall be approved by the Board of Directors, and shall be numbered and registered in the order in which they were issued.

(e) All certificates surrendered to the corporation shall be canceled with the date of cancellation, and shall be retained by the Secretary, together with the powers of attorney to transfer and the assignments of the shares represented by such certificates, for such period of time as shall be prescribed from time to time by resolution of the Board of Directors.

5.2 Record Ownership: A record of the name and address of the holder of such certificate, the number of shares represented thereby and the date of issue thereof shall be

8

LYN00011

made on the corporation's books. The corporation shall be entitled to treat the holder of any share of stock as the holder in fact thereof, and accordingly shall not be bound to recognize any equitable or other claim to or interest in any share on the part of any other person, whether or not it shall have express or other notice thereof, except as required by law.

5.3    Transfer of Record Ownership:    Transfers of stock shall be made on the books of the corporation only by direction of the person named in the certificate or his attorney, lawfully constituted in writing, and only upon the surrender of the certificate therefor and a written assignment of the shares evidenced thereby. Whenever any transfer of stock shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the transfer if, when the certificates are presented to the corporation for transfer, both the transferor and the transferee request the corporation to do so.

5.4    Lost, Stolen or Destroyed Certificates:    Certificates    representing shares of the stock of the corporation shall be issued in place of any certificate alleged to have been lost, stolen or destroyed in such manner and on such terms and conditions as the Board of Directors from time to time may authorize.

5.5    Transfer Agent; Registrar; Rules Respecting Certificates:    The corporation may maintain one or more transfer offices or agencies where stock of the corporation shall be transferable. The corporation may also maintain one or more registry offices where such stock shall be registered. The Board of Directors may make such rules and regulations as it may deem expedient concerning the issue, transfer and registration of stock certificates.

5.6    Fixing Record Date for Determination of Stockholders of Record:    The Board of Directors may fix, in advance, a date as the record date for the purpose of determining stockholders entitled to notice of, or to vote at, any meeting of the stockholders or any adjournment thereof, or the stockholders entitled to receive payment of any dividend or other distribution or the allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock, or to express consent to corporate action in writing without a meeting, or in order to make a determination of the stockholders for the purpose of any other lawful action. Such record date in any case shall be not more than sixty days nor less than ten days before the date of a meeting of the stockholders, nor more than sixty days prior to any other action requiring such determination of the stockholders. A determination of stockholders of record entitled to notice or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

5.7    Dividends:    Subject to the provisions of the Certificate of Incorporation, the Board of Directors may, out of funds legally available therefor at any regular or special meeting, declare dividends upon the capital stock of the corporation as and when they deem expedient. Before declaring any dividend there may be set apart out of any funds of the corporation available for dividends, such sum or sums as the Board of Directors from time to time in their discretion deem proper for working capital or as a reserve fund to meet contingencies or for equalizing dividends or for such other purposes as the Board of Directors shall deem conducive to the interests of the corporation.

9

LYN00012

# ARTICLE VI

## SECURITIES HELD BY THE CORPORATION

      6.1   <u>Voting:</u>      Unless the Board of Directors shall otherwise order, the President, the Secretary or the Treasurer shall have full power and authority, on behalf of the corporation, to attend, act and vote at any meeting of the stockholders of any corporation in which the corporation may hold stock, and at such meeting to exercise any or all rights and powers incident to the ownership of such stock, and to execute on behalf of the corporation a proxy or proxies empowering another or others to act as aforesaid. The Board of Directors from time to time may confer like powers upon any other person or persons.

      6.2   <u>General Authorization to Transfer Securities Held by the Corporation</u>
    (a)    Any of the following officers, to wit: the President and the Treasurer shall be, and they hereby are, authorized and empowered to transfer, convert, endorse, sell, assign, set over and deliver any and all shares of stock, bonds, debentures, notes, subscription warrants, stock purchase warrants, evidence of indebtedness, or other securities now or hereafter standing in the name of or owned by the corporation, and to make, execute and deliver, under the seal of the corporation, any and all written instruments of assignment and transfer necessary or proper to effectuate the authority hereby conferred.

        (b)    Whenever there shall be annexed to any instrument of assignment and transfer executed pursuant to and in accordance with the foregoing paragraph (a), a certificate of the Secretary of the corporation in office at the date of such certificate setting forth the provisions of this Section 6.2 and stating that they are in full force and effect and setting forth the names of persons who are then officers of the corporation, then all persons to whom such instrument and annexed certificate shall thereafter come, shall be entitled, without further inquiry or investigation and regardless of the date of such certificate, to assume and to act in reliance upon the assumption that the shares of stock or other securities named in such instrument were theretofore duly and properly transferred, endorsed, sold, assigned, set over and delivered by the corporation, and that with respect to such securities the authority of these provisions of the by-laws and of such officers is still in full force and effect.

10

**LYN00013**

# ARTICLE VII

## MISCELLANEOUS

7.1    Signatories:    All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

7.2    Seal:    The seal of the corporation shall be in such form and shall have such content as the Board of Directors shall from time to time determine.

7.3    Notice and Waiver of Notice: Whenever any notice of the time, place or purpose of any meeting of the stockholders, directors or a committee is required to be given under the law of the State of Delaware, the Certificate of Incorporation or these by-laws, a waiver thereof in writing, signed by the person or persons entitled to such notice, or a waiver by electronic transmission by the person entitled to notice whether before or after the holding thereof, or actual attendance at the meeting in person or, in the case of any stockholder, by his attorney-in-fact, shall be deemed equivalent to the giving of such notice to such persons.

7.4    Indemnity:    The corporation shall indemnify its directors, officers and employees to the fullest extent allowed by law, provided, however, that it shall be within the discretion of the Board of Directors whether to advance any funds in advance of disposition of any action, suit or proceeding, and provided further that nothing in this section 7.4 shall be deemed to obviate the necessity of the Board of Directors to make any determination that indemnification of the director, officer or employee is proper under the circumstances because he has met the applicable standard of conduct set forth in subsections (a) and (b) of Section 145 of the Delaware General Corporation Law.

7.5    Fiscal Year:    Except as from time to time otherwise determined by the Board of Directors, the fiscal year of the corporation shall end on _December 31_.

**LYN00014**

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


DANIEL ANTHONY LYNCH,                    )
                                         )
                Plaintiff,               )
                                         )   Civil Action
        vs.                              )   No. 06-365 JJF
                                         )
COINMASTER USA, INC.,                    )
a Delaware corporation,                  )
                                         )
                Defendant/Counterclaim   )
                Plaintiff                )
                                         )
PAUL A. COX,                             )
                                         )
                Defendant/Counterclaim   )
                Plaintiff and Third-     )
                Party Plaintiff          )
                                         )
        vs.                              )

AUTO GAMING, INC.,

                Third-Party Defendant


            Deposition of PAUL A. COX taken pursuant to
notice at the law offices of Seitz, Van Ogtrop & Green,
P.A., 222 Delaware Avenue, Suite 1500, Wilmington, Delaware,
beginning at 9:07 a.m., on Tuesday, November 27, 2007,
before Allen S. Blank, Registered Merit Reporter and Notary
Public.




                    WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801

                    (302) 655-0477

                    www.wilfet.com




**WILCOX & FETZER LTD.**
Registered Professional Reporters



PAUL A. COX

172

1   board?

2       A    And the glass design for the game.

3       Q    What's the glass design?

4       A    The game is presented to the punter.  The layout of

5   the computer screen, if you like, that is driven by the

6   board.  The thing that the person plays and sees.

7       Q    Did ML Solutions create that design?

8       A    ML solutions controlled -- I think it was created by

9   a, what do you call it, a graphics designer working for ML

10  Solutions, yes.

11      Q    Did High View make any payments to ML Solutions

12  under this contract that we discussed earlier?

13      A    Yes.

14      Q    Were there outstanding invoices from ML Solutions

15  that High View failed to pay?

16      A    No.  Not at that time.

17      Q    At what time are you referring to?

18      A    Early July 2004.

19      Q    At a point in time after that, were there

20  outstanding invoices that High View failed to pay ML

21  Solutions?

22      A    I'm not sure I would know that.

23      Q    Who would know that, according to Mr. Lynch?

24      A    Yes.



## CERTIFICATE OF SERVICE

I, Thomas P. Preston, hereby certify that on the 15th day of February, 2008, a copy of

**ANSWERING BRIEF OF DEFENDANTS COINMASTER USA, INC. AND PAUL A. COX IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF DANIEL ANTHONY LYNCH AND THIRD-PARTY DEFENDANT AUTO GAMING, INC.** was served on the following counsel of record:

### BY ELECTRONIC SERVICE

James S. Green, Esquire
Kevin A. Guerke, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

Erin K. Brignola, Esquire
Cooper Levenson April Niedelman &
  Niedelman & Wagenheim, P.A.
30 Fox Hunt Drive
Bear, DE 19701

Thomas P. Preston
I.D. No. 2548

125762.00601/40173449v.1