## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DANIEL ANTHONY LYNCH,    )
              )  C.A. No. 06-365 JJF
   Plaintiff,       )
              )
     v.        )
              )
COINMASTER USA, INC.,     )
a Delaware corporation,      )
              )
   Defendant/Counterclaim Plaintiff, )
              )
PAUL A. COX,        )
              )
   Defendant/Counterclaim Plaintiff and )
   Third-Party Plaintiff,    )
              )
     v.        )
              )
AUTOGAMING, INC.,      )
              )
   Third-Party Defendant.   )

### REPLY BRIEF IN SUPPORT OF
### PLAINTIFF DANIEL ANTHONY LYNCH AND THIRD-PARTY DEFENDANT
### AUTOGAMING, INC.'S MOTION FOR SUMMARY JUDGMENT

JAMES S. GREEN, ESQ. (DE0481)
KEVIN A. GUERKE, ESQ. (DE4096)
SEITZ, VAN OGTROP & GREEN, P.A
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE 19899
(302) 888-0600
  Attorneys for
  Plaintiff Daniel Anthony Lynch and
  Third-Party Defendant Autogaming, Inc.

Dated: February 22, 2008

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF CITATIONS ............................................................................................... ii

  I.     ARGUMENT.......................................................................................................... 1

      A.   INTRODUCTION. .................................................................................... 1

      B.   CMUSA's BREACH OF CONTRACT DEFENSE IS MERITLESS. ........................... 1

      C.   CMUSA AND COX HAVE NO CLAIM AGAINST LYNCH
           AND AUTOGAMING. ............................................................................... 6

  II.    CONCLUSION...................................................................................................... 8

# **TABLE OF CITATIONS**

Solomon v. Armstrong, 747 A.2d 1098 (Del. Ch. 1999) ............................................1, 2

## I. **ARGUMENT.**

### A. **INTRODUCTION.**

CMUSA and Cox have made numerous superficial and, ultimately, incorrect arguments to support their Motion for Summary Judgment and to defend Lynch's. After being confronted with the facts and the law, they have been reduced to mere rhetoric and to misstating the record. However, when the testimony and documents are analyzed, their arguments collapse. CMUSA and Cox's claims should be denied and Lynch should be granted summary judgment.

### B. **CMUSA'S BREACH OF CONTRACT DEFENSE IS MERITLESS.**

CMUSA has no defense to Lynch's breach of contract claim. CMUSA's Answering Brief proves that fact. The basis for Lynch's Motion for Summary Judgment is that CMUSA owes Lynch $600,000 for breach of contract by changing his position when it failed to re-elect him to CMUSA's Board of Directors in 2004. CMUSA fails to even attempt to address that issue. Instead it makes untenable arguments about a separate contract with a separate company in another country.

Clinging to its one desperate argument, CMUSA has nowhere to turn. If the Service Agreement was not void in its entirety the day it was signed, Lynch wins. That is the bottom line. To support its void argument, CMUSA offers nothing more than an irrelevant Latin phrase and an inapplicable case.

The Solomon case does not help CMUSA. Its use only emphasizes CMUSA's desperation. CMUSA asserts that the Solomon case held "that *ultra vires* acts are void, which would include acts forbidden by the PLC Agreement." (CMUSA Reply Brief p. 4) There is no such holding in that case.

1

Solomon is inapplicable.  It involves acts unauthorized by a corporate charter and repugnant to Delaware public policy.  Solomon v. Armstrong, 747 A.2d 1098, 1114 (Del. Ch. 1999).  Those issues have nothing to do with this case.  Solomon involves a specific body of Delaware law and sections of the Delaware General Corporations Law not at issue here.[1] Importantly, Solomon does not stand for the proposition that a purported conflict with a third-party contract is an absolute defense to a breach of contract claim, and the terms of a third-party contract are not included in either void or *ultra vires* acts.

If authority existed to support CMUSA's position, it would have cited it.  Tellingly, it failed to do so.  CMUSA's failure to cite any relevant law illustrates that CMUSA's imaginative argument is wrong and unsupportable.  Without legal support, CMUSA must misstate the facts in its vain attempt to avoid summary judgment.

CMUSA inaccurately argues that it did not have the PLC Contract when it determined the Service Agreement was valid and enforceable: "Therefore, CMUSA never had the basis for knowing that the agreement between Lynch and CMUSA was void until well after the fact." (Defendants' Answering Brief ("AB") p.5)  This is simply not true.  CMUSA obviously failed to consider Cox's sworn deposition testimony and pertinent documents when formulating its arguments.  However, that does not shield CMUSA from the facts.

On August 21, 2003, the Receiver sent Cox a letter arguing that the Service Agreement was void because it conflicted with the PLC Contract.  (B217, 218, 520)  This is the same argument CMUSA has adopted as its defense to Lynch's contract claim.  The Receiver attached a copy of the PLC Contract to that letter, which Cox confirmed at his deposition.

---

[1] It may be true that void acts include *ultra vires* acts. Id. at 1114. However, void "acts are those acts that the board, or more generally the corporation, has no implicit authority to undertake or those acts that are fundamentally contrary to public policy." Id. There is no authority for the argument that an individual's conflicting contract obligations are *ultra vires* acts.

2

Q:    As of August 21st 2003, you had a copy of Mr. Lynch's UK contract?

A:    Yes.

(B521)

Cox also confirmed that he examined the issues the Receiver raised with CMUSA's attorneys. (B522)

Q:    So, at this point, August 22nd, 2003, you are considering the issues that the receiver raised and you are endeavoring to go look into the issues more thoroughly?

A:    Exactly.

(B523)

In that effort, on August 25, 2003, Cox provided CMUSA's attorneys with the Receiver's letter and the PLC Contract to discuss the Receiver's arguments (now CMUSA's arguments) and the validity of Lynch's Service Agreement. In an e-mail to attorney Robert Salad, Cox stated:

Hi Rob.

Thanks for the Review of the Bank of Scotland documents.

The Receiver has now moved in another direction! He is trying to get me to accept that Tony's US contract is invalid. I will send you the documentation relating to this by FedEx tomorrow. (I will not be in the office to retrieve these faxed papers until tomorrow.) I will also send you my initial response to the Receiver concerning this. (Why he is doing this is open to a number of interpretations.)

When you have had time to review the documents I will call you, with a view to discussing the Bank of Scotland work, the issue of Tony's contract, and the other remaining issues that I need to be clear about. This will probably be on Thursday of this week if that's OK for you?

Regards,

Paul

3

(B452)

After the above-mentioned discussion took place, on Thursday, August 28th, CMUSA

had considered the PLC Contract, the Receiver's arguments, and obtained professional legal

advice. At his deposition, Cox testified:

> Q.    So as of August 28, 2003, you did seek and obtain legal
> advice on the issues raised in the receiver's August 21st, 2003
> letter?
>
> A.    Yes.
>
> Q.    And you are telling Mr. Lynch that your attorneys are
> adamant that the contract is perfectly in order?
>
> A.    Yes.
>
> Q.    So at this point, Mr. Lynch has no reason to take any other
> action because he believes or you have told him that his contract is
> solid?
>
> A.    That is the advice we received from our attorneys, yes.
>
> ***
>
> Q.    At this point, you and your attorneys had copies of both the
> USA contract and also the UK contract?
>
> A.    Yes.
>
> Q.    So it is fair to say that you and your attorneys had all the
> information that was necessary at that point to take a position on
> Mr. Lynch's contract?
>
> A.    We probably had all the information. I'm not sure we used
> it.

(B524-526)

In its response to the Receiver's August 21st letter, CMUSA represents to the Receiver

that its "attorneys are adamant and unanimous that Tony's U.S. Contract is intact and that your

arguments have no merit in a U.S. Delaware setting." (B527)

4

> Q.    So, in a nutshell, the receiver's position was Tony's contract is invalid and Coinmaster USA's official position was, it's valid?
>
> A.    Yes.

(B152)

CMUSA, therefore, declared that the Service Agreement was valid with full knowledge of the facts and the content of the PLC Contract. Considering the record, CMUSA's argument that it "never had the basis for knowing that the agreement between Lynch and CMUSA was void until well after the fact" is nonsense. Its inability to read and cite the clear record is unexplainable.

Having failed in its quest to invalidate the Service Agreement, CMUSA now challenges Lynch's election to CMUSA's Board in November 2002. (AB p.4)[2] The CMUSA 2002 AGM was held November 8, 2002, at which Lynch was elected to the Board of Directors. (B320) Cox was elected to the Board on the same day and in the same way.[3] According to the By-Laws, Directors "hold office until the next annual meeting of stockholders and until his successor is elected and qualified." (B312) The next AGM was the 2003 AGM, which was held in October 2004. (B449) At this AGM, CMUSA terminated Lynch, triggering the payment of his termination fee. There was simply no violation of the By-Laws that would affect Lynch's claim.

At bottom, CMUSA's position is meritless and Lynch's Motion for Summary Judgment should be granted on his breach of contract claim.

---

[2] Following CMUSA's argument, it had no Directors for most of 2004.
[3] It should be noted that Cox's agreement with CMUSA was approved and executed in the same manner as the Service Agreement. (B188, 320) He was elected and re-elected to the CMUSA Board in the same way as well. Furthermore, Cox's agreement was deemed to be valid and was amended as part of the Master Settlement Agreement among Cox, CMUSA, PLC, and the Receiver in June 2004. (B346, 373)

### C.    CMUSA AND COX HAVE NO CLAIM AGAINST LYNCH AND AUTOGAMING.

Having utterly failed to produce any facts to support their claims against Autogaming and Lynch, individually, Cox and CMUSA are now attempting to change their claims. More than three years after the fact, Cox is calling into question ML Solutions' effort to get fair market price in the Autogaming transaction in a transparent attempt to salvage his claims. (AB p.7) Cox also makes the ridiculous charge that High View was not given an opportunity to "bid" on the assets prior to their being sold. How and why would High View "bid" on its own property?

Mike Lerwill, from ML Solutions, testified that the hardware and software Autogaming purchased was worth what was paid. (B487) There was simply no market for an incomplete part of an unfinished multi-player roulette game. Only someone who wanted to put in the additional time, effort, and capital into continuing the development of a multi-player game would want ML Solutions' work. (B487) High View did not even want it, and Cox made no effort to retrieve it. High View abandoned whatever property rights it had years ago.

In addition to changing his claim, and contrary to the facts, Cox asserts that he never received the invoices at issue. Again, his assertion is not accurate. On August 23, 2004, Lynch forwarded the invoices to Cox. (B547, 558-560) Also included in that e-mail was an estimated balance of research and development costs for the game ML Solutions was working on, which included a line item for the $14,687.03 outstanding invoices. (B553) Yet, again, in his Answering Brief, Cox misstates the facts stating "Paul Cox was never informed of any such invoices, and believed that all invoices between ML Solutions and High View had been paid." (AB p.7)

Furthermore, Cox drafted the initial contract to be used with ML Solutions. (B532) Cox also drafted the October 2003 contract with ML Solutions that replaced the June 2003 Heads of

6

Agreement. (B535-537) He negotiated the terms and the timing of its execution. (B533-534, 541) Cox communicated with ML Solutions and had total access to Mike Lerwill, its owner. (B543-545) Any assertion to the contrary is wrong.

In June and July 2004, Cox stopped investing in High View and withdrew any support for the business. (B529-530) At his deposition, Cox explained why High View fell apart. "I stopped input to the corporation at the point in time where Tony refused to sign the Settlement Agreement with the Receiver, and, thus, consummate the Coinmaster USA deal as a means of putting pressure on him to get back in line." (B529)

Cox never contributed money to the business again. (B530) Nor did he participate in the business again. (B530) High View did not complete the game and failed to pay ML Solutions because the two shareholders ceased to talk to each other. (B531) As a result, High View had no money to pay the invoices. It was only then that Augotaming purchased the non-exclusive right to use the software and the abandoned boards. (B499, 500) Nothing prevented High View from continuing the original development or from retrieving its property.

There are no facts to support CMUSA and Cox's claims and summary judgment should be granted dismissing their Counterclaims and Third-Party complaint.

## II.   CONCLUSION.

For all of the reasons stated above, Lynch is entitled to summary judgment on his breach of contract claim and summary judgment should be granted in favor of Lynch and Autogaming on the Counterclaims and Third-Party Complaints asserted against them.

SEITZ, VAN OGTROP & GREEN, P.A

/S/ Kevin A. Guerke
JAMES S. GREEN, ESQ. (DE0481)
KEVIN A. GUERKE, ESQ. (DE4096)
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
  Plaintiff Daniel Anthony Lynch and
  Third-Party Defendant Autogaming, Inc.

Dated:  February 22, 2008

8

## CERTIFICATE OF SERVICE

I, Kevin A. Guerke, Esquire, hereby certify that on the 22nd day of February,

2008, the foregoing was electronically served upon:

Thomas P. Preston, Esq.
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 Market Street
Wilmington, DE  19801-4226

/s/ *Kevin A. Guerke*

Kevin A. Guerke (DE4096)
kguerke@svglaw.com