## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DANIEL ANTHONY LYNCH, | ) | |
| | ) | C.A. No. 06-365 JJF |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COINMASTER USA, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff, | ) | |
| | ) | |
| PAUL A. COX, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTOGAMING, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## APPENDIX TO PLAINTIFF AND THIRD-PARTY DEFENDANT'S
## REPLY BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

JAMES S. GREEN (DE 0481)
KEVIN A. GUERKE (DE 4096)
SEITZ, VAN OGTROP & GREEN, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE  19899
(302) 888-0600
Attorneys for
    Plaintiff Daniel Anthony Lynch and
    Third-Party Defendant Autogaming, Inc.

DATED: February 22, 2008

## TABLE OF CONTENTS

Deposition Transcript of Paul A. Cox.................................................................................B520-531

E-mail Correspondence with Attachments ..........................................................................B532-560

PAUL A. COX                    99

1    Q    From day one, that was his position, as far as you

2    know?

3    A    From day one, that was his position.

4    Q    Did the receiver -- I'm referring to either one of

5    the receivers -- know of the side letter that you had with

6    Mr. Lynch?

7    A    The side letter in June of '04, July of 2003 or June

8    of 2004?

9    Q    I'm talking about the side letter where Tony would

10   re-enter the company down the road.

11   A    And can you repeat your question, please?

12   Q    Were either of the receivers aware of that side

13   letter?

14   A    Yes.

15   Q    When did they become aware?  Do you know?

16   A    When I told them.

17   Q    Do you recall when you told them?

18   A    No.

19            MR. GUERKE:  Would you mark that, please?

20            (Cox Deposition Exhibit No. 25 was marked for

21   identification.)

22   BY MR. GUERKE:

23   Q    I have put before you a document from Ernst & Young.

24   It's a letter dated August 21st, 2003, that has been marked

PAUL A. COX                100

1    as Exhibit 25.  And it is signed by a J. Wolstenholme, is

2    that correct?

3        A    Yes.

4        Q    This letter is directed to you, right?

5        A    It is directed to me at Coinmaster USA.  So I

6    presume it is directed to me as president or CEO or

7    whatever.

8        Q    It states, as you know, a number of concerns have

9    been raised about the validity of Tony Lynch's U.S. service

10   contract and employment with the company.  The company being

11   Coinmaster USA.

12            If you bump down a couple of sentences, it

13   says, I enclose copies of both the U.S. and UK contracts,

14   Schedules 1 and 2.

15            As of August 21st, 2003, you had a copy of

16   Mr. Lynch's UK contract?

17       A    Yes.

18       Q    Was this the first time that you received a copy of

19   that contract?

20       A    So far as I know, yes.

21       Q    If it is Mr. Lynch's position that he sent it to you

22   several months before that, do you believe he is incorrect?

23       A    Yes.

24       Q    In the third paragraph, this letter states, there

1    provide this document to your attorneys?

2        A    I think I did.

3        Q    The next exhibit, 26, is an e-mail from you to the

4    receiver, is that correct?

5        A    Yes.

6        Q    And this is your response to the August 21, 2003 fax

7    that we just reviewed, is that right?

8        A    Let me read it.  Sorry.

9              Yes.

10       Q    And the first sentence, paragraph number one, we are

11   still awaiting appropriate legal advice concerning the

12   issues you have raised.

13             That is your response to the issues raised in

14   the letter dated August 21st, 2003, that we just went over,

15   right?

16       A    I'm not sure that's true.  It may have been

17   referring to -- remember we looked at something which was to

18   do with giving management a deal in the event that we

19   cooperated with the sale.  I have a funny feeling that that

20   particular paragraph might be referring to that.

21       Q    Go down to the very end, the last two sentences.

22             It says, it is unlikely I will have any

23   feedback about the issues you have raised concerning Tony's

24   contract until at least this time next week.  I checked my

PAUL A. COX                106

1    files.  The original advice I received on this subject was

2    verbal in response to a clear brief I had prepared.

3            Is this part of your e-mail in response to that

4    August 21, 2003 --

5    A    I think that is the paragraph that does refer to

6    that.

7    Q    So at this point, August 22nd, 2003, you are

8    considering the issues that the receiver raised and you are

9    endeavoring to go look into the issues more thoroughly?

10   A    Exactly.

11   Q    What is the clear brief I had prepared?  What does

12   that mean?

13   A    It's the document I originally prepared sometime

14   before to get a view on Tony's contract from our attorneys.

15   Q    That's a document between you and your attorneys?

16   A    Yes.

17   Q    Not the document that you put in the information

18   packet?  Oh, the information packet hadn't been sent?

19   A    No.

20           MR. PRESTON:  For the record, I'm going to

21   depart now.  I have to make this lunch.  You keep going and

22   I'll come back.  If you for some reason finish up, give me a

23   call and let me know when to come back.

24           MR. SCHERZER:  I don't think that's going to

1    happen.

2                    MR. PRESTON:  I don't either.

3                    MR. GUERKE:  Why don't we bank on breaking in

4    about 15 minutes?

5                    MR. SCHERZER:  Yeah.

6                    MR. GUERKE:  I think so.

7                    (Discussion held off the record.)

8                    (Cox Deposition Exhibit No. 27 was marked for

9    identification.)

10   BY MR. GUERKE:

11       Q    This is an e-mail from you to Mr. Lynch dated

12   August 28, 2003, is that right?

13       A    Yes.

14       Q    The paragraph, after it says, hi, Tony.  Too late in

15   your day to call you but I thought that you'd want to know.

16                    Number one.  Our attorneys are adamant that

17   your contract is perfectly in order and unaffected by the

18   arguments raised by the UK receiver.  They are perfectly

19   prepared to defend this position in court, if necessary.

20   They don't think the receiver will pursue this.  Although

21   this legally they agree we could institute another contract.

22   They feel the one you have is so sound that they wouldn't

23   want the specter of another one behind it.

24                    So as of August 28, 2003, you did seek and

PAUL A. COX                    108

1    obtain legal advice on the issues raised in the receiver's

2    August 21st, 2003 letter?

3        A    Yes.

4        Q    And you are telling Mr. Lynch that your attorneys

5    are adamant that the contract is perfectly in order?

6        A    Yes.

7        Q    So at this point, Mr. Lynch has no reason to take

8    any other action because he believes or you have told him

9    that his contract is solid?

10       A    That is the advice we received from our attorneys,

11   yes.

12       Q    Did you discuss with Tony, Mr. Lynch, the

13   possibility of signing him up to a new contract?

14       A    You have to -- I think you go back to an e-mail,

15   which I don't know whether you have already raised.  The one

16   somewhere around the 3rd or 5th of March where he said we

17   would have to do a new contract with a different date.  It

18   stuck in my mind from that day.  And so I just raised it

19   with our attorneys, is it better to go and raise another

20   contract.  It is only expenses anyway.

21       Q    Were Cooper Levenson your only attorneys at this

22   point?

23       A    Cooper Levenson were the attorneys for Coinmaster

24   USA, yes.

PAUL A. COX                    109

1    Q    Are those the attorneys that rendered this advice?

2    A    Yes.

3    Q    At this point, you and your attorneys had copies of

4    both the USA contract and also the UK contract?

5    A    Yes.

6    Q    And you also had a copy of the arguments put forward

7    by the receiver on the 21st of August?

8    A    Yes.

9    Q    So is it fair to say that you and your attorneys had

10   all the information that was necessary at that point to take

11   a position on Mr. Lynch's contract?

12   A    We probably had all the information.  I'm not sure

13   we used it.

14        MR. GUERKE:  Will you mark that, please, this

15   one, please?

16        (Cox Deposition Exhibit No. 28 was marked for

17   identification.)

18   BY MR. GUERKE:

19   Q    If you go to the second page.

20        First of all, the cover of this Exhibit 28 is

21   an e-mail from the receiver to you cc:  Kay Over dated

22   August 29th, 2003, is that right?

23   A    Yes.

24   Q    This is a day after you informed Tony, Mr. Lynch,

PAUL A. COX          110

1    that his contract was perfectly in order?

2        A    That that was the legal advice I had been given.

3        Q    And if you flip over the page.  The receiver's

4    e-mail is in response to an e-mail that you sent on

5    August 28, 2003, is that right?

6        A    Yes.

7        Q    And if you go down the e-mail, flip the page, to

8    paragraph number two.  Do you see that?

9        A    Yes.

10       Q    It states, my attorneys are adamant and unanimous

11   that Tony's U.S. contract is intact and that your arguments

12   have no merit in a U.S. Delaware setting.  I, therefore,

13   intend to record this as the position in the packet I sent

14   out.  I will, however, note your dissenting position and

15   will include your letter on this subject with the package

16   providing you have no objections to this.  But I will not

17   include Tony's U.S. contract.

18              MR. SCHERZER:  UK contract.

19              MR. GUERKE:  UK contract.

20   BY MR. GUERKE:

21       Q    From a practical point of view, Tony remains a

22   member of the U.S. board and will be paid as per his

23   contract.

24              Did I read that accurately?

PAUL A. COX                    140

1    to Mr. Best, is that right?

2        A    Yes.

3        Q    Your e-mail at the bottom is dated August 25th,

4    2004, is that correct?

5        A    Yes.

6        Q    And if you read the first two sentences of your

7    e-mail, it says, rereading Tony's recent e-mails, I feel he

8    is blaming me for his current predicament.  That is, he has

9    come to believe that I'm the one who wanted him out of the

10   business, not the Bank of Scotland.

11              Is that in reference to the quote, unquote,

12   misunderstanding that you and I just discussed?

13       A    I believe so.

14       Q    If you flip to the next page, you state, after that

15   colon, the first colon.  He must begin to understand that

16   there is no way the Bank of Scotland will accept him as a

17   director of the business or for him to have a presence in

18   the business in any other way whilst they are involved.

19              Is that an accurate reading of your e-mail?

20       A    Yes.

21       Q    At the top of the front page, Mr. Best references a

22   response that he sent to Tony.  And I have a copy of that

23   response.

24              MR. GUERKE:  Would you mark that, please?

1      A    A number of reasons.  One, we could not agree on the

2    final budget and allocation of budget between individuals

3    and outsiders of the corporation.  Point one.

4             Point two, Tony decided to take the development

5    in the direction not agreed by myself and not agreed by the

6    people in Coinmaster USA, who were interested in it.

7    Primarily myself and Brad.  He decided to take it in a

8    completely different direction.  We weren't happy with it.

9             Thirdly, I stopped input to the corporation at

10   the point in time where Tony refused to sign the settlement

11   agreement with the receiver and, thus, consummate the

12   Coinmaster USA deal as a means of putting pressure on him to

13   get back in line.

14            Fourthly, I don't think Tony had any interest

15   in continuing the joint development because I think he

16   decided to go it alone and do his own thing with that

17   software.  That's my view.

18     Q    When did you stop contributing financially to High

19   View?

20     A    I'd have to consult the financial records.  But it

21   was sometime around June, July, 2004.  I don't remember the

22   exact day.

23     Q    When did you withdraw your general support for the

24   venture?

PAUL A. COX                    164

1       A    We have already covered that.

2       Q    Tell me when it was?

3       A    You would have to go back to my previous answer.

4    Because you showed me a document, an e-mail, that said I had

5    stopped.  It was that date.

6                (Mr. Preston entered the deposition room.)

7       Q    That e-mail is July or June of 2004?

8       A    Yeah.

9       Q    And if that's the right date, that was when you

10   essentially washed your hands of High View?

11      A    I didn't wash my hands, though.  I simply put it on

12   hold as a means of putting pressure on Tony to get back in

13   line with the settlement agreement, the terms agreement.

14      Q    After that, did you ever begin to contribute again?

15      A    No.

16      Q    Did you ever participate in the business again?

17      A    No.

18      Q    Is this document that I have before you, Exhibit 37,

19   this outlines the services that High View has contracted

20   with ML Solutions, Ltd.; is that accurate?

21      A    Yes.

22      Q    And it's signed by Mr. Lynch on September 26, 2003,

23   and by Mr. Lerwill on October 29, 2003?

24      A    Yes.

PAUL A. COX                    175

1    hardware to that point was developed by Mr. Lynch in order

2    to run Auto Gaming?

3    Q    I'm asking you, do you know whether what High View

4    paid for is out there somewhere waiting for High View to

5    claim it?

6    A    I believe it not to be.

7    Q    Why didn't High View complete the asset and the

8    total game?

9    A    Because the two partners ceased to talk to each

10   other.  I shouldn't have said partners, I should have said

11   stockholders.

12   Q    High View was capable of completing that project on

13   its own without Mr. Lynch involved, is that right?

14   A    What are you talking about in terms of the project?

15   The software?  The hardware?  The whole game?

16   Q    All of it.  Whatever High View hired ML Solutions to

17   do.

18   A    I'm sorry.  Could you repeat your question?

19   Q    What stopped High View from completing the project

20   that it had hired ML Solutions to perform or build?

21   A    The fact that the two directors, stockholders,

22   stopped talking to each other.

23            MR. GUERKE:  Would you mark that, please?

24            (Cox Deposition Exhibit No. 50 was marked for

**From:** 'Paul A. Cox' <PaulCoxFlorida@MindSpring.com>
**To:** Free Tony<T.Lynch17@ntlworld.com>
**Sent:** Tuesday, May 13, 2003 5:04 AM
**`ttachments:** ML Solutions Ltd Contract May 2003.dot
**.bject:** Mike Lerwill contract

Hi Tony.

Attached is my 1st Draft attempt at a Mike Lerwill /
Coinmaster USA Inc.
contract. Feel free to alter or add to it as you choose,
and send it back to
me for a final Draft.

I've re-iterated with Mike that we can't enter into this
contract until we
have a final agreement with the Receiver, giving us
control of Coinmaster
USA Inc. (I know you already told him this.)

Regards,

Paul
Coinmaster USA Inc.
paulcoxflorida@mindspring.com

B532

**tony**

| | |
|---|---|
| **From:** | "daniel anthony lynch" <t.lynch17@ntlworld.com> |
| **To:** | "Paul A. Cox" <PaulCoxFlorida@MindSpring.com> |
| **Sent:** | 11 June 2003 12:11 |
| **Subject:** | Re: contract arrangements |

i Paul,
    the main contract can contain all the points raised as I have already discussed all of them with ML. I will shorten time to Ɪꞧee weeks as I think it will take this long to finalize. I will send you a copy of ML reply to my email.

egards Tony

----- Original Message -----
**From:** Paul A. Cox
**To:** daniel anthony lynch
**Sent:** Wednesday, June 11, 2003 12:58 PM
**Subject:** Re: contract arrangements

Hi Tony.

I suggest,

1. You incorporate the need to support the software required for Coinmaster USA Inc. so long as we choose for that to be done
(This gives us the opportunity to split the fee. USA Inc does need support and is clearly not going to get it from Capital. Hence a monthly retainer to Mike.)

2. You shorten the time to reach a contract to four weeks, or even two! (Why do we need ten. Someone else is bound to realize the key status of this situation before then.)

3. The contract must have a break clause if we get eliminated from the industry in the next six months. (The Receiver or some buyer he finds, may make a pay off from USA Inc. dependent on a non compete clause. If we agree to that, we will have to stick to it.) An alternative to this would be to make the contract assignable on our side to another party. This would be equally effective and would give us a real value for the effort in these unpredictable circumstances!

Regards,

Paul

tony

**From:** "daniel anthony lynch" <t.lynch17@ntlworld.com>
**To:** "Paul A. Cox" <PaulCoxFlorida@MindSpring.com>
**Sent:** 11 June 2003 12:12
**Subject:** Fw: contract arrangements

opy of ML reply to HOA.


--- Original Message -----
**rom:** Mike Lerwill
**o:** daniel anthony lynch
**ent:** Wednesday, June 11, 2003 12:55 PM
**ubject:** RE: contract arrangements

ony,

Vhile we have agreement in principle there are a number of problems. ML solutions currently has a number of ongoing
rrangements with other companies (including CAPITAL GAMING) that your document would preclude. I am not willing to enter
to a completely exclusive arrangement with you and Paul however I would be perfectly happy with a contract that stipulates that
would be unable to work on PC based gaming products for USA marketplaces (or World wide if you prefer) and more than happy
o satisfy any confidentiality requirements you may have.

et me stress that I do not discuss any of the conversations we have had with CAPITAL and likewise I have not discussed the
ature of my dealings with CAPITAL with you except where they are directly related to the COINMASTER roulette.

hope that this is not going to be a major stumbling block to this project as I am keen to take it on.

egards

like Lerwill


-----Original Message-----
**From:** daniel anthony lynch [mailto:t.lynch17@ntlworld.com]
**Sent:** 11 June 2003 10:06
**To:** Mike Lerwill
**Subject:** contract arrangements

Hi Mike,
          I have produced a heads of agreement that is basic and the contents self explanatory. The main contract will  take a few
weeks to get to everyone's satisfaction.

If possible I would like to sign with you later today as at 6pm I am going to Spain for several days and PC and I will need to get
our finances together to fund your monthly cost commencing at the end of July. We will need to pay you in USA $ and you will
need to open a $ a/c. we can every six months adjust the previous payments up or down to resolve the exchange rate.

Can we meet at 4pm today.

Regards Tony.

B534

07/11/2007

tony

From:      "Paul A. Cox" <PaulCoxFlorida@MindSpring.com>
To:        "Free Tony" <T.Lynch17@ntlworld.com>
Sent:      25 August 2003 14:35
Attach:    ML Solutions Contract.doc
Subject:   ML Contract

Hi Tony,

Attached is a Contract for use with ML.
I have added a "5 Year extension" type clause.

I am proposing that $2.5K of the initial $5K per month comes from High View
Inc. (Because Coinmaster USA Inc. should pay half the total whilst it is
receiving services.)

This means that you and I each need to pay $1,250 per month into High View
Inc. (Plus any more that may be necessary to pay for other aspects of the
High View work.)

I paid $2,000 in to our account, at the time I opened it.

I suggest we talk about the funding of High View Inc. when we meet in Vegas.

Also, we still need a clear Budget!

Regards,
Paul
Coinmaster USA Inc.
paulcoxflorida@mindspring.com

B535
07/11/2007

# High View Inc.
## 1025 S. Semoran Blvd, Suite 1093, Winter Park, FL 32792

This Agreement shall take effect on          and shall be in effect for one year until, where after by written exchange between the parties, it can be renewed for up to five years, intact or as amended at that time.

Both parties agree that the content of this Agreement, and the work output resulting shall be confidential to the parties involved.

Sender-paid overnight courier must ship all notices of a legal nature issued by either party to the other as a result of or relating to this Agreement. They will be regarded as received, at the end of the third working day following release to courier.

This Agreement shall be interpreted under the laws of the State of Delaware, in the USA.

If any court finds any part of this Agreement to be invalid or illegal, it shall not invalidate the rest of the Agreement.

This is the entire Agreement between the parties.

For High View Inc.                         For ML Solutions Ltd




_____                    _____
Daniel A. Lynch, Chairman                  Mike Lerwill, Managing Director



Dated:                                     Dated:



_____                    _____

B536

# High View Inc.
## 1025 S. Semoran Blvd, Suite 1093, Winter Park, FL 32792

This is a contract between High View Inc., a Delaware Corporation, whose address is shown above, and ML Solutions Ltd, a British Company, whose address is 5 Cwrt Y Coed, Brackla, Bridgend, CF31 2ST, UK.

ML Solutions Ltd. agrees to provide the following services to High View Inc, and for any time period nominated by the management of High View Inc, entirely at their discretion, to Coinmaster USA Inc, a Delaware Corporation based at 3001 Aloma Avenue, Winter Park, FL 32792:

1. Technical support related to Coinmaster roulette and other machines and the on-line casino systems in use with these machines with Coinmaster USA Inc. technicians and management based in the USA, on demand, by telephone, fax and email as appropriate. This service shall normally be available during the five-day working week, up to 10 p.m. UK time, and no earlier than 9 a.m. UK time. ML Solutions Ltd. will keep a log of all such requests, showing the date and time made, who made by, the nature of the query, and how long it took to resolve. Coinmaster USA Inc. will provide a list of those authorized to use this service, and their contact points, from time to time.

2. On-line system modifications, and GLI or other test house approval support, as may be necessary from time to time. Any reasonable expenses necessitated by visits to test houses will be paid separately from this agreement on provision of an expense form and appropriate receipts for approval, at Coinmaster USA Inc.'s Headquarters. Such expenses will be paid in an agreed form, within fifteen workdays.

3. In the event that the above services leave unused time available, such time shall be spent on new product development work, as agreed with the management of High View Inc from time to time.

(It is anticipated that ML Solutions Ltd., will put up to 150 hours per month on average into this contract work.)

In return for this Agreement, ML Solutions agrees:

A. Not to work for another manufacturer or distributor on software development work for use in the US Gaming Industry marketplace, during the course of this Agreement, unless prior written authorization is given by the Board of High View Inc.

B. That all software developed for use by High View Inc. as a result of this Agreement shall become the property of High View Inc., and that High View Inc. shall have all intellectual property rights and any copyrights, as it chooses on this work, at any time. ML Solutions Ltd and its management specifically renounce all their potential rights in this respect, both corporately and individually.

15

**tony**

| | |
|---|---|
| **From:** | "tony lynch" <t.lynch17@ntlworld.com> |
| **To:** | "Paul A. Cox" <PaulCoxFlorida@MindSpring.com> |
| **Sent:** | 10 September 2003 13:15 |
| **Attach:** | ML Solutions Contract.doc |
| **Subject:** | ML contract final version |

Hi Paul,
        see attached ML final contract, provided you are happy I will email it to Mike for signing Friday night when I meet him to collect repaired VGA boards.

Incidentally the faulty VGA boards need to have the site engineers fault report, these boards had no comments and Mike has not been able to find any fault on some of the boards. With no indication of what is going on this makes it impossible to guarantee the board has been fixed for the reason it was sent back.

Regards  Tony

B538
07/11/2007

# High View Inc.
## 1025 S. Semoran Blvd, Suite 1093, Winter Park, FL 32792

This is a contract between High View Inc., a Delaware Corporation, whose address is shown above, and ML Solutions Ltd, a British Company, whose address is 5 Cwrt Y Coed, Brackla, Bridgend, CF31 2ST, UK.

ML Solutions Ltd. agrees to provide the following services to High View Inc, and for any time period nominated by the management of High View Inc, entirely at their discretion, to Coinmaster USA Inc, a Delaware Corporation based at 3001 Aloma Avenue, Winter Park, FL 32792:

1. Technical support related to Coinmaster roulette and other machines and the on-line casino systems in use with these machines with Coinmaster USA Inc. technicians and management based in the USA, on demand, by telephone, fax and email as appropriate. This service shall normally be available during the five-day working week, up to 10 p.m. UK time, and no earlier than 9 a.m. UK time. ML Solutions Ltd. will keep a log of all such requests, showing the date and time made, who made by, the nature of the query, and how long it took to resolve. Coinmaster USA Inc. will provide a list of those authorized to use this service, and their contact points, from time to time.

2. On-line system modifications, and GLI or other test house approval support, as may be necessary from time to time. Any reasonable expenses necessitated by visits to test houses will be paid separately from this agreement on provision of an expense form and appropriate receipts for approval, at Coinmaster USA Inc.'s Headquarters. Such expenses will be paid in an agreed form, within fifteen workdays.

2(a) Any changes to any software belonging to a third party must be done in a legal manner

3. In the event that the above services leave unused time available, such time shall be spent on new product development work, as agreed with the management of High View Inc from time to time.

(It is anticipated that ML Solutions Ltd., will put up to 150 hours per month on average into this contract work.)

In return for this Agreement, ML Solutions agrees:

A. Not to work for another manufacturer or distributor on software development work for use in the US Gaming Industry marketplace, during the course of this Agreement, unless prior written authorization is given by the Board of High View Inc.

B. That all software developed for use by High View Inc. as a result of this Agreement shall become the property of High View Inc., and that High View Inc. shall have all intellectual property rights and any copyrights, as it chooses on this work, at any time.

# High View Inc.
## 1025 S. Semoran Blvd, Suite 1093, Winter Park, FL 32792

ML Solutions Ltd and its management specifically renounce all their potential rights in this respect, both corporately and individually.

This Agreement shall take effect on June 1st 2003 and shall be in effect for one year until, where after by written exchange between the parties, it can be renewed for up to five years, intact or as amended at that time.

Both parties agree that the content of this Agreement, and the work output resulting shall be confidential to the parties involved.

Sender-paid overnight courier must ship all notices of a legal nature issued by either party to the other as a result of or relating to this Agreement. They will be regarded as received, at the end of the third working day following release to courier.

This Agreement shall be interpreted under the laws of the State of Delaware, in the USA.

If any court finds any part of this Agreement to be invalid or illegal, it shall not invalidate the rest of the Agreement.

This is the entire Agreement between the parties.

For High View Inc.                          For ML Solutions Ltd


_____                     _____
Daniel A. Lynch, Chairman                   Mike Lerwill, Managing Director


Dated: 9th September 2003                    Dated; 9th September 2003


_____                     _____

B540

tony

**From:**    "Paul A. Cox" <PaulCoxFlorida@MindSpring.com>
**To:**    "Free Tony" <T.Lynch17@ntlworld.com>
**Sent:**    11 September 2003 11:14
**Subject:**    Possible Futures

Hi Tony.

I didn't get to deal with my email yesterday, after I came back from Orlando. So couldn't respond to anything until now!

I believe that we should hold off on signing the ML contract until your return from Vegas. The key reasons being:

1. Capital yesterday, by email, put an item on next week's meeting Agenda suggesting we pay them a monthly retainer for on-line system problem rectification. I don't believe in co-incidences of this sort, and certainly don't intend to pay twice for the same service. We have not yet established that we can alter the software in the US using Mike, in the event that Capital does make the changes we asked for by next week. (I recognize that we have a very good damages case for the delay, but that's different.) If Mike isn't allowed to alter the software, then all the fees that High View pays him can only be for the development work, and Coinmaster USA will not be contributing! It would make a lot of sense for Coinmaster USA Inc. to pay Capital a retainer. (Even though we know that they would sub-contract that to Mike.) I recognize that we would never have expected him to do anything that wasn't entirely legal anyway, but the new Clause, inserted at this time, is now ringing alarm bells in my head! I'm convinced that Mike is making his good fortune with Keith. (He may not realize that he's doing it, and I don't think you should talk to him about this at all!) Why else would Capital have thought of a retainer. We may need to alter Mike's contract to take account of a pass-through of fees from Capital!

2. Capital yesterday informed me, by email, that they were being encouraged by the Receivers to make a bid for Coinmaster USA Inc. In fact they said that they are in the final stages of a bid! Since it seems unlikely that they were even thinking about this when Adrian flew off to South America last week, I believe the Receiver and Bank may have developed the idea. Clearly if Capital have had access to our Information Pack then that's another law suit waiting to happen.) Also clearly, if the Bank blessed such a move it could happen! (It's all their money!) I see the key purpose of such a move as being to prepare the whole (us and Capital) for sale to say Gaming and Entertainment Systems Inc. (Thus getting over a lot of the issues in our recent past.) The Capital management will not have been told of the likely end-game strategy! (The Bank undoubtedly has the right to sell their loan and stock in Capital, at any time.) They're trying to draw me into this with a promise of more stock, and they want both our Contracts waived! Incidentally, they don't see you as being in the happy family picture taken for the press release!) The proposal of putting the whole back together is in many ways a good one from the Bank's point of view. (I said so some months ago!) Clearly I'm not going to support such a situation in the manner outlined, and we're not going to waive our Contracts, but I sense the Receiver is getting to the stage where he is willing to negotiate with us again! (As you pointed out he's not been anxious to litigate with us or any other player during this process.) The impact of this on our relationship with Mike could be dramatic! How ironic if we're all in the same happy family again! There is no termination Clause in our proposed Contract with

like. We may all need one. We have to behave consistently with our fiduciary
ities to Coinmaster USA Inc. (I can see a strategy in which we could all
in. The Bank, the Receiver, Capital, us, G and E, and Mike! We need to talk
Vegas!) I have no intention of reacting at all to Capital's proposal
ntil next week's meeting with them in Vegas, or later. (Remember Adrian W.
aves E & Y next Friday and is not taking any responsibility for this
tuation with him.)

. We haven't yet talked to any potential "White Knights" or potential
artners" for High View Inc. (I'm going to try sending some emails today.)
/e haven't therefore solved the key problem that I raised last week, viz,
ow do we proceed if we have no control of, or no income from Coinmaster.
m clearly not in the school that says we jump off the cliff and then try
see if we have a parachute! We haven't yet agreed our budget, or how much
e are prepared to contribute. We have no finalized Plan we could show to
otential investors. We can't get any deeper into the action stage of this
tuation before we've done these things. We need our Vegas trip first.

/e've waited this long, what's another few days? (I'll call you later on
nis subject.)

.egards,

aul
!oinmaster USA Inc.
aulcoxflorida@mindspring.com

tony

---

**From:**    "Paulcoxflorida@mindspring.com" <paulcoxflorida@mindspring.com>
**To:**    "Brad Hutcheon" <coinmaster@cox.net>; "Tony" <T.Lynch17@ntlworld.com>
**Sent:**    27 October 2003 18:44
**Subject:**    Fw: Planned visit to GLI

o Hum, here we go again! I'll eat dirt to keep the peace!

egards, Paul.

--- Original Message -----
rom: Mike Lerwill
o: Paul A. Cox
ent: Monday, October 27, 2003 12:59 PM
ubject: Planned visit to GLI

aul,

appears that I may have put my foot in it! If so I apologise.

mentioned to Adrian that you had asked me to visit GLI to assist with any requirements with the approval process and he was a
ttle upset that you had not spoken with them first. I had not even considered that this had not been discussed with them.

he way the process works is that after any changes have been made to the program at GLI they have to be incorporated back
to the main source at Cardiff and re-submitted to GLI where they will compare the program as re-submitted with the version I
eave behind. This obviously requires the full co-operation of CAPITAL GAMING for any trip to be worth while.

t the end of the day it matters little to me who is instructing me to make the trip but it is important to have CAPITAL's backing if it
 to be successful.

egards

/like Lerwill

tony

| | |
|---|---|
| **From:** | "Paulcoxflorida@mindspring.com" <paulcoxflorida@mindspring.com> |
| **To:** | "Tony" <T.Lynch17@ntlworld.com> |
| **Sent:** | 27 October 2003 18:46 |
| **Subject:** | Fw: GLI testing |

i Tony. See below, and the various other contributions!
egards, Paul. CMUSA Inc.
--- Original Message -----
rom: Keith Ingram
o: Paul A. Cox
c: Adrian ; Brad Hutcheon ; John ; Mike Lerwill
ent: Friday, October 17, 2003 11:31 AM
ubject: GLI testing

aul,

am glad to hear that the ACRES software is now working satisfactorily.  Albeit by hearsay and assumption, by not
earing of any further faults directly.
rom my standpoint as a non software specialist they seem to have been particularly thorough in their testing. I hope
nis will be reflected in enhanced reliability on site.

am also heartened by the fact that the relationship between the two companies, after a prickly start, is now progressing
n sensible lines.

have though had a call from Mike Lerwill.
'ou have been in touch asking Mike to travel to GLI and " hold their hands" while the final testing is carried out.
'he reason Mike has called me is that while this may seem to be simple technical support what it will in fact mean is
/like taking a copy of the source code with him and making final tweaks on the spot.
Jow the nature of our agreement with Mike is that he will not touch the Capital software without our knowledge and
pproval.
/like therefore quite rightly contacted us for our consent before making any such arrangement.
am quite happy for Mike to visit GLI to assist in the final testing.
n order to avoid Mike being put into such potentially embarrassing situations can I ask that in future you make such
equests through us.
We will then all be aware exactly what is going on and Mike will not be placed in an awkward position unnecessarily.

t is interesting to note that with the exception of the disbursements associated with flights, hotels etc this is precisely
he type of cost that would be covered by the maintenance agreement, at no further cost to you.


3est Regards

Keith Ingram

Capital Gaming Ltd
321 Penarth Road
Cardiff
CF11 8TT

Tel   +44 (0) 29 20649500
Fax  +44 (0) 29 20649549
GSM +44 (0) 7711 028367
after hours email
keith.ingram@ntlworld.com

This e-mail and any files transmitted with it are confidential and are
intended solely for the use of the addressee. This communication

ony

| | |
|---|---|
| From: | "Paulcoxflorida@mindspring.com" <paulcoxflorida@mindspring.com> |
| To: | "Tony" <T.Lynch17@ntlworld.com> |
| Sent: | 27 October 2003 22:03 |
| Subject: | Fw: Acres Further Bug! |

See Below. P
-- Original Message -----
om: Paulcoxflorida@mindspring.com
: Mike Lerwill
ent: Monday, October 27, 2003 5:00 PM
ubject: Acres Further Bug!

Mike.

ease let us know, after you have consulted with Adrian, Keith etc., what our new Plan is! (About going to GLI!)

juess you guys will have to sort this new Acres Bug out and then send an updated version to GLI right?

egards,

aul
oinmaster USA Inc.

B545
07/11/2007

| | |
|---|---|
| **From:** | 'Paulcoxflorida@mindspring.com' <paulcoxflorida@mindspring.com> |
| **To:** | tony highview<tonyhighview@hvillas.e.telefonica.net> |
| **Sent:** | Tuesday, August 10, 2004 5:38 AM |
| **Subject:** | Re: Payments to Mike Lerwill via CMUSA |

Hi Tony.

The content of your email is nonsense. You can't go back and change things that have already happened.

Coinmaster USA Inc, has for the last year paid $2500 per month of Mike Lerwill's monthly costs. I have an e mail from you confirming these payments would have to be taken into account in any High View stock structure.

Coinmaster USA Inc has also paid Capital Gaming Ltd $6,000 per month for all services, including those of Mike Lerwill, to maintain the Coinmaster / Capital Gaming software.

Coinmaster USA Inc. has also paid any invoices rendered by Mike Lerwill for repairing PCB Boards.

Regards
Paul
Paul A. Cox
Coinmaster USA Inc.

B546

| | |
|---|---|
| **From:** | 'tony highview' <tonyhighview@hvillas.e.telefonica.net> |
| **To:** | Paul A. Cox<PaulCoxFlorida@MindSpring.com> |
| **Sent:** | Monday, August 23, 2004 4:26 AM |
| **Attachments:** | High View-Cox letter 23-8-04.doc;High View email list TL & PC.doc;invoices US JLY 2004.pdf;High View R&D balance of costings 23-8-04.doc |
| **Subject:** | High View shares and developmet cost |

Dear Paul,
Please find 4 attachments.


Regards  Tony.

Child

# HIGH VIEW INC.

C/o Calle Pablo Sarasate 75
Verdemar II
Urb. Villamartin
Orihuela Costa 03189
Costa Blanca
Spain.   011 34 966 774 360 phone/fax
Mobile   011 34 630 666 274
Email tonyhighview@hvillas.e.telefonica.net                    23rd August 2004.

**Email list**

TL 5th   May 2003 07:39
PC 5th   May 2003 12:15
PC 12th May 2003 13:30
PC 13th May 2003 14:04
PC 16th May 2003 15:14
PC 19th May 2003 13:53
PC 21st May 2003 13:39
TL 11th June 2003 09:55
PC 11th June 2003 12:58
TL 11th June 2003 13:11
TL 11th June 2003 13:12
PC 11th June 2003 18:33
PC 19th June 2003 15:46
TL 25th June 2003 09:03
PC 25th Aug 2003 15:35
TL 2nd   Sep 2003 13:01
TL 2nd   Sep 2003 13:35
TL 2nd   Sep 2003 15:00
TL 3rd   Sep 2003 07:45
PC 3rd   Sep 2003 15:49
TL 3rd   Sep 2003 17:08
TL 4th   Sep 2003 09:59
TL 5th   Sep 2003 09:58
TL 10th Sep 2003 14:15
PC 24th Sep 2003 11:55
TL 28th Sep 2003 10:34
PC 28th Sep 2003 10:34
PC 28th Sep 2003 12:06
TL 24th Oct 2003 17:42
PC 24th Oct 2003 11:22
TL 14th Nov 2003 06:32
TL 23rd Nov 2003 21:39
PC 3rd   Dec 2003 12:22
PC 7th   Jan 2003 20:23
PC 28th Dec 2003 13:09

1.

PC 18th Feb 2003 12:08
TL 18th Feb 2003 09:39
PC 21st Feb 2003 13:32
PC 23rd Feb 2004 11:03
TL 23rd Feb 2004 14:40
PC 17th March 2004 13:49
PC 22nd March 2004 14:11
TL 18th April 2004 18:15
TL 20th April 2004 08:47
PC 23rd April 2004 11:21
TL 27th April 2004 04:23
PC 27th April 2004 12:15
PC 27th April 2004 12:22
PC 28th April 2004 07:19
TL 2nd   May 2004
PC 2nd   May 2004 13:41
PC 12th  May 2004 13:59
TL 12th May 2004 15:40
TL 17th May 2004 07:09
PC 18th May 2004 13:42
PC 25th May 2004 15:37
PC 25h May 2004 16:58
PC 8th June 2004 16:33
PC 10th June 2004 16:59
TL 14th June 2004 10:51
TL 14th June 2004 13:13
PC 14th June 2004 20:42
PC 14th June 2004 21:21
TL 15th June 2004 07:59
PC 15th June 2004 14:27
PC 15th June 2004 14:59
PC 22nd June 2004 13:25
TL 28th June 2004 12:49
PC 28th June 2004 14:55
PC 28th June 2004 21:18
TL 29th June 2004 10:47
TL 1st July 2004 18:46
TL 6th July 2004 13:44
TL 7th July 2004 07:42
TL 12th July 2004 08:38
PC 12th July 2004 14:41
TL 13th July 2004 17:41
PC 14th July 2004 16:35
PC 10th Aug 2004 14:38

**2.**

*** Slip Sheet ***

Child

# HIGH  VIEW  INC.

C/o Calle Pablo Sarasate 75
Verdemar II
Urb. Villamartin
Orihuela Costa 03189
Costa Blanca
Spain.   011 34 966 774 360 phone/fax
Mobile   011 34 630 666 274
Email tonyhighview@hvillas.e.telefonica.net

23rd August 2004.

**ESTIMATED BALANCE OF  R & D COST FOR ROULETTE GAME**

| | | | |
|---|---|---|---|
| July | ML | invoices | $14,687.03  payment due |
| July | Elaut | commitment fee | 9,000.00 paid TL  (see letter) |
| August | ML | R&D | 5,400.00 |
| August | HF | R&D | 3,500.00 e. |
| August | Elaut | Wheel & Station for ML | 21,000.00 |
| August | TL | expenses to date | 6,500.00 e. |
| September | ML | R&D | 5,400.00 e. |
| September | HF | R&D | 3,500.00 e. |
| September | Elaut | Wheel & Station GLI | 21,000.00 |
| September | | SAS Tooling | 10,000.00 e. |
| October | | Shipping & Travel | 7,500.00 e. |
| October | | ML | 5,400.00 |
| October | | HF R&D | 3,500.00 e. |
| Nov | | ML | 5,400.00 |
| Dec | | ML | 5,400.00 |
| | | | |
| Contingency | | | 10,000.00 |

\*\*\* Slip Sheet \*\*\*

Child

# HIGH VIEW INC.

C/o Calle Pablo Sarasate 75
Verdemar II
Urb. Villamartin
Orihuela Costa 03189
Costa Blanca
Spain.   011 34 966 774 360 phone/fax
Mobile   011 34 630 666 274
Email tonyhighview@hvillas.e.telefonica.net                         23 August 2004.


Paul A. Cox
3001 Aloma Avenue,
Winter Park
FL 32792


Dear Paul,
        I draw your attention to the attached list of emails regarding Mike Lerwill and
his company ML Solutions Ltd. availability fee of $2,500.00 per month.
As can be seen at no time has there ever been any mention of these payments being
anything but development availability and advice.
        I refute your claim that these payments are either capital loans or transferable to
shares, this spurious claim is unsubstantiated by your own emails.
        I require an invoice to be raised by High View to Coinmaster USA Inc for the full
amount of all payments to date in order to rectify the ledgers to show the correct
position. I also wish to know why Coinmaster USA Inc is not showing as having paid the
monies directly into High View's bank, the fees look to have been diverted through Tri-
Cty Ent. Inc, an explanation is required.

        Attached is the budget for the balance of the development cost, with a wheel and
cabinet ready for testing by GLI.  Also attached is ML Solutions July invoices that need
paying. I have personally paid the commitment fee of $9000.00 to Elaut and reserve my
position on this payment and cabinet design pending the outcome of your decisions.
        I am capable of funding the balance of the R&D personally and do not wish to have
third parties involved. I accept your position not to invest any further funds to this
project over the $39,000.00 committed, however shares need to be issued to me to
reflect my additional investment in order to complete the development. The investment
ratio is 85-15 (see list) I request you issue the shares and confirm in writing your
position within seven days.

SAS tools, as your refusal to release this tooling to Mike Lerwill has caused delays in the
R&D process, I have allowed that High View will purchase it's own SAS tooling.
Estimated balance of development with High View purchasing it's own SAS tooling
$137,187. Less $10,000 if provided by Coinmaster USA Inc.


1.

Distribution:-

    Should Coinmaster USA Inc. wish to enter into negotiations for exclusive distribution of High Views gaming machines in Indian Casinos in California then Coinmaster have until the end of October to negotiate, complete and exchange contracts, after this time the offer will lapse.

Yours faithfully,

D.A. Tony Lynch
Chairman
High View Inc.

*** Slip Sheet ***

Child

**ML Solutions Limited**
5 Cwrt Y Coed
Brackla
Bridgend
CF31 2ST

Tel: 01656 660053
Fax: 0870 7051198
Email: mike@ml-solutions.co.uk

# INVOICE

VAT reg no: 753 3342 42

Invoice to:

High View Inc.
1025 S Semoran Blvd, Suite 1093
Winter park
FL 32792
USA

| | Invoice Number | 000238 |
| | Invoice Date: | 30/07/2004 |

| Qty | Description | Code | Unit Price | Total |
|-----|-------------|------|------------|-------|
| 1 | Month | 00000 | $5,482.08 | $5,482.08 |

Development work as per agreement

| | | |
|---|---|---|
| Items Total | $5,482.08 |
| Shipping Charge: | $.00 |
| Invoice Total | $5,482.08 |

ML Solutions Limited
5 Cwrt Y Coed
Brackla
Bridgend
CF31 2ST

**INVOICE**

Tel: 01656 660053
Fax: 0870 7051198
Email: mike@ml-solutions.co.uk

VAT reg no: 783 3342 42

Invoice to:

High View Inc.
1025 S Semoran Blvd, Suite 1093
Winter park
FL 32792
USA

| | | | | |
|---|---|---|---|---|
| Invoice Number | | | | 000239 |
| Invoice Date: | | | | 30/07/2004 |

| | | | | |
|---|---|---|---|---|
| 1 | Concept PC | 00000 | $3,102.00 | $3,102.00 |

Subcontractor cost during month of June

| | |
|---|---|
| Items Total | $3,102.00 |
| Shipping Charge | $.00 |
| Invoice Total | $3,102.00 |

B559

ML Solutions Limited
5 Cwrt Y Coed
Brackla
Bridgend
CF31 2ST

Tel: 01656 660053
Fax: 0870 7051198
Email: mike@ml-solutions.co.uk

# INVOICE

VAT reg no:   753 3342 42

Invoice to:

High View Inc.
1025 S Semoran Blvd, Suite 1093
Winter park
FL 32792
USA

| | | | | |
|---|---|---|---|---|
| Invoice Number | | | | 000240 |
| Invoice Date | | | | 30/07/2004 |

| | | | | |
|---|---|---|---|---|
| 4 | EXT Modules | 00000 | $564.00 | $2,256.00 |
| 5 | ROA boards | 00000 | $746.08 | $3,730.39 |
| 5 | Flash memory cards | 00000 | $23.31 | $116.56 |

Supply of hardware to make up 5 ROA boards

| | |
|---|---|
| Items Total | $6,102.95 |
| Shipping Charge | $.00 |
| Invoice Total | $6,102.95 |

B560

## CERTIFICATE OF SERVICE

I, Kevin A. Guerke, Esquire, hereby certify that on the 22nd day of February,

2008, the foregoing was electronically served upon:

Thomas P. Preston, Esq.
Blank Rome LLP
Chase Manhattan Centre, Suite 800
1201 Market Street
Wilmington, DE  19801-4226


/s/  *Kevin A. Guerke*
_____
Kevin A. Guerke (DE4096)
kguerke@svglaw.com

63565 v1